**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR DESOTO COUNTY, FLORIDA
CIVIL DIVISION**

WORLDWIDE DOOR
COMPONENTS INC and
101 PALMETTO LLC,

      Plaintiffs,                                    **Case No.**   2026-CA-000264

vs.

ZURICH AMERICAN
INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT FOR BAD FAITH

Plaintiffs, WORLDWIDE DOOR COMPONENTS INC and 101 PALMETTO LLC ("Plaintiffs" or "Insured"), by and through their undersigned counsel, hereby file this Complaint for Bad Faith against Defendant, ZURICH AMERICAN INSURANCE COMPANY ("Defendant" or "ZURICH").

As grounds, Plaintiffs state as follows:

1.      This is an action for Bad Faith against ZURICH pursuant to §624.155(1)(a), Fla. Stat. and §626.9541, Fla. Stat.

2.      The amount in controversy in this action exceeds the sum of fifty thousand ($50,000.00) dollars, exclusive of pre-judgment interest, court costs, and attorney fees.

3.      At all times material hereto, Plaintiff 101 PALMETTO LLC owned the real property located at 101 W. Palmetto Street, Arcadia, FL 34266 (the "Insured Property").

4.      At all times materials hereto, Plaintiff WORLDWIDE DOOR COMPONENTS INC owned inventory/business personal property stored on the Insured Property.

1

5. At all times relevant hereto, Defendant was and is a domestic corporation licensed to conduct business in the State of Florida as a qualified insurer engaged in the business of insurance with Florida citizens.

6. In consideration of the premium paid to it by the Insured, ZURICH issued a Commercial policy of insurance, Policy No. CPO 0117720 - 06 ("the Policy"). A copy of the Policy is attached as **Exhibit "A"**.

7. The Policy was in full force and effect on September 28, 2022.

8. The Policy extended coverage to Plaintiffs for building damage and damage to inventory, as well as other coverages, if the Insured Property was damaged by an insured peril.

9. The Insured Property was damaged by an insured peril, winds from Hurricane Ian, on or about September 28, 2022.

10. The Insured timely reported the loss and damage to ZURICH through its agent, Brown & Brown. The Insured also provided a roofing repair estimate. The claim and roofing estimate were provided to ZURICH by the agent.

11. In response, ZURICH retained JS Held, to inspect the Insured Property and prepare a damage estimate on its behalf.

12. JS Held inspected the Insured Property on or about November 15, 2022, and November 16, 2022.

13. Following this inspection, JS Held prepared a report and an estimate of damage for ZURICH. The estimate reflected that the damage from Hurricane Ian totaled $88,703.32 (replacement cost value or "RCV"). This estimate was unreasonably low,

ignored damage, and wrongfully misrepresented to the insured that the covered loss to the Insured Property fell below the policy deductible.

14. The JS Held estimate also ignored and failed to include covered damage to the inventory/business personal property of WORLDWIDE DOOR COMPONENTS INC caused by water which entered the buildings through the damaged roofs.

15. Zurich adopted the estimate from JS Held and advised the Plaintiffs that the damage fell below the policy deductible and no payment would be issued. This was a misrepresentation as the loss and damage far exceeded the applicable deductibles for damage to the Insured Property as well as the damage to inventory.

16. Following the provision of the JS Held estimate, the agent advised Zurich of deficiencies in the JS Held building damage estimate. In addition, the insured objected to the estimate as it failed to include obvious structural damage to the Insured Property.

17. Based on this, Zurich requested a re-inspection of the property by an engineer from JS Held, Lazell Preator, P.E. However, Mr. Preator was not a licensed engineer in Florida.

18. The re-inspection by Mr. Preator occurred on or about December 29, 2022. However, Mr. Preator did not inspect the entire premises, including the entire roof and office space at the property, and otherwise ignored and minimized the wind damage.

19. Based upon this inspection, the Mr. Preator rendered a deficient engineering report (which was signed by an engineer licensed in Florida who did not inspect the property). This report incorrectly determined the roofs at the Insured Property had sustained less than 25% damage due to wind in totality but failed to address how the calculations were made and did not indicate what percentage of each roof was damaged

by wind. The report also ignored, minimized, and failed to address the full extent of the wind damage at the Insured Property.

20.     The JS Held engineering report and calculation of roof damage caused by wind provided to Plaintiffs contained misrepresentations, ignored/minimized wind damage to the roofs and ignored/ minimized other wind damage to the insured property which had resulted from wind caused by Hurricane Ian.

21.     On February 28, 2023, JS Held issued a revised estimate of damage to the Insured Property in the amount of $202,410.11 (RCV) / $163,250.85 (actual cash value or "ACV"). This revised estimate included some of the repairs made by 101 PALMETTO LLC but remained unreasonably low, ignored damage, and wrongfully misrepresented the amount of roof damage and other covered damage to the Insured Property.

22.     In addition, this revised estimate continued to omit, and did not address, any damage to the inventory/business personal property of WORLDWIDE DOOR COMPONENTS INC.

23.     Based upon the revised estimate from JS Held on or about March 16, 2023, Zurich tendered a check to Plaintiffs for damage to the Insured Property in the amount of $63,250.85 (ACV). This payment was calculated based on an incorrect calculation of RCV in the amount of $202,410.11, less depreciation of $163,250.85, and less the $100,000 deductible.

24.     Plaintiffs rejected this payment and did not negotiate this check because it did not reflect the correct scope or amount of damage to the Insured Property. In addition, it did not include damaged inventory.

25. Plaintiffs advised Zurich that they objected to its evaluation of damage and that they would retain their own engineer to evaluate the damage from the Hurricane. Plaintiffs later confirmed they were continuing to evaluate the loss and damage and would provide the information which was developed to Zurich.

26. Although Zurich was aware that Plaintiffs disputed its estimate of building damage, and although Zurich had failed to adjust the claim for damaged inventory, Zurich then simply closed the claim.

27. The failure to include all Hurricane damage to the Insured Property in its revised estimate, and the continued undervaluation of the loss and damage sustained by Plaintiffs, reflects that Zurich failed to properly adjust the claim. Further, its tendered payment and the revised estimate upon which it was based was a misrepresentation of the loss and damage by Zurich and its representatives.

28. Further, despite its knowledge that business personal property at the Insured Property was damaged by the water which entered through the wind damaged roof, Zurich took no steps to adjust or pay the inventory claim. This was a constructive denial of that portion of the claim and was wrong.

29. As a result of the fact Zurich had undervalued its claim and tendered a deficient payment for damage to the Insured Property, 101 PALMETTO LLC retained an engineer (Prescott Engineering, LLC) and a general contractor (TRIAD Restoration Services) to separately inspect the Insured Property and determine the full scope of wind-related damage as well as the costs required to restore the Insured Property to a pre-loss state.

30.   Prescott and TRIAD found significantly more damage to the Insured Property caused by Hurricane Ian than what was determined to exist by JS Held/Zurich.

31.   On October 25, 2023, Plaintiff filed a Civil Remedy Notice of Insurer Violation ("CRN") with the Florida Department of Financial Services ("DFS") and provided same to ZURICH. The CRN filed by Plaintiffs sought payment of Plaintiffs' outstanding damages due under the Policy from ZURICH in sixty (60) days. See **Exhibit "B"**. The Plaintiffs' CRN, and its content, are incorporated herein and made a part of this Complaint.

32.   The Filing of a CRN is a condition precedent to filing this action, which has been fulfilled by Plaintiffs.

33.   Florida's Department of Financial Services ("DFS") accepted Plaintiffs CRN (**Exhibit "B"**), beginning the sixty (60) day period provided by Florida law for Zurich to "cure" its conduct by paying the contract damages owed to Plaintiffs.

34.   Zurich filed a Response to the CRN, but it failed to "cure" its conduct, and it did not issue any payment for the contract damages owed to Plaintiffs within the 60-day timeframe provided by law. Instead, its Response to the CRN denied that it violated any statutes and claimed the CRN was without merit. Significantly, Zurich's Response did not allege any legal deficiency in the CRN or claim that Plaintiffs had failed to comply with any of the requirements of Fla. Stat. § 624.155.  See **Exhibit "C"**.

35.   Also on October 25, 2023, the Plaintiffs each filed a Notice of Intent to initiate litigation ("NOI") against Zurich. The filing of the NOIs provided Zurich with ten (10) business days to evaluate Plaintiffs' claims and the documentation in support provided by Plaintiffs before suit could be filed.

36.    In both the CRN and the NOI filed by 101 PALMETTO LLC, Plaintiff provided Zurich with information from Prescott and TRIAD, as well as other support for its claim that additional amounts were owed for the Hurricane damage to the Insured Property.

37.    In both the CRN and the NOI filed by WORLDWIDE DOOR COMPONENTS INC, Plaintiff provided Zurich with support for its claim for damaged inventory which Zurich had long been aware of but which it had never adjusted or addressed.

38.    In response, Zurich demanded the parties participate in mediation of Plaintiffs' claims. At mediation, it soon became apparent to Plaintiffs that Zurich had no intention of reasonably resolving their claims, and the mediation soon resulted in an impasse.

39.    Following the impasse, because a dispute existed between the parties as to the "amount of loss" for both the building damage and the damaged inventory, and because Plaintiffs wished to resolve the disputes as quickly and as inexpensively as possible, Plaintiffs demanded the parties participate in Appraisal as provided by the Policy.

40.    On March 18, 2025, an Appraisal Award was entered in Plaintiffs' favor. The Appraisal Award (which was signed by Zurich's own appraiser and the Umpire), determined that the amount of loss to the Insured Property and the inventory totaled $1,406,851.84 ("RCV") / $1,309,835.79 ("ACV"). A copy of the Appraisal Award is attached as **Exhibit "D"**.

41.    The Appraisal Award for the Insured Property owned by 101 PALMETTO LLC was approximately twenty-two (22) times greater than Zurich's revised damage

estimate and confirms that Zurich ignored, underestimated, under-scoped and undervalued the Plaintiffs' loss and damage and its prior tender of payment based on the revised estimate misrepresented the amount of covered damage to Plaintiffs.

42. The Appraisal Award for the inventory of WORLDWIDE DOOR COMPONENTS INC was for the full amount of Plaintiffs' claim, which amount had been known to Zurich since at least October 25, 2023, which had never been adjusted, and for which no amount of loss or damage had ever been acknowledged, tendered, or paid by Zurich.

43. The Appraisal Award confirms that the loss and damage to the Insured Property due to Hurricane Ian far exceeded Zurich's two (2) prior deficient damage estimates as well as its tendered ACV payment for damage to the Insured Property.

44. The Appraisal Award also confirms that there was no justification for Zurich to refuse to adjust, to delay and to refuse payment for Plaintiffs' inventory claim.

45. On April 12, 2025, Zurich advised it would be mailing the checks for the balance owed to Plaintiffs in accordance with the Appraisal Award and less the policy's deductible. See copy of April 12, 2025, letter attached as **Exhibit "E"**.

46. Zurich's payment for the ACV of the damage to the Insured Property outlined in the Appraisal Award, and for the RCV for the damaged inventory, was issued and delivered to Plaintiffs in a single check almost sixteen (16) months after the time for Zurich to "cure" Plaintiffs' CRN had expired.  See check dated April 14, 2025, attached as **Exhibit "F"**.

47. Zurich's post-suit payment of previously disputed (and constructively denied) damage was a determination of both Zurich's liability and the extent of the

Plaintiffs' damages owed under the Policy and constitutes a favorable resolution of the claim in favor of Plaintiffs.

48.    By failing to treat Plaintiffs fairly, honestly and with due regard for their interests; by failing adjust and constructively denying Plaintiffs' claim for damaged inventory; by ignoring damage, under-scoping, under estimating and undervaluing damage to the Insured Property;  by tendering deficient ACV payments for damage to the Insured Property and representing those payments represented the full ACV of Plaintiffs damages: by making misrepresentations about facts and coverage, including its constructive denial of Plaintiffs inventory claim; by failing to properly investigate and adjust Plaintiffs' claim; by failing to fully and fairly evaluate the damage information provided by Plaintiffs; by utilizing unqualified adjusters/consultants;  by failing to properly train and supervise adjusters and consultants;  by failing to timely acknowledge and respond to communications, by making low ball settlement offers;  by forcing the Plaintiffs to demand Appraisal when Zurich did not properly adjust and pay the claim; by failing to continue to adjust the claim or issue undisputed payments it knew were owed during appraisal;  by allowing appraisal to serve as a substitute for proper adjustment of the claim; by engaging in wrongful conduct which caused delay to Plaintiffs in recovering indemnity payments to which they were entitled; and  as a result of other conduct outlined in the Plaintiffs CRN'S,  Zurich engaged in numerous improper claims handling practices in violation of Florida law, including §624.155(a)(1) and §626.9541, Fla. Stat.

49.    Pursuant to §624.155(1)(a)(1), Fla. Stat., Zurich committed violations under section 626.9541, Florida Statutes, as set forth below and which caused Plaintiffs to incur economic damages.

50. Section §626.9541(1)(i), Fla. Stat. requires Zurich not to violate certain duties described as "Unfair Claim Settlement Practices." Zurich breached this duty.

51. Pursuant to §626.9541(1)(i)(2), Fla. Stat., Zurich had a duty not make material misrepresentations to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy. Zurich breached this duty.

52. Pursuant to §626.9541(1)(i)(3)(a), Fla. Stat., Zurich had a duty to adopt and implement standards for the proper investigation of claims. Zurich breached this duty.

53. Pursuant to §626.9541(1)(i)(3)(b), Fla. Stat., Zurich had a duty not to misrepresent pertinent facts or policy provisions relating to coverages at issue. Zurich breached this duty.

54. Pursuant to §626.9541(1)(i)(3)(c), Fla. Stat., Zurich had a duty to acknowledge and act promptly upon communications with respect to claims. Zurich breached this duty.

55. Pursuant to §626.9541(1)(i)(3)(d), Fla. Stat., Zurich had a duty to not deny claims without conducting reasonable investigations based upon available information. Zurich breached this duty.

56. Pursuant to §626.9541(1)(i)(3)(f), Fla. Stat., Zurich had a duty to promptly provide a reasonable explanation in writing to the insureds of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. Zurich breached this duty.

57.     Pursuant to §626.9541(1)(i)(3)(g), Fla. Stat., Zurich had a duty to promptly notify the Insured of any additional information necessary for the processing of the insurance claim. Zurich breached this duty.

58.     Zurich breached the foregoing sections of §624.155(1)(a) and 626.9541(1)(i) in the handling of Plaintiffs' insurance claim, through its actions and inactions, by engaging in improper conduct described in the Plaintiffs' CRN, including but not limited to the following:

a)     Improper claim delay.
b)     Improper claim denial of the Insureds' damaged inventory.
c)     Looking for ways to deny recovery to its Insured.
d)     Looking for ways to delay recovery to its Insured.
e)     Not adjusting the claim and not evaluating the loss properly, promptly, and fairly so as to provide full and prompt indemnity to its Insured.
f)     Looking for ways to underpay the claim.
g)     Failing to implement proper standards for the adjustment and investigation of insurance claims by its adjusters, independent contractors and consultants such as JS Held.
h)     Making misrepresentations to the Insured about coverage.
i)     Making misrepresentations to the Insured about facts.
j)     Forcing the Insured to demand appraisal to resolve the dispute over the amount of loss sustained due to the Insured Property as a result of Hurricane Ian.
k)     Forcing the Insured to demand appraisal to resolve the dispute over the amount of loss sustained to inventory as a result of Hurricane Ian.
l)     Allowing appraisal as a substitute for proper claims adjustment.
m)     Failing to continue to adjust the claim during appraisal.
n)     Failing to pay additional damage to the Insured Property, which Zurich was aware of before appraisal.
o)     Failing to pay any damage to Inventory, which Zurich became aware of before appraisal.
p)     Failing to pay damage to the Insured Property and the Inventory which Zurich became aware of during the appraisal process but forcing the insured to wait for payment until after the Appraisal Award was issued.
q)     Not training, supervising, or managing adjusters, independent contractors and consultants such as JS Held properly,
r)     Allowing adjusters, independent contractors and consultants such as JS Held to place the company's interests before the policyholders' interests by attempting to deny or minimize payments owed.

s)  Rubberstamping the reports and estimates of JS Held without sufficient evaluation, analysis and/or peer review,

t)  Establishing severity control initiatives and otherwise establishing a culture of not fully and promptly paying claims following losses.

u)  Ignoring submitted claim documentation and information from the Insureds.

v)  Using JS Held, a well-known outcome-oriented expert and vendor who makes significant income from Zurich, its subsidiary companies, and the insurance industry in general, and which has a financial bias in favor of Zurich and other insurers, to evaluate and estimate the Insureds' loss and damage.

w)  Failing to ensure that JS Held used an engineer licensed in Florida to conduct the re-inspection of the Insured Property.;

x)  Failure to have a company different than JS Held conduct the re-inspection of the Insured Property.

y)  Failing to timely respond to communications from the insured and its agents.

z)  Requiring the insured to hire its own engineer and contractor rather than addressing the Insureds concerns about the deficient estimates and reports from JS Held.

aa)  Failing to adhere to its Policy terms and conditions regarding the claim for damaged inventory.

bb)  Constructively denying coverage for the damaged inventory and failing to adjust the claim even after the Insured submitted claim documentation.

cc)  Failing to address or adjust the Inventory claim.

dd)  Failing to provide an explanation to Plaintiffs as to why it was denying and failing to pay the Inventory claim.

ee)  Failing to advise Plaintiffs of the need for additional information needed to process the claim for damage to the Insured Property.

ff)  Failing to advise Plaintiffs of the need for additional information needed to process the claim for damaged inventory.

gg)  Failing to follow Florida law cited herein.

59.    Zurich breached the foregoing duties, contrary to its duties and responsibilites to Plaintiffs under Florida law, and the acts, omissions, and violations identified herein were performed willfully, wantonly, maliciously, and in reckless disregard for the rights of PLAINTIFFS.

12

60.    Zurich has committed these acts and violated the statutes stated herein and referenced in Plaintiffs' CRN with such frequency as to constitute a general business practice.

61.    As a result of Zurich's wrongful conduct, in violation of the Florida Statutes outlined in Plaintiffs' CRN and herein, and in violation of proper claims handling practices and standards recognized within Zurich and throughout the insurance industry, PLAINTIFFS were required to retain the services of the undersigned counsel in order to recover their consequential damages resulting from Defendant's wrongful conduct.

62.    Plaintiffs have agreed to pay the attorneys for their services in prosecuting this claim. Section §624.155, Fla. Stat., provides for the payment of Plaintiffs' attorney fees in connection with the prosecution of this action.

63.    As a result of the wrongful conduct of Zurich in violation of Florida Statutes and proper claims handling practices, Plaintiffs have suffered damages including, but not limited to: appraiser costs, umpire costs, engineering costs, contractor costs, loss of use of money, attorney fees, prejudgment interest on these amounts, and other consequential damages caused by the wrongful adjustment, delay, and improper handling of this claim.

**WHEREFORE**, Plaintiffs, WORLDWIDE DOOR COMPONENTS INC and 101 PALMETTO LLC., file this lawsuit against Zurich for actual and consequential damages resulting from Defendant's conduct; pre-judgment interest; costs; attorney fees pursuant to §624.155, Fla. Stat.; and such further and other relief as this Court deems appropriate.

Further, Plaintiffs reserve the right to claim punitive damages following an appropriate proffer with the Court.

Finally, Plaintiffs request a trial by jury on all issues so triable.

DANAHY & DUNNAVANT, P.A.

/s/ Matthew Danahy
MATTHEW R. DANAHY, ESQUIRE
Florida Bar No.  606693
CHAD L. YOUNG, ESQUIRE
Florida Bar No. 1018819
901 W. Swann Avenue
Tampa, Florida 33606
(813) 906-1841(phone)
(813) 579-1912 (fax)
E-service: matt@danddlaw.com;
chad@danddlaw.com;
ivette@danddlaw.com; and
service@danddlaw.com
Attorneys for Plaintiffs



# Notice of Deductibles Applicable to Hurricanes

THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

YOUR POLICY MAY CONTAIN OTHER DEDUCTIBLES SO IT IS IMPORTANT TO READ THE POLICY CAREFULLY FOR A COMPLETE UNDERSTANDING OF ALL DEDUCTIBLES THAT WILL RESULT IN OUT-OF-POCKET EXPENSES.

**Insured Name:**   Worldwide Door Components Inc
**Policy Number:**  CPO 0117720 - 06
**Effective Date:**   09/29/2021



## THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA: |
| **General Liability**        $707.00 |
| **Property Portfolio Protection**        $1,039.00 |

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A.  Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

### B.  Disclosure of Federal Participation in Payment of Terrorism Losses

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, the United States Government may pay up to 80% of insured losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

### C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

### D.  Availability

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

### E.  Definition of Act of Terrorism under TRIA

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.  To be an act of terrorism;

2.  To be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier

(as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies your insurance:

A.  Cap on Losses From Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.  To be an act of terrorism;

2.  To be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

B.  Application of Other Exclusions

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

U-GU-767-B CW (01/15)
Page 1 of 1

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Disclosure Statement



It is our pleasure to present the enclosed policy to you for presentation to your customer.

## INSTRUCTION TO AGENT OR BROKER

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT AND BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com
or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

**COMMERCIAL INSURANCE**

# COMMON POLICY DECLARATIONS

Policy Number   CPO 0117720 - 06

Renewal of Number   CPO 0117720 - 05

Named Insured and Mailing Address

Worldwide Door Components Inc
(SEE NAMED INSURED ENDT)
19175 N. Dale Mabry Hwy
Lutz, FL 33548

Producer and Mailing Address

BROWN & BROWN OF FLORIDA, INC.
PINELLAS DIVISION
83 N PARK PLACE BLVD STE 101
CLEARWATER, FL 33759-3925

Producer Code   84364000

Policy Period:   Coverage begins 09/29/2021 at 12:01 A.M.;   Coverage ends 09/29/2022 at 12:01 A.M.

The named insured is   ☐ Individual          ☐ Partnership          ☒ Corporation
                       ☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

---

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):

| | | |
|---|---|---|
| Property Portfolio Protection | PREMIUM $ | 76,562.00 |
| issued by   Zurich American Insurance Company | | |
| General Liability | PREMIUM $ | 50,090.00 |
| issued by   Zurich American Insurance Company of Illinois | | |
| Automobile | PREMIUM $ | 1,923.00 |
| issued by   Zurich American Insurance Company of Illinois | | |

| | | |
|---|---|---|
| **THIS PREMIUM MAY BE SUBJECT TO AUDIT**<br>This premium does not include Taxes and Surcharges. | **TOTAL** $ | 128,575.00 |
| **Taxes and Surcharges** | **TOTAL** $ | 84.91 |
| | See Taxes, Surcharges or Fees Schedule | |

The Form(s) and Endorsement(s) made a part of this policy at the time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS**.

Countersigned this          day of

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY,ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

U-GU-D-310-A (01/93)
Page 1 of 1

**Policy Number    CPO 0117720 - 06**

### SCHEDULE OF TAXES, SURCHARGES OR FEES

Named Insured    Worldwide Door Components Inc

Effective Date:    09/29/2021
12:01 A.M., Standard Time

Agent Name    BROWN & BROWN OF FLORIDA, INC. PINELLAS
DIVISION

Agent No.    84364000

| | |
|---|---|
| FL - 1: 5017 N Coolidge Ave, Tampa, FL 33614-6421 (FLORIDA STATE FIRE MARSHAL REGULATORY ASSESSMENT SURCHARGE) | $      6.77 |
| FL - 4: 19175 N Dale Mabry Hwy, Lutz, FL 33548-4983 (FLORIDA STATE FIRE MARSHAL REGULATORY ASSESSMENT SURCHARGE) | $      4.15 |
| FL - 5: 101 W Palmetto St, Arcadia, FL 34266-4319 (FLORIDA STATE FIRE MARSHAL REGULATORY ASSESSMENT SURCHARGE) | $     32.24 |
| FL - Down Zoning (FLORIDA STATE FIRE MARSHAL REGULATORY ASSESSMENT SURCHARGE) | $      0.26 |
| FL - Florida (FLORIDA STATE FIRE MARSHAL REGULATORY ASSESSMENT SURCHARGE) | $     28.72 |
| FL - Real and Personal Property (Florida-Emerg-Mgmt-Preparedness & Assist-Trust-Fund-Surcharge) | $      4.00 |
| TX - 3: 10095 N Saginaw Blvd, Fort Worth, TX 76179 (Texas Volunteer Fire Department Assistance Fund Assessment) | $      8.77 |

U-GU-616-A CW (10/02)

**Policy Number**

**CPO 0117720 - 06**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

Named Insured    Worldwide Door Components Inc

Effective Date:    09/29/2021
12:01 A.M., Standard Time

Agent Name    BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION          Agent No.    84364000

**Common Policy Forms and Endorsements**

| | | |
|---|---|---|
| U-GU-630-E CW | 01/20 | Disclosure of Important Information Relating to Terrorism Risk Insurance Act |
| U-GU-767-B CW | 01/15 | Cap On Losses From Certified Acts Of Terrorism |
| U-GU-D-310-A | 01/93 | Common Policy Declarations |
| U-GU-616-A CW | 10/02 | Schedule of Taxes, Surcharges or Fees |
| U-GU-619-A CW | 10/02 | Schedule of Forms and Endorsements |
| U-GU-319-F | 01/09 | Important Notice - In Witness Clause |
| U-GU-621-A CW | 10/02 | Schedule Of Named Insured(s) |
| U-GU-618-A CW | 10/02 | Schedule of Locations |
| IL 00 17 | 11/98 | Common Policy Conditions |
| IL 00 21 | 09/08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| IL 01 12 | 11/18 | Florida Changes - Mediation Or Appraisal (Commercial Residential Property) |
| IL 01 68 | 03/12 | Texas Changes - Duties |
| IL 01 75 | 09/07 | Florida Changes - Legal Action Against Us |
| IL 01 92 | 02/08 | Indiana Changes - Pollution |
| IL 02 55 | 03/16 | Florida Changes – Cancellation And Nonrenewal |
| IL 00 03 | 09/08 | Calculation Of Premium |
| U-GU-1191-A CW | 03/15 | Sanctions Exclusion Endorsement |

**Property Portfolio Protection Forms and Endorsements**

| | | |
|---|---|---|
| U-GU-1145-A FL | 09/12 | Notice of Deductibles Applicable to Hurricane |
| PPP-0001 | 06/06 | Commercial Property Coverage Part Declarations |
| PPP-0101 | 04/19 | Commercial Property Coverage Part General Provisions |
| PPP-0102 | 08/16 | Commercial Property Conditions |
| PPP-0103 | 08/16 | Commercial Property Definitions |
| PPP-0110 | 08/16 | Real and Personal Property Coverage Form |
| PPP-0111 | 03/14 | Additional Coverages Form |
| PPP-0112 | 08/16 | Accounts Receivable Coverage Form (Revenue Loss) |
| PPP-0113 | 04/09 | Crime Coverage Form |

U-GU-619-A CW (10/02)
Page 1 of 3

**Policy Number**

**CPO 0117720 - 06**

### SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured    Worldwide Door Components Inc

Effective Date:   09/29/2021
12:01 A.M., Standard Time

Agent Name   BROWN & BROWN OF FLORIDA, INC. PINELLAS
DIVISION

Agent No.   84364000

| | | |
|---|---|---|
| PPP-0114 | 08/16 | Fine Arts Coverage Form |
| PPP-0115 | 03/14 | Installation and Service Property Coverage Form |
| PPP-0116 | 08/16 | Original Information Property Coverage Form |
| PPP-0117 | 03/14 | Transit Coverage Form |
| PPP-0132 | 08/16 | Extra Expense Coverage Form |
| PPP-0217 | 04/19 | Named Storm--Direct Damage and Time Element Deductible |
| PPP-0226 | 06/06 | Wind and Hail--Direct Damage and Time Element Deductible |
| PPP-0250 | 08/16 | Roof Covering Valuation |
| PPP-0253 | 09/18 | Water Damage Deductible |
| PPP-0308 | 06/06 | Enabling Endorsement |
| PPP-0314 | 06/06 | Joint Loss Agreement--Property and Equipment Breakdown |
| PPP-0335 | 04/09 | Selling Price - Merchandise |
| PPP-0338 | 05/10 | Unintentional Errors or Omissions Coverage |
| PPP-0341 | 03/11 | Control of Damaged Goods |
| PPP-0411 | 08/16 | Crisis Event Management Coverage |
| PPP-0412 | 05/10 | Down Zoning Coverage |
| PPP-0414 | 05/10 | Real Estate Tax Assessment Coverage |
| PPP-1091 B | 01/20 | Florida Changes |

**General Liability Forms and Endorsements**

| | | |
|---|---|---|
| U-PHN-1077-A CW | 02/20 | Important Notice To Policyholders General Liability Supplemental Coverage Endorsement (U-GL-1345-C) |
| U-GL-1446-A FL | 05/10 | Notification to Others of Cancellation |
| U-GL-1517-B CW | 04/13 | Recording And Distribution Of Material Or Information In Violation Of Law Exclusion |
| U-GL-849-B CW | 08/04 | Employee Benefits Liability - Claims-Made Coverage Form |
| U-GL-D-1115-B CW | 09/04 | Commercial General Liability Coverage Part Declarations |
| U-GL-1113-A CW | 10/02 | Commercial General Liability Coverage Schedule |
| U-GL-D-849-B CW | 09/04 | Employee Benefit Liability Coverage Part - Claims Made Declarations |
| CG 00 01 | 04/13 | Commercial General Liability Coverage Form |

U-GU-619-A CW (10/02)
Page 2 of 3

**Policy Number**

**CPO 0117720 - 06**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

Named Insured   Worldwide Door Components Inc

Effective Date:   09/29/2021
12:01 A.M., Standard Time

Agent Name   BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION

Agent No.   84364000

| U-GL-1171-A CW | 07/03 | Fungi Or Bacteria Exclusion Endorsement |
| U-GL-1175-F CW | 04/13 | Additional Insured - Automatic - Owners, Lessees Or Contractors |
| U-GL-1205-B CW | 01/08 | Welding Health Hazard Exclusion |
| U-GL-1345-C CW | 03/20 | General Liability Supplemental Coverage Endorsement |
| U-GL-923-B CW | 06/04 | Silica or Silica Mixed Dust Exclusion |
| U-GL-1178-A CW | 07/03 | Asbestos Exclusion Endorsement |
| CG 01 03 | 06/06 | Texas Changes |
| CG 02 20 | 03/12 | Florida Changes - Cancellation And Nonrenewal |
| CG 21 07 | 05/14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Info And Data-related Liability - Limited BI Exception Not Included |
| CG 21 32 | 05/09 | Communicable Disease Exclusion |
| CG 21 47 | 12/07 | Employment-Related Practices Exclusion |
| CG 21 53 | 01/96 | Exclusion - Designated Ongoing Operations |
| CG 21 55 | 09/99 | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 26 39 | 12/07 | Texas Changes - Employment-Related Practices Exclusion |

**Automobile Forms and Endorsements**

| U-CA-531-B | 02/08 | Notice Regarding Terrorism Premium (For Commercial Automobile Insurance) |
| CA 00 01 | 10/13 | Business Auto Coverage Form |
| CA 02 67 | 01/21 | Florida Changes - Cancellation And Nonrenewal |
| CA 01 28 | 01/21 | Florida Changes |
| CA 05 04 | 08/18 | Florida Public Or Livery Passenger Conveyance, Transportation Network And On-Demand Delivery Services Exclusion |



# Important Notice - In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                                            Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email:** info.source@zurichna.com

---

U-GU-319-F (01/09)
Page 1 of 1

**Policy Number**

**CPO 0117720 - 06**

## SCHEDULE OF NAMED INSURED(S)

Named Insured    Worldwide Door Components Inc

Effective Date:    09/29/2021
12:01 A.M., Standard Time

Agent Name    BROWN & BROWN OF FLORIDA, INC. PINELLAS
DIVISION

Agent No.    84364000

### NAMED INSURED

Worldwide Door Components Inc

WORLDWIDE EXPRESS TRUCKING INC (FOR GL POLICY ONLY)

DOOR SUPPLY LLC

101 PALMETTO LLC

JLM TAMPA, INC

MWJM, INC

U-GU-621-A CW (10/02)
Page 1 of 1

**Policy Number**

**CPO 0117720 - 06**

## SCHEDULE OF LOCATIONS

Named Insured    Worldwide Door Components Inc

Effective Date:    09/29/2021
12:01 A.M., Standard Time

Agent Name    BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION

Agent No.    84364000

| Loc. No. | Bldg. No. | Designated Locations (Address, City, State, ZIP Code) | Occupancy |
|---|---|---|---|
| 001 | | 5017 N Coolidge Ave<br>Tampa, FL 33614-6421 | |
| 001 | 001 | 5017 N Coolidge Ave<br>Tampa, FL 33614-6421 | |
| 002 | | 8218 N 279 W<br>Lake Village, IN 46349-9498 | |
| 002 | 001 | 8218 N 279 W<br>Lake Village, IN 46349-9498 | |
| 003 | | 10095 N Saginaw Blvd<br>Fort Worth, TX 76179 | |
| 003 | 001 | 10095 N Saginaw Blvd<br>Fort Worth, TX 76179 | |
| 004 | | 19175 N Dale Mabry Hwy<br>Lutz, FL 33548-4983 | |
| 004 | 001 | 19175 N Dale Mabry Hwy<br>Lutz, FL 33548-4983 | |
| 005 | | 101 W Palmetto St<br>Arcadia, FL 34266-4319 | |
| 005 | 001 | 101 West Palmetto St<br>Arcadia, FL 34266-4319 | |

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98                    Copyright, Insurance Services Office, Inc., 1998                    Page 1 of 1

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but **if** such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 **IL 00 21 09 08**

IL 01 12 11 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – MEDIATION OR APPRAISAL (COMMERCIAL RESIDENTIAL PROPERTY)

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM (COMMERCIAL PROPERTY COVERAGE PART)
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM
STANDARD PROPERTY POLICY

With respect to a loss to commercial residential property, the following replaces the **Appraisal** Condition:

**Mediation Or Appraisal**

A. If we and either the first Named Insured or a third party who is an assignee of benefits under the policy are engaged in a dispute regarding a claim, either the first Named Insured, the third-party assignee or we may request a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. However, we are not required to participate in any mediation requested by a third-party assignee. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that the first Named Insured requests. If the dispute is mediated, the settlement in the course of mediation is binding only if both parties agree, in writing, on a settlement, and the first Named Insured has not rescinded the settlement within three business days after reaching settlement. The first Named Insured may not rescind the settlement after cashing or depositing the settlement check or draft we provided to the first Named Insured.

We will pay the cost of conducting the mediation conference. However, if:

1. The first Named Insured fails to appear at the mediation conference and the first Named Insured wishes to schedule a new conference after failing to appear, then the new conference will be scheduled only upon payment by the first Named Insured of a sum equal to the fees we paid for the mediation conference at which the first Named Insured failed to appear. This sum will then be applied to the cost of the rescheduled mediation conference, and we will pay the balance, if any, of the cost of conducting the rescheduled mediation conference; or

2. We fail to appear at a mediation conference without good cause, we will pay the actual cash expenses the first Named Insured incurs in attending the mediation conference and also pay the total cost of the rescheduled mediation conference.

B. If we and you disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

IL 01 12 11 18                    © Insurance Services Office, Inc., 2018                    **Page 1 of 2**

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

However, only with respect to disagreements between us and the first Named Insured, the first Named Insured is not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss, if we:

**1.** Requested mediation and either we or the first Named Insured rejected the mediation result; or

**2.** Failed to notify the first Named Insured of the first Named Insured's right to participate in the mediation program.

© Insurance Services Office, Inc., 2018

**IL 01 12 11 18**

**IL 01 68 03 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

IL 01 68 03 12    © Insurance Services Office, Inc., 2011    **Page 1 of 1**

IL 01 75 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

The following replaces the second paragraph of the **Legal Action Against Us** Condition:

**LEGAL ACTION AGAINST US**

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

IL 01 92 02 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – POLLUTION

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

In this Coverage Part or Policy, any exclusion, limitation or other provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the irritant or contaminant has any function in your business, operations, premises, site or location.

     © ISO Properties, Inc., 2007

IL 02 55 03 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

   **a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

   **(a)** A material misstatement or misrepresentation; or

   **(b)** A failure to comply with underwriting requirements established by the insurer.

   **b.** We may not cancel:

   **(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

   **(2)** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

   **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

   If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

   The cancellation will be effective even if we have not made or offered a refund.

IL 02 55 03 16              © Insurance Services Office, Inc., 2015              **Page 1 of 3**

**C.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

**a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** In the event of failure to comply, within 90 days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

**(4)** There has been a substantial change in the risk covered by the policy;

**(5)** The cancellation is for all insureds under such policies for a given class of insureds;

**(6)** On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(7)** On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(8)** The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office of Insurance Regulation.

**b.** If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if cancellation is for nonpayment of premium;

**(2)** 45 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above, and this policy does not cover a residential structure or its contents; or

**(b)** Cancellation is based on the reason stated in Paragraph **7.a.(8)** above;

**(3)** 120 days before the effective date of cancellation if:

**(a)** Cancellation is for one or more of the reasons stated in Paragraphs **7.a.(2)** through **7.a.(7)** above; and

**(b)** This policy covers a residential structure or its contents.

**c.** If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

**D.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

**a.** 45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents, or if nonrenewal is for the reason stated in Paragraph **D.5.**; or

**b.** 120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**3.** We may not refuse to renew this policy:

**a.** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

   **(1)** The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

   **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

**c.** Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**4.** Notwithstanding the provisions of Paragraph **D.3.**, we may refuse to renew this policy if this policy includes Sinkhole Loss coverage. If we nonrenew this policy for purposes of removing Sinkhole Loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage.

**5.** Notwithstanding the provisions of Paragraph **D.3.**, we may refuse to renew this policy if nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

**E. Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property**

**1.** The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

**a.** Except as provided in Paragraph **E.1.b.**, we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure or its contents have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

**b.** We may cancel or nonrenew the policy prior to restoration of the structure or its contents for any of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** Material misstatement or fraud related to the claim;

   **(3)** We determine that you have unreasonably caused a delay in the repair of the structure; or

   **(4)** We have paid the policy limits.

   If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel or nonrenew for a reason listed in Paragraph **b.(2)**, **b.(3)** or **b.(4)**, we will give you 45 days' notice.

**2.** With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

**3.** With respect to Paragraph **E.2.**, a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

**IL 00 03 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# Sanctions Exclusion Endorsement

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

All other terms and conditions of this policy remain unchanged.

# Commercial Property And Casualty
# Risk Management Plans - Florida



Florida Regulation § 69O-166.040 requires that we develop guidelines for risk management plans and make them available to our insureds. Guidelines for risk management plans are descriptive instructions and criteria for the establishment of risk management plans. The guidelines deal with one or more aspects of risk handling appropriate to one or more insureds.

Within 60 days of your request, Zurich Services Corporation will develop and provide you with guidelines for a risk management plan. Zurich Services Corporation can also work with you to design a risk management plan as needed.

In addition to furnishing you with guidelines for risk management plans, other services may be available to you that include:

- General Surveys are designed to assist you in analyzing and reducing loss exposures through a review of your operations, products, liability, and the environment.

- Special Surveys are similar to the General Surveys except they differ in scope and degree.  They also are designed to assist your risk management efforts in areas of occupational health, environmental, property, products, and liability.

- Seminars to provide training in safety management techniques and safety management counseling services.

- Workshops designed to train your managers and supervisors on the materials needed to train your employees.

Maintaining a safe workplace is your non-delegable obligation. Neither we nor Zurich Services Corporation undertakes to relieve you of that obligation.  However, Zurich Services Corporation and we may provide you with tools that may assist you to fulfill your obligations.

If you would like to receive guidelines for a risk management plan, please contact the Zurich Services Corporation Risk Engineering Manager.

Zurich Services Corporation
Risk Engineering
1299 Zurich Way
Schaumburg, Illinois 60196-1056

(800) 982-5964

By email: risk.engineering@zurichna.com



# Important Notice to Florida Policyholders

In the event you need to contact someone about this policy, for any reason, please contact your agent.  If you have additional questions, you may contact the Zurich U.S. office at the following address and telephone number:

Customer Inquiry Center

Zurich North America

1299 Zurich Way

Schaumburg, IL 60196

800-382-2150

If you have been unable to contact or obtain satisfaction from your agent or company, you may contact the Florida Office of Insurance Regulation at:

Office of Insurance Regulation

200 East Gaines Street

Tallahassee, Florida 32399

850-413-3140

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

U-GU-395-D (07/09)
Page 1 of 1

# Important Notice
# Texas Safety Consultation Services



Zurich in North America has loss control services available at no additional charge.

If you would like additional information regarding these services, please contact us at the address, or phone listed below.

Zurich Services Corporation
Risk Engineering
1299 Zurich Way
Schaumburg, Illinois 60196-1056
1-800-982-5964

**By email: risk.engineering@zurichna.com**

LC-373-D TX (11/17)
Page 1 of 1



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

| | |
|---|---|
| **NAMED INSURED:** | **POLICY PERIOD:** |
| Worldwide Door Components Inc | From:  09/29/2021   To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:**  CPO 0117720 - 06

**SUMMARY OF PREMISES**

| **PREMISES #   1** | **PREMISES ADDRESS** |
|---|---|
| | 5017 N Coolidge Ave |
| | Tampa, FL  33614-6421 |

| **COVERAGE** | **LIMIT OF INSURANCE** |
|---|---|
| REAL PROPERTY | INCLUDED IN BLANKET LIMIT OF INSURANCE |
| PERSONAL PROPERTY | NOT COVERED |

| **DEDUCTIBLE** | **AMOUNT** |
|---|---|
| NAMED STORM--DIRECT DAMAGE AND TIME ELEMENT | $50,000 |
| WATER DAMAGE DEDUCTIBLE | $25,000 |

**SPECIAL CONDITIONS**

PPP-0250 - ROOF COVERING VALUATION FORM APPLIES AT THIS LOCATION



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:   09/29/2021   To:   09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**   CPO 0117720 - 06

### SUMMARY OF PREMISES

| PREMISES #  2 | PREMISES ADDRESS |
| --- | --- |
| | 8218 N 279 W |
| | Lake Village, IN  46349-9498 |

| COVERAGE | LIMIT OF INSURANCE |
| --- | --- |
| REAL PROPERTY | INCLUDED IN BLANKET LIMIT OF INSURANCE |
| PERSONAL PROPERTY | INCLUDED IN BLANKET LIMIT OF INSURANCE |

| DEDUCTIBLE | AMOUNT |
| --- | --- |
| WATER DAMAGE DEDUCTIBLE | $25,000 |
| WIND AND HAIL--DIRECT DAMAGE AND TIME ELEMENT | $25,000 |

### SPECIAL CONDITIONS

PPP-0250 - ROOF COVERING VALUATION FORM APPLIES AT THIS LOCATION



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

| | |
|---|---|
| **NAMED INSURED:** | **POLICY PERIOD:** |
| Worldwide Door Components Inc | From:  09/29/2021   To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:**  CPO 0117720 - 06

---

**SUMMARY OF PREMISES**

| **PREMISES #  3** | **PREMISES ADDRESS** |
|---|---|
| | 10095 N Saginaw Blvd |
| | Fort Worth, TX  76179 |

---

| **COVERAGE** | **LIMIT OF INSURANCE** |
|---|---|
| REAL PROPERTY | INCLUDED IN BLANKET LIMIT OF INSURANCE |
| PERSONAL PROPERTY | INCLUDED IN BLANKET LIMIT OF INSURANCE |

---

| **DEDUCTIBLE** | **AMOUNT** |
|---|---|
| WATER DAMAGE DEDUCTIBLE | $25,000 |
| WIND AND HAIL--DIRECT DAMAGE AND TIME ELEMENT | $250,000 |

---

**SPECIAL CONDITIONS**

PPP-0250 - ROOF COVERING VALUATION FORM APPLIES AT THIS LOCATION



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

| NAMED INSURED: | POLICY PERIOD: |
|---|---|
| Worldwide Door Components Inc | From:  09/29/2021   To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:**  CPO 0117720 - 06

## SUMMARY OF PREMISES

| PREMISES #  4 | PREMISES ADDRESS |
|---|---|
| | 19175 N Dale Mabry Hwy |
| | Lutz, FL  33548-4983 |

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| REAL PROPERTY | $765,000 |
| PERSONAL PROPERTY | $20,000 |

| DEDUCTIBLE | AMOUNT |
|---|---|
| NAMED STORM--DIRECT DAMAGE AND TIME ELEMENT | $50,000 |
| WATER DAMAGE DEDUCTIBLE | $25,000 |



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021   To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**  CPO 0117720 - 06

## SUMMARY OF PREMISES

| PREMISES #  5 | PREMISES ADDRESS |
|---|---|
| | 101 West Palmetto St |
| | Arcadia, FL  34266-4319 |

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| REAL PROPERTY | $2,500,000 |
| PERSONAL PROPERTY | $2,500,000 |

| DEDUCTIBLE | AMOUNT |
|---|---|
| NAMED STORM--DIRECT DAMAGE AND TIME ELEMENT | $100,000 |
| WATER DAMAGE DEDUCTIBLE | $25,000 |

# Commercial Property Coverage Part Declarations



**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021   To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**  CPO 0117720 - 06

---

## BLANKET LIMITS OF INSURANCE

---

### REAL PROPERTY BLANKET LIMIT OF INSURANCE          $   5,325,000

The above Limit of Insurance is the most we will pay for direct physical loss or damage in any one occurrence for all **"real property"** at **"premises"** for which the Limit of Insurance is shown as Included in Blanket Limit of Insurance. If **"real property"** coverage does not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**. If a more specific Limit of Insurance is shown for **"real property"** at a **"premises"**, that Limit of Insurance replaces, and is not in addition to, the Blanket Limit of Insurance.

### PERSONAL PROPERTY BLANKET LIMIT OF INSURANCE          $   2,300,000

The above Limit of Insurance is the most we will pay for direct physical loss or damage in any one occurrence for all **"personal property"** at **"premises"** for which the Limit of Insurance is shown as Included in Blanket Limit of Insurance. If **"personal property"** coverage does not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**. If a more specific Limit of Insurance is shown for **"personal property"** at a **"premises"**, that Limit of Insurance replaces, and is not in addition to, the Blanket Limit of Insurance.

PPP-0001 (06 06)                                                                                          Page 36



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021   To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**  CPO 0117720 - 06

---

## ADDITIONAL COVERAGES -- LIMITS OF INSURANCE

Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Additional Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| CIVIL AUTHORITY | |
|     EXTRA EXPENSE | 30 DAYS |
| CONSEQUENTIAL LOSS--NET LEASEHOLD INTEREST | $      25,000 PER PREMISES |
| CONSEQUENTIAL LOSS--TENANT'S IMPROVEMENTS AND BETTERMENTS | $    250,000 PER PREMISES |
| CONSEQUENTIAL LOSS--UNDAMAGED STOCK | $    250,000 PER PREMISES |
| CONTAMINATION BY A REFRIGERANT | $      25,000 PER PREMISES |
| CRISIS EVENT MANAGEMENT COVERAGE | $    500,000 PER OCCURRENCE |
| DEBRIS REMOVAL--COVERED PROPERTY | COVERED |
| DEBRIS REMOVAL--SUPPLEMENTAL LIMIT | $    250,000 PER OCCURRENCE |
| DEBRIS REMOVAL--UNCOVERED PROPERTY | $        2,500 PER OCCURRENCE |
| DEFERRED PAYMENTS | $      50,000 PER OCCURRENCE |
| ELECTRONIC VANDALISM | |
|     DIRECT DAMAGE | $      25,000 ANNUAL AGGREGATE |
| EXPEDITING EXPENSE | $      25,000 PER PREMISES |
| EXTRA EXPENSE | $      25,000 PER PREMISES |
| FAIRS OR EXHIBITIONS | |
|     PERSONAL PROPERTY | $      50,000 PER OCCURRENCE |
| FIRE DEPARTMENT SERVICE CHARGE | $    250,000 PER PREMISES |
| FIRE PROTECTIVE EQUIPMENT REFILLS | COVERED |
| INFLATION GUARD | |
|     REAL PROPERTY | 4 % ANNUAL |
|     PERSONAL PROPERTY | 4 % ANNUAL |
| INGRESS/EGRESS | |
|     EXTRA EXPENSE | 30 DAYS |



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

| | |
|---|---|
| **NAMED INSURED:** | **POLICY PERIOD:** |
| Worldwide Door Components Inc | From:  09/29/2021   To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:**  CPO 0117720 - 06

---

## ADDITIONAL COVERAGES -- LIMITS OF INSURANCE

Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Additional Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| LOCK AND KEY REPLACEMENT | $       25,000 PER PREMISES |
| MICROORGANISMS | $       25,000 ANNUAL AGGREGATE |
| NEWLY ACQUIRED PREMISES | |
|     REAL PROPERTY | $   1,000,000  FOR 180 DAYS |
|     PERSONAL PROPERTY | $   1,000,000  FOR 180 DAYS |
|     BUSINESS INCOME | NOT COVERED |
|     EXTRA EXPENSE | $       25,000  FOR 180 DAYS |
| | THE ABOVE LIMITS APPLY SEPARATELY TO EACH NEWLY ACQUIRED PREMISES. |
| NEWLY ACQUIRED PROPERTY | |
|     REAL PROPERTY | $     250,000  PER PREMISES FOR 180 DAYS |
|     PERSONAL PROPERTY | $     250,000  PER PREMISES FOR 180 DAYS |
| OFF-PREMISES SERVICE INTERRUPTION--DIRECT DAMAGE | $     100,000 PER PREMISES |
| OUTDOOR TREES, SHRUBS, PLANTS, OR LAWNS | $     250,000 PER PREMISES |
| | $         5,000 PER TREE, SCRUB, PLANT, OR LAWN |
| POLLUTANT CLEAN UP AND REMOVAL--LAND AND WATER | $       25,000 ANNUAL AGGREGATE PER PREMISES |
| PRESERVATION OF PROPERTY | 180 DAYS |
| PROFESSIONAL FEES | $       25,000 PER OCCURRENCE |
| REPORTED UNSCHEDULED PREMISES | |
|     REAL PROPERTY | NOT COVERED |
|     PERSONAL PROPERTY | NOT COVERED |
|     EXTRA EXPENSE | NOT COVERED |
| REWARD PAYMENTS | $       25,000 PER OCCURRENCE |
| SALESPERSON SAMPLES | $       25,000 PER OCCURRENCE |



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021  To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**  CPO 0117720 - 06

## ADDITIONAL COVERAGES -- LIMITS OF INSURANCE

Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Additional Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| SPOILAGE -- EQUIPMENT BREAKDOWN | $  100,000 PER PREMISES |
| THEFT DAMAGE TO BUILDINGS | COVERED |
| UNINTENTIONAL ERRORS AND OMISSIONS COVERAGE | $  100,000 PER OCCURRENCE |
| UNREPORTED PREMISES | |
|     REAL PROPERTY | $  100,000 PER UNREPORTED PREMISES |
|     PERSONAL PROPERTY | $  100,000 PER UNREPORTED PREMISES |
|     BUSINESS INCOME | NOT COVERED |
|     EXTRA EXPENSE | $  10,000 PER UNREPORTED PREMISES |

# Commercial Property Coverage Part Declarations



**Zurich American Insurance Company**

**ZURICH**®

| NAMED INSURED: | POLICY PERIOD: |
|---|---|
| Worldwide Door Components Inc | From: 09/29/2021  To: 09/29/2022 |
|  | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:** CPO 0117720 - 06

## CRIME COVERAGE -- LIMITS OF INSURANCE

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| COMPUTER FRAUD | $ 100,000 PER OCCURRENCE |
| EMPLOYEE THEFT | $ 100,000 PER OCCURRENCE |
| FORGERY OR ALTERATION | $ 100,000 PER OCCURRENCE |
| FUNDS TRANSFER FRAUD | $ 100,000 PER OCCURRENCE |
| MONEY AND SECURITIES- INSIDE BUILDINGS | $ 100,000 PER OCCURRENCE |
| MONEY AND SECURITIES- OUTSIDE BUILDINGS | $ 100,000 PER OCCURRENCE |



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY NUMBER:**  CPO 0117720 - 06

**POLICY PERIOD:**

From:  09/29/2021  To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

---

### MARINE COVERAGE -- LIMITS OF INSURANCE

Limits of Insurance applicable at a **"premises"** that differ from those indicated below will be shown under the Summary of Premises section of this Declarations for that **"premises"**. Those Limits of Insurance replace, and are not in addition to, the Limits of Insurance shown below for those specified coverages and **"premises"**. If any Marine Coverages do not apply at any specific **"premises"**, the Limit of Insurance will show as Not Covered for those **"premises"**.

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| ACCOUNTS RECEIVABLE (REVENUE LOSS) | $  250,000 PER PREMISES |
| ACCOUNTS RECEIVABLE (REVENUE LOSS) – AWAY FROM PREMISES | $  250,000 PER OCCURRENCE |
| FINE ARTS | $  25,000 PER PREMISES |
| FINE ARTS – AWAY FROM PREMISES | $  25,000 PER OCCURRENCE |
| INSTALLATION AND SERVICE PROPERTY | |
|    STOCK TO BE INSTALLED | $  25,000 PER OCCURRENCE - INSTALLATION PREMISES |
| | $  25,000 PER OCCURRENCE - TEMPORARY STORAGE LOCATION |
| | $  25,000 PER OCCURRENCE - TRANSIT |
| TOOLS AND EQUIPMENT SCHEDULED ITEMS | NOT COVERED |
| UNSCHEDULED TOOLS AND EQUIPMENT | $  10,000 PER OCCURRENCE |
| | $  1,000 PER ITEM |

Unscheduled tools and equipment coverage is intended for items valued at or less than the limit per any one item shown above. An item valued at more than this limit must be specifically scheduled or no coverage applies to that item.

| | |
|---|---|
| ORIGINAL INFORMATION PROPERTY | $  250,000 PER PREMISES |
| ORIGINAL INFORMATION PROPERTY – AWAY FROM PREMISES | $  250,000 PER OCCURRENCE |
| TRANSIT | |
|    PERSONAL PROPERTY | $  25,000 PER OCCURRENCE |
|    BUSINESS INCOME | NOT COVERED |



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

| | |
|---|---|
| **NAMED INSURED:** | **POLICY PERIOD:** |
| Worldwide Door Components Inc | From:  09/29/2021   To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |

**POLICY NUMBER:**  CPO 0117720 - 06

---

## DEDUCTIBLES

GENERAL DEDUCTIBLES

PROPERTY DEDUCTIBLE:                                   $       10,000 PER OCCURRENCE

The above deductible applies to all loss, damage, cost, or expense covered by this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

COMPUTER FRAUD DEDUCTIBLE:                      $       10,000 PER OCCURRENCE

The deductible applies to all loss or damage covered by Computer Fraud coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

EMPLOYEE THEFT DEDUCTIBLE:                        $       10,000 PER OCCURRENCE

The deductible applies to all loss or damage covered by Employee Theft coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

FORGERY OR ALTERATION DEDUCTIBLE:         $       10,000 PER OCCURRENCE

The deductible applies to all loss or damage covered by Forgery or Alteration coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

FUNDS TRANSFER FRAUD DEDUCTIBLE:          $       10,000 PER OCCURRENCE

The deductible applies to all loss or damage covered by Funds Transfer Fraud coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

MONEY AND SECURITIES -- INSIDE                   $       10,000 PER OCCURRENCE
BUILDINGS DEDUCTIBLE:

The deductible applies to all loss or damage covered by Money and Securities – Inside Buildings coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

MONEY AND SECURITIES -- OUTSIDE                 $       10,000 PER OCCURRENCE
BUILDINGS DEDUCTIBLE:

The deductible applies to all loss or damage covered by Money and Securities – Outside Buildings coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY NUMBER:**  CPO 0117720 - 06

**POLICY PERIOD:**

From:  09/29/2021   To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

## DEDUCTIBLES

TRANSIT DEDUCTIBLE:                               $        10,000 PER OCCURRENCE

The above deductible applies to all loss or damage covered by Transit coverage contained in this Commercial Property Coverage Part, unless a specific coverage deductible is shown elsewhere on this Declarations or an endorsement.

WATER DAMAGE DEDUCTIBLE:                   $        25,000 PER OCCURRENCE

Loss or damage to Covered Property caused by **"certain water"** is subject to a separate Water Damage Deductible. The Water Damage Deductible will be stated in the Summary of Premises section of this Declarations for that specific **"premises"**.



# Commercial Property Coverage Part Declarations

**Zurich American Insurance Company**

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021  To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**   CPO 0117720 - 06

## DEDUCTIBLES

CATASTROPHE PERIL DEDUCTIBLES:

NAMED STORM DEDUCTIBLES

Loss or damage to Covered Property caused by a **"named storm"** is subject to separate deductible amounts. The deductibles applicable to **"named storm"** are stated in the Summary of Premises section of this Declarations for that specific **"premises"**. If the Named Storm Deductibles apply to loss or damage at **"reported unscheduled premises"**, the deductible amounts for **"reported unscheduled premises"** are stated on the Catastrophe Coverage – Limits of Insurance and Deductibles section of this Declarations.

The Named Storm Deductibles only apply to loss or damage that, but for the application of the Deductibles, would be paid by us under this Commercial Property Coverage Part.

WIND AND HAIL DEDUCTIBLES

Loss or damage to Covered Property caused by wind or hail is subject to separate deductible amounts.  The deductibles applicable to wind and hail are stated in the Summary of Premises section of this Declarations for that specific **"premises"**.  If the Wind and Hail Deductibles apply to loss or damage at **"reported unscheduled premises"**, the deductible amounts for **"reported unscheduled premises"** are stated on the Catastrophe Coverage – Limits of Insurance and Deductibles section of this Declarations.

The Wind and Hail Deductibles only apply to loss or damage that, but for the application of the Deductibles, would be paid by us under this Commercial Property Coverage Part.



# Commercial Property Coverage Part Declarations

Zurich American Insurance Company

**NAMED INSURED:**

Worldwide Door Components Inc

**POLICY PERIOD:**

From:  09/29/2021  To:  09/29/2022
12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

**POLICY NUMBER:**  CPO 0117720 - 06

---

**CATASTROPHE COVERAGE -- LIMITS OF INSURANCE AND DEDUCTIBLES**

---

Catastrophe Coverages shown below apply only at those **"premises"** that show an applicable Limit of Insurance for that Catastrophe Coverage in the Summary of Premises section of this Declarations. If coverage applies at **"reported unscheduled premises"**, those Limits of Insurance and Deductibles are shown below.

| CATASTROPHE COVERAGE | LIMITS OF INSURANCE AND DEDUCTIBLES |
|---|---|
| NAMED STORM--DIRECT DAMAGE AND TIME ELEMENT DEDUCTIBLE | SEE SUMMARY OF PREMISES SECTION |
| WIND AND HAIL--DIRECT DAMAGE AND TIME ELEMENT DEDUCTIBLE | SEE SUMMARY OF PREMISES SECTION |

# Commercial Property Coverage Part
# General Provisions



**IMPORTANT INFORMATION ABOUT THIS COMMERCIAL PROPERTY COVERAGE PART. PLEASE READ IT CAREFULLY.**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and what is not covered.

## DEFINITIONS AND MEANINGS

Throughout this Commercial Property Coverage Part, the words "you" and "your" refer to the Named Insured shown on the Commercial Property Coverage Part Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance coverage.

The word "occurrence" includes all losses or damages that are attributable directly or indirectly to one cause or a series of similar causes.  All such losses or damages will be treated as one occurrence.  However, if occurrence is specifically defined in a Coverage Form, that definition applies to the insurance provided by that Coverage Form and any endorsements to that Coverage Form.

For purposes of this Commercial Property Coverage Part:

**a.**   Covered Property is the property that is insured for loss or damage under the applicable Coverage Forms or endorsements.

**b.**   Covered Income is the income that is insured for loss under the applicable Coverage Forms or endorsements.

Other words and phrases that appear in bold and in quotation marks, or in quotation marks only, have special meaning.  You will find these definitions in the Commercial Property Definitions, Coverage Forms, and in endorsements to the Coverage Forms.

Words or phrases that are not defined are intended to have their ordinary or common meaning.  Disputes concerning the meaning of words or phrases will be resolved using the most recently published version of Webster's Unabridged Dictionary.

Unless otherwise stated, words that are used in the plural tense include the singular tense (and vice versa).

## FORMS

In addition to these General Provisions, the Commercial Property Coverage Part contains the Common Policy Conditions, Commercial Property Conditions, Commercial Property Definitions, and various Coverage Forms and endorsements as shown on the Property Forms and Endorsements Section of the Schedule of Forms and Endorsements.  Some forms and endorsements may refer to other Coverage Forms, but you only have coverage under a particular Coverage Form if it is shown on the Property Forms and Endorsements Section of the Schedule of Forms and Endorsements.  Similarly, even if the Property Forms and Endorsements Section of the Schedule of Forms and Endorsements shows that you have a

Coverage Form, you will not have coverage for each coverage and optional coverage mentioned in that Coverage Form unless they are shown on the Commercial Property Coverage Part Declarations.

## DEDUCTIBLES

If a deductible applies, it is described in the applicable Coverage Form or endorsement.  The amount of the deductible to be applied is shown on the Summary of Premises, Deductibles, or Catastrophe Coverage - Limits of Insurance and Deductibles sections of the Commercial Property Coverage Part Declarations.

Unless otherwise stated in a Coverage Form or endorsement, if more than one deductible applies, we will apply each deductible separately.  Except for covered loss or damage due to **"earth movement"**, **"flood"**, or **"named storm"**, or to wind or hail when a separate Wind Deductible or Wind and Hail Deductible is applicable, the total of all deductible amounts applied will not exceed the highest applicable deductible for loss or damage to Covered Property and the highest applicable deductible for loss under **"time element coverage"**.

Loss or damage to Covered Property caused by **"earth movement"**, **"flood"**, **"named storm"**, water damage, theft and wind or hail may be subject to separate deductible amounts.  The Summary of Premises section of the Commercial Property Coverage Part Declarations identify the **"premises"** subject to the separate deductibles and the deductible amounts.   If the Earth Movement Deductibles, Flood Deductibles, Named Storm Deductibles, or Wind and Hail Deductibles apply to loss or damage at **"reported unscheduled premises"**, to **"contractor's equipment"** away from **"premises"**, or to **"installation property"** away from **"premises"**, the deductible amounts are stated on the Catastrophe Coverage - Limits of Insurance and Deductibles section of the Commercial Property Coverage Part Declarations.

The Earth Movement Deductibles, Flood Deductibles, Named Storm Deductibles, Wind Deductibles, and Wind and Hail Deductibles only apply to loss or damage that, but for the application of the Deductibles, would be paid by us under this Commercial Property Coverage Part.

# Commercial Property Conditions



**Table of Contents**

| Conditions | Page No. |
|---|---|
| Abandonment | 1 |
| Appraisal | 1 |
| Concealment, Misrepresentation, or Fraud | 1 |
| Conformity to Statute | 1 |
| Control of Property | 2 |
| Duties in the Event of Loss or Damage | 2 |
| Insurance Under Two or More Coverages | 2 |
| Legal Action Against Us | 2 |
| Liberalization | 3 |
| Loss Payment | 3 |
| Mortgageholders | 4 |
| No Benefit to Bailee | 4 |
| Other Insurance | 5 |
| Policy Period, Coverage Territory | 5 |
| Recovered Property | 6 |
| Suspended Equipment | 6 |
| Transfer of Rights of Recovery Against Others to Us | 6 |

PPP-0102 (08/16)

# Commercial Property Conditions



This Commercial Property Coverage Part is subject to the following conditions as well as the Common Policy Conditions.

## A. ABANDONMENT

There can be no abandonment of any property to us.

## B. APPRAISAL

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent, disinterested, and impartial appraiser who has no direct or indirect financial interest in the claim. The two appraisers will select an umpire. If they cannot agree, either may request that selection of an umpire be made by a judge of a court having jurisdiction. The appraisers will state separately the value of each item of lost or damaged property as of the date of loss and amount of loss in accordance with the Valuation provisions of the applicable Coverage Form or, if not stated, the **"actual cash value"** and **"replacement cost"**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim in whole or in part, based on the terms and conditions of the policy.

## C. CONCEALMENT, MISREPRESENTATION, OR FRAUD

This policy is void in any case of fraud by you or any other insured as it relates to this Commercial Property Coverage Part at any time before or after a loss. It is also void as to you or any other insured, and we will not pay you or any other insured, if you or any other insured, at any time before or after a loss, intentionally conceal or misrepresent a material fact concerning:

1. The insurance provided by this policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under the policy.

## D. CONFORMITY TO STATUTE

Terms of this Commercial Property Coverage Part that are in conflict with the statutes of the state in which this policy is issued are hereby amended to conform to such statutes.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0102 (08 16)
Page 1 of 7

## E.  CONTROL OF PROPERTY

Breach of any provision contained in the Commercial Property Conditions or Common Policy Conditions by any person, other than you, beyond your direction or control will not affect this insurance.

The breach of any provision contained in the Commercial Property Conditions or Common Policy Conditions at any one or more locations will not affect coverage at any location where, at the time of loss or damage, there was no breach.

## F.  DUTIES IN THE EVENT OF LOSS OR DAMAGE

**1.**  You must see that the following are done in the event of loss or damage to Covered Property:

  **a.**  Notify the police if a law may have been broken.

  **b.**  Give us prompt notice of the loss or damage, including a description of the property involved.

  **c.**  As soon as possible, give us a description of how, when, and where the loss or damage occurred.

  **d.**  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a **"covered cause of loss"**.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

  **e.**  At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values, and amount of loss claimed.

  **f.**  As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also, permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.

  **g.**  Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

  **h.**  Cooperate with us in the investigation or settlement of the claim.

**2.**  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records.  In the event of an examination, an insured's answers must be signed.

**3.**  Failure of an agent or one of your employees, other than an officer, partner, manager, **"member"**, director, trustee, proprietor, or risk management employee, to notify us of any loss or damage that they know about will not affect the insurance afforded you by this Commercial Property Coverage Part.

## G.  INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## H.  LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Commercial Property Coverage Part unless:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0102 (08 16)

Page 2 of 7

1.  All of its terms have been fully complied with; and

2.  The action is brought within 2 years after the date on which the loss or damage commenced.

## I.  LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Commercial Property Coverage Part, without additional premium and within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Commercial Property Coverage Part.

## J.  LOSS PAYMENT

The following apply unless otherwise provided in a Coverage Form in this Commercial Property Coverage Part:

1.  In the event of loss or damage covered by this Commercial Property Coverage Part, at our option, we will either:

    a.  Pay the amount of the loss or damage;

    b.  Pay the cost of repairing or replacing the lost or damaged property;

    c.  Take all or any part of the property at an agreed or appraised value; or

    d.  Repair, rebuild, or replace the property with other property of like kind and quality.

    We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2.  If we elect to exercise option 1.c. with respect to any branded or labeled **"merchandise"** or **"finished stock"**, you may:

    a.  Stamp salvage on the **"merchandise"** or **"finished stock"**, or its containers, if the stamp will not physically damage the **"merchandise"** or **"finished stock"**; or

    b.  Remove the brands or labels, if doing so will not physically damage the **"merchandise"** or **"finished stock"**. You must relabel the **"merchandise"** or **"finished stock"**, or its containers, to comply with the law.

    We will assume the cost of stamping or removal and charge it to salvage expense.

3.  We will not pay you more than your financial interest in the Covered Property.

4.  This Commercial Property Coverage Part provides no rights or benefits to any other person or organization, unless otherwise provided.  Any claim for loss that is covered under this Commercial Property Coverage Part must be presented by you.  At our option, we may adjust the loss with the owners of lost or damaged property if other than you.  If we pay the owners, such payment will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

5.  We may elect to defend you against suits arising from claims of owners of Covered Property.  We will do this at our expense.

6.  We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Commercial Property Coverage Part and:

    a.  We have reached agreement with you on the amount of the loss; or

    b.  An appraisal award has been made.

7.  The first Named Insured shown on the Declarations will be the payee for any payment of claims that we may make with respect to this Commercial Property Coverage Part, subject to the Mortgageholders Condition below and any endorsements. However, our payment for loss or damage to **"personal property of others"** may be to the account of the owner of the property.

## K.  MORTGAGEHOLDERS

1.  Mortgageholder includes trustee.

2.  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown on the Declarations in their order of precedence, as interests may appear.

3.  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

4.  If we deny your claim because of your acts or because you have failed to comply with the terms of this Commercial Property Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    a.  Pays the premium due under this Commercial Property Coverage Part at our request if you have failed to do so;

    b.  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    c.  Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgageholder.

    All of the terms of this Commercial Property Coverage Part will then apply directly to the mortgageholder.

5.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Commercial Property Coverage Part:

    a.  The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    b.  The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

6.  If we cancel the policy, we will give written notice to the mortgageholder at least:

    a.  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

7.  If we elect not to renew the policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## L.  NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0102 (08 16)
Page 4 of 7

**M. OTHER INSURANCE**

1. If you have other insurance subject to the same plan, terms, conditions, and provisions as the insurance under this Commercial Property Coverage Part, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Commercial Property Coverage Part bears to the sum of all the Limits of Insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in Paragraph 1. above, we will pay only the least of the following amounts:

   a. Any Limit of Insurance applicable to the Covered Property that has sustained such loss or damage;

   b. The amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not, without application of any deductible amounts contained elsewhere in this Commercial Property Coverage Part; or

   c. The amount we would have paid had such other insurance not existed.

3. Paragraphs 1. and 2. above do not apply to other insurance that is purchased as insurance in excess of the Limit of Insurance under this Commercial Property Coverage Part.

**N. POLICY PERIOD, COVERAGE TERRITORY**

Under this Commercial Property Coverage Part:

1. We cover loss or damage which happens:

   a. During the policy period shown on the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions); and

   b. Puerto Rico.

3. When this Commercial Property Coverage Part provides coverage for property in transit:

   a. The coverage territory is extended to Canada for property in transit as long as the origin or destination is included in 2. above, except when property is being transported by a vessel.

   b. The coverage territory is extended to everywhere else in the world for property while being transported by an aircraft, as long as either the origin or destination is included in 2. above and neither the origin nor the destination is in any country upon which the United States government has imposed sanctions, embargoes or similar prohibitions.

4. If the property is in transit by a vessel that originated outside the coverage territory included in 2. above, then coverage commences when the property has been fully discharged from the vessel onto a point within the coverage territory.

5. If the property is in transit by a vessel with a destination outside the coverage territory included in 2. above, then coverage ends when the property has been loaded on board the vessel.

6. For the Fairs or Exhibitions Additional Coverage, the Coverage Territory is extended to Canada.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0102 (08 16)

Page 5 of 7

## O. RECOVERED PROPERTY

1. If either you or we recover any property after loss settlement, that party must give the other prompt notice.  At your option, you may do one of the following:

   a.  Keep the loss payment and transfer the recovered property to us; or

   b.  Keep the recovered property and return the loss payment to us.  If you do this, we will pay for the recovery expenses and the expense to repair the recovered property up to the applicable Limit of Insurance.

2. The amount of loss can be reduced by any salvage recovery through the sale of the damaged Covered Property.

   a.  If, following a loss, a recovery is made from the sale of damaged Covered Property and your claim has not yet been paid, we will be entitled to this salvage recovery until we have recovered our salvaging fees and expenses.  The balance of the salvage recovery will be paid to you and the amount of your loss settlement will be reduced by this balance.

   b.  If your claim has already been paid when a salvage recovery is made, we will be entitled to the salvage proceeds until we have recovered the difference between the amount we paid you for your claim and the amount we would have paid you had the salvage recovery been handled in accordance with a. above.  Any balance of the salvage recovery will then be promptly refunded to you.

## P. SUSPENDED EQUIPMENT

We, or any of our representatives, have the right to declare property to be **"suspended equipment"** when the property is found to be in, or exposed to, a dangerous condition, provided we have:

1. Told you of the dangerous condition immediately upon discovering it and informed you of its designation as **"suspended equipment"**; and

2. Mailed or delivered a written notice of such condition and designation, within 24 hours of the discovery, which notice is mailed or delivered to:

   a.  Your last known address; or

   b.  The address where said object is located.

   Any designation of **"suspended equipment"** can only be rescinded, in writing, by endorsement to this Commercial Property Coverage Part.

   Any designation of **"suspended equipment"** will result in your receiving a pro rata refund of premium you paid for the coverage of that property under this Commercial Property Coverage Part.  However, any designation of **"suspended equipment"** will be in effect if we have not yet made or offered the refund.

## Q. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Commercial Property Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and cooperate with our efforts to recover our payment and must do nothing after loss to impair our rights.  But you may, without restricting your coverage, waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

**a.** Someone insured under this Commercial Property Coverage Part;

**b.** A business firm owned or controlled by you;

**c.** A business firm, or an individual, that owns or controls you; or

**d.** Your tenant.

Any recovery as a result of subrogation proceedings arising out of a covered loss, net of fees (including legal fees) and expenses we incur in such subrogation proceedings, will be shared with you in the following manner:

1. We will add the amount of any deductible you incurred to the amount of any other provable uninsured loss you incurred. This is your interest.

2. We will determine the proportion your interest bears to the entire provable loss (both insured and uninsured). This is your pro rata share.

3. We will reimburse to you your pro rata share of the recovery after deduction, from the total recovery, of recovery expenses paid by us and after deduction of any legal fees paid by us. We will retain the balance. We will not owe you any amount for any legal fees or any expenses incurred by you in furtherance of any recovery unless those fees or expenses are approved by us in writing and in advance of your incurring those fees or expenses.

# Commercial Property Definitions



1. **"Accounts receivable records"** means accounting records you use to document the billing and collection of **"money"** due from your customers, regardless of what material it is inscribed, printed, written, or recorded upon.

2. **"Actual cash value"** means **"replacement cost"** reduced by each of the following:

    **a.** Physical deterioration;

    **b.** Depreciation;

    **c.** Obsolescence;

    **d.** Depletion;

    **e.** Non-conformity to codes, ordinances, regulations, or statutes; and

    **f.** The cost to reconstruct or remodel undamaged portions of **"real property"**.

    But in no event will **"actual cash value"** be higher than the **"market value"**.

3. **"Amount you actually spend"** means:

    **a.** The total payments you make to an entity you do not own or operate at the time of loss or damage to repair the damaged **"real property"** or **"personal property"**; and

    **b.** For goods and services provided by entities you own or operate at the time of loss or damage to repair the damaged **"real property"** or **"personal property"**:

        **1)** Direct payroll cost, excluding fixed payroll, for labor directly chargeable to the repair, rebuilding, or replacement of the damaged property;

        **2)** **"Replacement cost"** for your **"merchandise"** used in the repair, rebuilding, or replacement of the damaged property;

        **3)** Regular cash selling price, less any discounts and expenses you otherwise would have had, for your **"finished stock"** used in the repair, rebuilding, or replacement of the damaged property; and

        **4)** **"Replacement cost"** for your property other than **"merchandise"** or **"finished stock"** used in the repair, rebuilding, or replacement of the damaged property if replaced within 24 months, otherwise your original cost.

4. **"Banking premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

5. **"Business income"** means:

    **a.** **"Net income"**; plus

    **b.** **"Continuing expenses"**.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 1 of 19

6. **"Cessation of work"** means any period of time when your business activities have ceased.

   **"Cessation of work"** does not mean:

   a. Any period of time during which your business activities would not normally have been conducted, such as weekends or holidays;

   b. Seasonal activity planned in advance;

   c. Schedule delays due to weather; or

   d. Labor actions beyond your control.

7. **"Cloud facility"** means a data center(s) owned and operated by others whom you depend on to provide **"information technology services"**.

8. **"Computer systems"** means:

   a. Computer hardware, software, and electronic data;

   b. Input and output devices;

   c. Data storage devices;

   d. Networking equipment and components;

   e. Firmware; and

   f. Electronic backup facilities, including systems accessible through the internet, intranets, or virtual private networks.

9. **"Contaminant"** means any substance that creates an impurity when it mixes with or comes into contact with another substance.

10. **"Continuing expenses"** means:

    a. Your continuing normal operating expenses including, but not limited to:

       1) Payroll;

       2) Rental payments as tenants; and

       3) Factory overhead; and

    b. Charges, which are the legal obligations of your tenants and have not been satisfied, and which are now your obligation.

    **"Continuing expenses"** does not mean:

    a. **"Extra expense"**;

    b. Expediting expense;

    c. **"Research and development continuing expenses"**;

    d. Any charges or expenses that do not necessarily continue during the **"period of restoration"** or **"extended period of indemnity"**; or

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 2 of 19

  **e.** Bad debts.

11. **"Contractor's employees' property"** means tools and clothing owned by your officers, directors, partners, **"managers"**, **"members"**, or employees (including leased or temporary employees).

12. **"Contractor's equipment"** means:

  **a.** Equipment, tools, machinery, and other mechanical and electrical devices of a mobile nature used for contracting, installation, erection, repair, or moving operations or projects;

  **b.** Self-propelled vehicles designed and used primarily to carry mounted equipment;

  **c.** Vehicles designed for highway use that are unlicensed and not operated on public roads; and

  **d.** Watercraft, marine floats, or barges less than 26 feet long,

owned by you or owned by others in your care, custody, or control.

**"Contractor's equipment"** does not mean:

  **a.** Contraband or property in the course of illegal transportation or trade;

  **b.** Aircraft;

  **c.** Railroad cars;

  **d.** Temporary or permanent forms, shoring, scaffolding, or falsework;

  **e.** **"Contractor's employees' property"**; or

  **f.** Recreational watercraft.

13. **"Contributing locations"** means locations owned and operated by others who:

  **a.** You depend on to deliver materials or services directly to you, or to others under your contract of sale; or

  **b.** Pay you royalties, licensing fees, or commissions under written agreements.

**"Contributing locations"** does not mean:

  **a.** Locations owned and operated by others who you depend upon to provide only power, communications, or other utility services to you; or

  **b.** **"Manufacturing locations"**.

14. **"Covered cause of loss"** means a fortuitous cause or event, not otherwise excluded, which actually occurs during this policy period.

**"Covered cause of loss"** does not mean:

  **a.** A fortuitous cause or event, whether or not excluded, which actually occurred prior to this policy period, regardless of the date on which it first becomes manifest or is first discovered; or

  **b.** Damage.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

15. **"Defective materials"** means materials which are broken, inadequate, improper, faulty, flawed, improperly specified, contaminated, unfit for the purpose intended, or which contain a latent defect.

16. **"Denial of service"** means the direction of a high volume of inquiries to web site or e-mail destinations, effectively denying or limiting legitimate access, whether or not known to you.

17. **"Dependent premises"** means the following types of locations:

    c.   **"Contributing locations"**;

    b.   **"Recipient locations"**;

    c.   **"Manufacturing locations"**; and

    d.   **"Leader locations"**.

    If the location is described by an address only, it includes the area associated with that address in which you or the occupant are legally entitled to conduct **"operations"** and includes that area extending 1,000 feet beyond that address.

    If the location is described by an address and further described by geographic boundaries, only the area within such boundaries, and within 1,000 feet thereof, is included.

    **"Dependent premises"** does not mean any of the above locations within any country in which the United States government or Canadian government have imposed sanctions, embargoes, or similar prohibitions.

18. **"Duplicate information property"** means recorded information in any format which can either be copied from an existing original or duplicate or replaced by purchasing an existing duplicate that is available for sale, including any material it is recorded upon.

    **"Duplicate information property"** does not mean:

    a.   **"Stock"**;

    b.   **"Fine arts"**;

    c.   **"Money"**;

    d.   **"Securities"**; or

    e.   **"Electronic data processing hardware"**.

19. **"Earth movement"** means earthquake or other seismic activity, rising or shifting of earth (including frost heaves), or subsidence other than **"sinkhole collapse"**.

    **"Earth movement"** does not mean landslide, avalanche, or volcanic eruption, explosion or effusion, or tsunami.

20. **"Electronic data processing hardware"** means:

    a.   A network of electronic components capable of accepting information and processing it according to a plan and which exists primarily to generate information in tangible form or on electronic media, as well as air conditioning equipment and fire protection equipment used exclusively for data processing operations;

    b.   Telephone equipment; or

    c.   Facsimile equipment.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 4 of 19

**"Electronic data processing hardware"** does not mean computers, devices, or components which:

a. Exist primarily to control or operate machinery or equipment or to produce **"stock in process"** or **"finished stock"**; or

b. Are **"stock"**.

21. **"Electronic vandalism"** means:

a. Willful or malicious electronic alteration, manipulation, tampering, or destruction of **"accounts receivable records"**, **"duplicate information property"**, **"electronic data processing hardware"**, **"original information property"**, or **"research and development property"**;

b. Introduction of a virus, code, or similar instruction that disrupts the normal operation of **"electronic data processing hardware"** and may destroy, alter, contaminate, or compromise the integrity, quality, or performance of **"accounts receivable records"**, **"duplicate information property"**, **"electronic data processing hardware"**, **"original information property"**, or **"research and development property"**;

c. Unauthorized viewing, copying, or use of any electronic **"accounts receivable records"**, **"duplicate information property"**, **"original information property"**, or **"research and development property"**; and

d. **"Denial of service"**.

22. **"Equipment breakdown cause of loss"** means any of the following:

a. Artificially generated electrical current, including electrical arcing, that injures or disturbs electrical devices, wiring, or equipment;

b. Explosion, rupture, or bursting of steam boilers, steam pipes, steam engines, steam turbines, gas turbines, or apparatus attached to and forming a part thereof, when owned, operated, or controlled by you; except for explosion of accumulated gases or fuel within the furnace of any fired vessel, other than gas turbines, or within the flues or passages through which the products of combustion pass;

c. Any condition or event inside steam boilers, steam pipes, steam engines, steam turbines, gas turbines, or apparatus attached to and forming a part thereof, when owned, operated, or controlled by you; except for explosion of accumulated gases or fuel within the furnace of any fired vessel, other than gas turbines, or within the flues or passages through which the gases of combustion pass;

d. Any condition or event, other than an explosion, inside hot water boilers, other water heating equipment, engines other than steam engines, or pressure vessels when owned, operated, or controlled by you; and

e. Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force, of property owned, operated, or controlled by you.

23. **"Extended period of indemnity"** means the period of time that begins on the date the **"period of restoration"** ends and ends on the earlier of:

a. The date your gross sales, including rental income, are restored to the amount that would have existed if no direct physical loss or damage occurred; or

b. The date calculated by adding the number of days shown on the Declarations for Extended Period of Indemnity--Business Income to the date the **"period of restoration"** ended.

**"Extended period of indemnity"** does not mean **"research and development extended period of indemnity"**.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 5 of 19

24. **"Extra expense"** means operating expenses you incur during the **"period of restoration"** that would not have been necessary to incur if there had been no direct physical loss or damage to the property, provided such expenses are incurred:

   a. In an attempt to avoid a **"suspension"** of or to continue those **"operations"** which have been affected by the direct physical loss or damage to the property; or

   b. In an attempt to minimize the **"period of restoration"**.

   **"Extra expense"** does not mean:

   a. Costs incurred to purchase **"merchandise"** as a replacement for your **"finished stock"**;

   b. **"Continuing expenses"** or **"research and development continuing expenses"**;

   c. Costs to repair, rebuild, or replace any property, or research or restore **"original information property"**; or

   d. Amounts incurred on financing or investment activity conducted for your own account.

25. **"Fine arts"** means paintings, etchings, pictures, tapestries, and other bona fide works of art, rarity, historical value, or artistic merit such as rugs, statuary, marbles, bronzes, antiques, furniture, rare books, antique silver, manuscripts, porcelains, rare glass, and bric-a-brac.

26. **"Finished stock"** means **"goods you have manufactured"** which are completed and ready for packing, shipment, installation, or sale.

   **"Finished stock"** does not mean **"goods you have manufactured"** which are completed and ready for packing, shipment, installation, or sale on a **"premises"** or **"reported unscheduled premises"** of any retail outlet at which you are insured by Business Income Insurance.

27. **"Flood"** means a general and temporary condition of partial or complete inundation of land areas from:

   a. The overflow, or the expansion beyond normal boundaries, of inland or tidal waters, including natural or man-made lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans, or any other body of water or watercourse;

   b. Waves or tides, including tsunami;

   or their spray, whether driven by wind or not.

28. **"Fungus"** means any type or form of fungus, mold, or mildew and any mycotoxins, spores, scents, or by-products produced or released by fungi.

29. **"Goods you have manufactured"** means:

   a. Goods manufactured at a location you own or operate; and

   b. Goods manufactured at a location that you do not own or operate, provided:

      1) You contracted for the goods to be manufactured exclusively for you; and

      2) You are the owner or licensee of the design, patent, trademark, or copyright for the goods.

30. **"Green roofing systems"** means environmentally friendly roof coverings as defined by the LEED® Green Building Rating System™ of the U.S. Green Building Council or any other trees, shrubs, plants, grass, or lawns and other landscaping materials which are part of a vegetated roof.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 6 of 19

**31.** **"Gross leasehold interest"** means:

    **a.** The monthly rental value of the **"premises"** or **"reported unscheduled premises"** you rent or lease on the date the direct physical loss or damage occurs; minus

    **b.** The actual monthly rent you pay, including taxes, insurance, janitorial, or other services you pay as part of the rent.

       Example:

| | |
|---|---|
| Monthly rental value of your leased **"premises"**: | $1,000 |
| Monthly rent including taxes, insurance, janitorial, or other services that you pay for as part of the rent: | - $700 |
| **"Gross leasehold interest"** | $300 |

**32.** **"Improvements and betterments"** means fixtures, alterations, installations, or additions:

    **a.** Comprising a part of the building you occupy as a tenant but do not own;

    **b.** Made or acquired at your expense exclusive of rent paid by you or for which you are legally required by written contract to insure; and

    **c.** Which you cannot remove legally.

**33.** **"Information technology services"** means technology services provided under a written contract consisting of:

    **a.** Maintaining, managing, or controlling **"computer systems"**;

    **b.** Hosting or facilitating your internet website or web application(s); and

    **c.** Other related technology services.

    **"Information technology services"** does not mean video, voice, or data communication services.

**34.** **"Installation property"** means materials, supplies, equipment, and machinery, and any other similar property owned by you or owned by others, which are in your care, custody, or control, that you are contractually responsible for, which are intended to become a permanent part of an **"installation or service premises"**.

    **"Installation property"** does not mean **"landscaping materials"** or land.

**35.** **"Installation or service premises"** means a location that is not owned, leased, or operated by you, at which you are installing, constructing, or servicing property.

    **"Installation or service premises"** does not mean a **"rigging premises"**.

**36.** **"Landscaping materials"** means trees, shrubs, plants, grass, lawns, and other landscaping materials, including **"green roofing systems"** owned by you or owned by others, which are in your care, custody, or control that you are contractually responsible for, and intended to become a permanent part of an **"installation or service premises"**.

    **"Landscaping materials"** does not mean trees, shrubs, plants, grass, lawns, or other landscaping materials or **"green roofing systems"** that exist as a permanent part of an **"installation or service premises"** prior to the start of the project.

**37.** **"Leader locations"** means locations owned and operated by others who you depend on to attract customers to your business.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 7 of 19

38. **"Malfunction"** means any abnormal or imperfect function, including the failure to function, of machinery, systems, apparatus, or equipment.

39. **"Manager"** means a person elected by the **"members"** to direct the limited liability company's business affairs.

40. **"Manufacturing locations"** means locations owned and operated by others who you depend on to manufacture products for delivery to your customers under contract of sale.

41. **"Market value"** means the price which the property might be expected to realize if offered for sale in a fair market on the date of loss or damage.

42. **"Member"** means an owner of a limited liability company represented by its membership interest, who also may serve as a **"manager"**.

43. **"Merchandise"** means:

   a. Goods held for sale or installation by you which are not **"goods you have manufactured"**; and

   b. **"Goods you have manufactured"** which are completed and ready for packing, shipment, installation, or sale on a **"premises"** or **"reported unscheduled premises"** of any retail outlet at which you are insured by Business Income Insurance.

44. **"Microorganism"** means any type or form of organism of microscopic or ultramicroscopic size including, but not limited to, **"fungus"**, wet or dry rot, virus, algae, or bacteria, or any by-product.

45. **"Mistake"** means any act or decision, whether intentional or negligent, including the failure to act or decide, of any person, group, organization, or governmental body which creates or allows a result which is unexpected, inadequate, defective, faulty, or otherwise unsuitable for the intended purpose.

46. **"Money"** means:

   a. Currency, coins, bullion, or bank notes, whether or not in current use; and

   b. Travelers checks, register checks, food stamps, and money orders held for sale to the public.

47. **"Monthly leasehold interest"** means the original costs you paid for:

   a. Bonus Payments – **"Money"** you originally paid to acquire your lease, but not including rent, prepaid rent, or security; and

   b. Prepaid Rent - Advance rent you paid that will not be refunded to you, other than periodic rental payments,

   divided by the number of months left in your lease at the time of the expenditure.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 8 of 19

Example:

| | |
|---|---|
| Original cost of Bonus Payment | $4,000 |
| With 20 months left in the lease at the time of Bonus Payment | ÷20 |
| **"Monthly leasehold interest"** | $200 |

48. **"Net income"** means the net profit or loss, including rental income from tenants, that would have been earned or incurred before taxes.

49. **"Net leasehold interest"** means the sum of:

    **a.** The net present value of your **"gross leasehold interest"** for each remaining month of your lease, discounted at the Prime Rate prevailing on the date the direct physical loss or damage occurs, rounded to the nearest whole number; plus

    **b.** Your **"monthly leasehold interest"** times the number of months left in your lease on the date direct physical loss or damage occurs, rounded to the nearest whole number.

Example:

With 20 months left in lease and 10% Prime Rate:

| | |
|---|---|
| **"Gross leasehold interest"** | $300 |
| Net Present Value Factor x 18.419 for 20 months | X 18.419 |
| Subtotal **a.** | $5,526 |
| **"Monthly leasehold interest"** | $200 |
| With 20 months left in lease | x 20 |
| Subtotal **b.** | $4,000 |
| **"Net leasehold interest"** | |
| Subtotal **a.** + Subtotal **b.** | $9,526 |

50. **"Newly acquired premises"** means a permanently fixed location you own, lease, rent, or control.  The location becomes a **"newly acquired premises"** on the later of:

    **a.** The date you obtain possession or control of the location; or

    **b.** The date **"real property"** or **"personal property"** in which you have an insurable interest is first placed at the location.

**"Newly acquired premises"** does not mean:

    **a.** A **"premises"**;

    **b.** An **"unreported premises"**;

    **c.** A **"reported unscheduled premises"**;

    **d.** A fair or exhibition;

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

    e.   An **"installation or service premises"**;

    f.   A **"rigging premises"**; or

    g.   A **"temporary storage location"**.

51. **"Off-premises service interruption"** means the interruption of power or other utility services supplied to a covered location, however caused, if the interruption takes place away from the covered location.

52. **"Operations"** means:

    a.   Your business activities occurring at the covered location prior to the physical loss or damage; and

    b.   The covered location is tenantable prior to the physical loss or damage.

    **"Operations"** does not mean:

    a.   The activities of those with whom you do business;

    b.   Investing or financing activities conducted for your own account; or

    c.   **"Research and development operations"**.

53. **"Original information property"** means recorded information in any format which cannot be copied from an existing original or duplicate or replaced by purchasing an existing duplicate that is available for sale, including any material it is recorded upon.

    **"Original information property"** does not mean:

    a.   **"Stock"**;

    b.   **"Fine arts"**;

    c.   **"Money"**;

    d.   **"Securities"**;

    e.   **"Electronic data processing hardware"**; or

    f.   **"Research and development property"**.

54. **"Outdoor trees, shrubs, plants, or lawns"** means outdoor trees, shrubs, plants, grass, or lawns you own.

    **"Outdoor trees, shrubs, plants, or lawns"** does not mean:

    a.   Growing crops;

    b.   Standing timber;

    c.   **"Landscaping materials"**;

    d.   **"Stock"**, or

    e.   **"Green roofing systems"**.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 10 of 19

**55.** **"Period of restoration"** means the period of time that begins when:

  **a.** The direct physical loss or damage that causes **"suspension"** of your **"operations"** occurs; or

  **b.** The date **"operations"** would have begun if the start of **"operations"** is delayed because of loss of or damage to any of the following:

   **1)** **"Real property"**, whether complete or under construction;

   **2)** Alterations or additions to **"real property"**; or

   **3)** **"Personal property"**:

      **a)** Used in such construction, alterations, or additions;

      **b)** Incidental to the occupancy of the area intended for construction, alteration, or addition; or

      **c)** Incidental to the alteration of the occupancy of an existing building or structure.

If you resume **"operations"**, with reasonable speed, the **"period of restoration"** ends on the earlier of:

  **a.** The date when the location where the loss or damage occurred could have been physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if the location had been restored to the physical size, construction, configuration, location, and material specifications which would satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents; or

  **b.** The date when a new permanent location is physically capable of resuming the level of **"operations"** which existed prior to the loss or damage, if you resume **"operations"** at a new permanent location.

If you do not resume **"operations"**, or do not resume **"operations"** with reasonable speed (whether at your **"premises"** or **"reported unscheduled premises"** or elsewhere), the **"period of restoration"** will end on the date when the location where the loss or damage occurred could have been restored to the physical size, construction, configuration, location, and material specifications which existed at the time of loss or damage, with no consideration for any time:

  **a.** Which would have been required to make changes in order to satisfy the minimum requirements necessary to obtain all required building permits, occupancy permits, operating licenses, or similar documents; and

  **b.** Which would have been necessary to make the location physically capable of resuming the level of **"operations"** which existed prior to the loss or damage after the completion of repairs, replacement, or rebuilding.

**"Period of restoration"** does not include any increased period required due to the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **"pollutants"** or **"microorganisms"**.

The expiration date of this policy will not cut short the **"period of restoration"**.

**56.** **"Personal property"** means:

  **a.** **"Your personal property"**;

  **b.** **"Your employees' personal property"**;

  **c.** **"Personal property of others"** in your care, custody, or control;

  **d.** The value of labor, materials, or services furnished or arranged by you on **"personal property of others"**;

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 11 of 19

e.  Your interest in **"improvements and betterments"** to buildings or structures; and

f.  Glass which, as a tenant, you are required to insure.

**"Personal property"** does not mean:

a.  Naturally occurring water;

b.  Growing crops or standing timber;

c.  **"Outdoor trees, shrubs, plants, or lawns"**;

d.  **"Green roofing systems"**;

e.  **"Money"**, bills, notes, or **"securities"**;

f.  Contraband or property in the course of illegal transportation or trade;

g.  Animals, unless:

   1)  Owned by others and boarded by you; or

   2)  Owned by you as **"stock"** while inside of buildings;

h.  **"Fine arts"**;

i.  **"Original information property"**;

j.  Vehicles or self-propelled machines (including aircraft or watercraft) that:

   1)  Are licensed for use on public roads; or

   2)  Are operated principally away from a **"premises"** or **"reported unscheduled premises"**;

   But not:

   1)  Vehicles or self-propelled machines you manufacture, process, warehouse, or hold for sale, other than vehicles licensed for use on public roads;

   2)  Vehicles licensed for use on public roads that you manufacture, process, warehouse, or hold for sale, while on a **"premises"** or **"reported unscheduled premises"**; or

   3)  Unpowered watercraft while out of water on a **"premises"** or **"reported unscheduled premises"**;

k.  Property contained in underground mines, mine shafts, caverns, open pits, or quarries;

l.  **"Research and development property"**;

m. Spacecraft, satellites, associated launch vehicles and any major components, including any property contained therein;

n.  **"Scheduled property"**; or

o.  Property covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 12 of 19

57. **"Personal property of others"** means personal property not owned by you, your officers, directors, partners, "**managers**", "**members**", or employees (including leased or temporary employees).

58. **"Pollutants"** means any solid, liquid, gaseous, or thermal irritant, or **"contaminant"**, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned, or reclaimed.

59. **"Premises"** means:

A location scheduled on the Declarations for this Commercial Property Coverage Part.

   a.  If the location is described by an address only, it includes the area associated with that address in which you are legally entitled to conduct your business activities and includes that area extending 1,000 feet beyond the address.

   b.  If the location is described by an address and further described by geographic boundaries, it includes only the area within such geographic boundaries in which you are legally entitled to conduct your business activities and includes that area extending 1,000 feet beyond that area.

If you are a tenant, for purposes of **"time element coverage"**, **"premises"** includes those portions of the location not rented or intended to be rented to others.

60. **"Raw stock"** means material in the state in which you acquired it for conversion into **"finished stock"**.

61. **"Real property"** means:

   a.  Buildings, including their **"green roofing systems"**;

   b.  Permanent structures;

   c.  Equipment and apparatus used to maintain or service the buildings, structures, or their **"premises"** or **"reported unscheduled premises"**; and

   d.  Materials, equipment, supplies, and temporary structures used for making additions, alterations, or repairs to the buildings or permanent structures.

**"Real property"** does not mean:

   a.  **"Fine arts"**;

   b.  Land;

   c.  Water;

   d.  Underground mines, mine shafts, caverns, open pits, or quarries;

   e.  Growing crops or standing timber;

   f.  **"Outdoor trees, shrubs, plants, or lawns"**;

   g.  **"Research and development property"**;

   h.  **"Contractor's equipment"**;

   i.  **"Contractor's employees' property"**;

   j.  **"Installation property"**;

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

**k.** **"Landscaping materials"**;

**l.** Property of others in your care, custody, or control for **"rigging"**; or

**m.** Launch facilities for spacecraft or satellites.

**62.** **"Recipient locations"** means locations owned or operated by others, who you depend on to accept your products or services.

**63.** **"Replacement cost"** means the lesser of:

**a.** **Repair Cost**

The cost to repair the **"real property"** or **"personal property"** at the time of direct physical loss or damage with new materials of like kind and quality, of similar size, for the same use or occupancy, and in compliance with all applicable zoning, land use, or construction codes in force at the time of loss or damage. This includes the cost to reconstruct or remodel undamaged portions of the **"real property"** when those costs are a consequence of enforcement of such codes.

**b.** **Rebuild Cost**

The cost to rebuild the **"real property"** or **"personal property"** at the time of direct physical loss or damage with new materials of like kind and quality, of similar size, for the same use or occupancy, and in compliance with all applicable zoning, land use, or construction codes in force at the time of loss or damage. Unless otherwise required at the time of loss by the applicable codes, this cost will be based on rebuilding at the same location where the loss occurred.

**c.** **Replace Cost**

The cost to replace the **"real property"** or **"personal property"** at the time of direct physical loss or damage with new materials of like kind and quality, of similar size, for the same use or occupancy, and in compliance with all applicable zoning, land use, or construction codes in force at the time of loss. Unless otherwise required at the time of loss by the applicable codes, this cost will be based on replacing at the same location where the loss or damage occurred.

If property of the same kind and quality is no longer available, we will pay to replace it with other property of similar quality and function, including property of greater processing capacity.

**"Real property"** and **"personal property"** valuation includes the cost you paid for non-refundable or non-transferable extended warranties, maintenance contracts, or service contracts which were still in force at the time of loss or damage and are no longer valid as a result of loss of or damage to **"real property"** or **"personal property"**.

If there is an ordinance or law in force at the time of loss or damage that regulates zoning, land use, or construction of **"real property"** or **"personal property"** at the **"premises"** or **"reported unscheduled premises"**, and if loss or damage covered by this Commercial Property Coverage Part causes a demolition order to be issued pursuant to any such ordinance or law, **"replacement cost"** includes the costs to demolish and clear the site of the undamaged portion of the **"real property"** or **"personal property"**.

**"Replacement cost"** does not mean:

**a.** Costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, **"pollutants"** or **"microorganisms"**;

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 14 of 19

**b.** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by **"pollutants"** or due to the presence, growth, proliferation, spread, or any activity of **"microorganisms"**; or

**c.** Costs to comply with any ordinance or law that you were required to comply with before the loss or damage.

64. **"Reported unscheduled premises"** means permanently fixed locations for which you have submitted a schedule on file with us containing:

**a.** The address of the location and includes that area extending 1000 feet beyond the address;

**b.** An identification of the property, business income, or extra expense to be covered; and

**c.** The value of such identified property, business income, or extra expense.

If you are a tenant, for purposes of **"time element coverage"**, **"reported unscheduled premises"** includes those portions of the location not rented or intended to be rented to others.

**"Reported unscheduled premises"** does not mean:

**a.** A **"premises"**;

**b.** A **"newly acquired premises"**;

**c.** An **"unreported premises"**;

**d.** A fair or exhibition;

**e.** An **"installation or service premises"**;

**f.** A **"temporary storage location"**;

**g.** A **"rigging premises"**; or

**h.** With respect to loss or damage covered by any **"time element coverage"**, a **"dependent premises"**.

65. **"Research and development continuing expenses"** means your continuing normal operating expenses that are directly attributable to **"research and development operations"**, including payroll, rental payments as tenants, and factory overhead.

66. **"Research and development extended period of indemnity"** means the period of time that begins on the date the **"period of restoration"** ends and ends on the earlier of:

**a.** The effective date of new contracts that will utilize that portion of your **"research and development continuing expenses"** attributable to a suspension, lapse, or cancellation for which coverage is provided under paragraph **b.** of the Extended Period of Indemnity Additional Coverage; or

**b.** The date calculated by adding the number of days shown on the Declarations for Research and Development Extended Period of Indemnity--Business Income to the date the **"period of restoration"** ended.

67. **"Research and development operations"** means your business activities where **"research and development property"** is being planned, created, developed, or tested.

68. **"Research and development property"** means:

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 15 of 19

a. Information which cannot be duplicated or purchased from another source, including any material it is inscribed, printed, written, or recorded upon, including documents, manuscripts, records, data, or programs, developed or used in conjunction with any research and development project;

b. Original or experimental property;

c. Prototypes or samples;

d. Experiments in progress;

e. Biological products, processes, or cultures; and

f. **"Research animals"**.

**"Research and development property"** does not mean:

a. Animals, other than **"research animals"**;

b. **"Money"**, bills, notes, or **"securities"**;

c. **"Stock"**;

d. **"Fine arts"**; or

e. Growing plants or crops.

69. **"Research animal"** means any multi-cellular organism that is used in your **"research and development operations"**.

70. **"Rigging"** means rigging, hoisting, moving, erecting, lowering, and millwright work.

71. **"Rigging premises"** means a location for the purpose of:

a. **"Rigging"**;

b. Assembling or dismantling work done in connection with a **"rigging"** project; or

c. Operations incidental to a **"rigging"**, assembling, or dismantling project.

72. **"Salespersons samples"** means **"personal property"** that is in the custody of one of your salespersons and used only for sample purposes.

73. **"Scheduled property"** means those items described in the SCHEDULED PROPERTY COVERAGE FORM within the Coverage Territory.

**"Scheduled property"** does not mean:

a. **"Real property"**;

b. **"Personal property"**;

c. Contraband or property in the course of illegal transportation or trade;

d.  **"Money"**, bills, notes, or **"securities"**;

e. Waterborne property or property while being loaded onto or unloaded out of any watercraft, except while in the custody of a carrier for hire.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

**f.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

    **1)** Are licensed for use on public roads; or

    **2)** Are operated principally away from a **"premises"** or **"reported unscheduled premises"**;

But not:

    **1)** Vehicles or self-propelled machines you manufacture, process, warehouse, or hold for sale, other than vehicles licensed for use on public roads;

    **2)** Vehicles licensed for use on public roads that you manufacture, process, warehouse, or hold for sale, while on a **"premises"** or **"reported unscheduled premises"**; or

    **3)** Unpowered watercraft while out of water on a **"premises"** or **"reported unscheduled premises"**;

**g.** Property contained in underground mines, mine shafts, caverns, open pits, or quarries; or

**h.** Spacecraft, satellites, associated launch vehicles and any major components, including any property contained therein.

**74.** **"Securities"** means negotiable and non-negotiable instruments or contracts representing either **"money"** or property and includes:

**a.** Tokens, tickets, revenue, and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you.

**"Securities"** does not mean:

**a.** **"Money"**; or

**b.** Lottery tickets held for sale.

**75.** **"Sinkhole collapse"** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.

**"Sinkhole collapse"** does not mean the:

**a.** Sinking or collapse of land into man-made underground cavities;

**b.** Sinking or collapse of land caused by or resulting from **"flood"**; or

**c.** Cost of filling sinkholes.

**76.** **"Specified causes of loss"** means the following:

**a.** Fire;

**b.** Lightning;

**c.** Explosion;

**d.** Windstorm or hail;

**e.** Smoke;

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 17 of 19

**f.** Aircraft or vehicles;

**g.** Riot or civil commotion;

**h.** Vandalism;

**i.** Leakage from fire extinguishing equipment;

**j.** **"Sinkhole collapse"**;

**k.** Volcanic action;

**l.** Falling objects, excluding loss or damage to:

   **1)** **"Personal property"** in the open; or

   **2)** The interior of buildings or property inside buildings, unless the roof or an outside wall of the building is first damaged by a falling object;

**m.** Weight of snow, ice, or sleet;

**n.** Accidental discharge or leakage of water or steam from any part of a system or appliance containing water or steam; and

**o.** **"Equipment breakdown cause of loss"**, excluding loss of or damage to **"stock"** caused by the discharge, dispersal, release, or escape of refrigerants.

77. **"Stock"** means the following:

   **a.** **"Raw stock"**;

   **b.** **"Stock in process"**;

   **c.** **"Finished stock"**; and

   **d.** **"Merchandise"**.

78. **"Stock in process"** means **"raw stock"** which has undergone aging, seasoning, mechanical, or other process of manufacture but which has not become **"finished stock"**.

79. **"Suspended equipment"** means any boiler, fired or unfired vessel, refrigerating or air conditioning system, piping and its accessory equipment, and any mechanical or electrical machine or apparatus used for the generation, transmission, or utilization of mechanical or electrical power, provided we have complied with the requirements described in the Suspended Equipment Condition contained in the COMMERCIAL PROPERTY CONDITIONS.

80. **"Suspension"** means:

   **a.** The slowdown or cessation of your business activities; or

   **b.** That a part or all of the covered location is rendered untenantable.

81. **"Temporary storage location"** means a permanently fixed location that you lease, rent, or occupy for a period of less than one year where **"stock"** or **"installation property"** that is to become a permanent part of an **"installation or service premises"** is stored while waiting to be delivered to an **"installation or service premises"** and there is a written construction or installation contract or agreement to install that **"stock"** or **"installation property"** at that **"installation or service premises"**.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 18 of 19

**"Temporary storage location"** does not mean:

a. A **"premises"**;

b. A **"newly acquired premises"**;

c. A **"reported unscheduled premises"**;

d. A **"rigging premises"**;

e. A fair or exhibition; or

f. An **"unreported premises"**.

82. **"Time element coverage"** means the coverage provided under any of the following:

a. BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE);

b. BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY; or

c. EXTRA EXPENSE COVERAGE FORM.

83. **"Unreported premises"** means a permanently fixed location that contains **"real property"** or **"personal property"** in which you have an insurable interest, but has not been reported to us.

**"Unreported premises"** does not mean:

a. A **"premises"**;

b. A **"newly acquired premises"**;

c. A **"reported unscheduled premises"**;

d. A **"rigging premises"**;

e. A fair or exhibition;

f. An **"installation or service premises"**;

g. A **"temporary storage location"**; or

h. With respect to loss or damage covered by any **"time element coverage"**, a **"dependent premises"**.

84. **"Your employees' personal property"** means personal property owned by your officers, directors, partners, **"managers"**, **"members"**, or employees (including leased or temporary employees).

85. **"Your personal property"** means personal property owned by you.

Includes copyrighted material of Insurance Services Office. Inc. with its permission
Contains copyrighted material of the American Association of Insurance Services.

PPP-0103 (08/16)
Page 19 of 19

# Real and Personal Property Coverage Form



**Table of Contents**

<u>Section</u>                                                                                                   <u>Page No.</u>

Coverage  .......................................................................................................................    1

Excluded Causes of Loss  .............................................................................................    1

Limitations .....................................................................................................................    5

Deductible  ....................................................................................................................    6

Valuation  ......................................................................................................................    6

Optional Coverage .......................................................................................................    7

# Real and Personal Property Coverage Form

**ZURICH**®

## A. COVERAGE

We will pay for direct physical loss of or damage to **"real property"** and **"personal property"** at a **"premises"** directly caused by a **"covered cause of loss"**.  We will not pay more in any one occurrence than the applicable Limit of Insurance shown on the Declarations for such loss of or damage to Covered Property at that **"premises"**.

## B. EXCLUDED CAUSES OF LOSS

### 1. Artificially Maintained Conditions

We will not pay for loss of or damage to **"personal property"** caused by or resulting from the loss of or change in any artificially maintained or generated temperature, humidity, or atmosphere.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from an **"equipment breakdown cause of loss"**, **"mistake"**, or **"malfunction"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

This exclusion does not apply to **"electronic data processing hardware"** or **"duplicate information property"**.

### 2. Cracking and Settling

We will not pay for loss or damage caused by or resulting from bulging, cracking, shrinkage, expansion, or settling of **"real property"** or **"personal property"**.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

### 3. Disappearance or Shortage

We will not pay for loss caused by or resulting from disappearance or shortage disclosed on taking inventory or where there is no physical evidence to show what happened to the property.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 4. Dishonest Acts

We will not pay for loss or damage caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the property for any purpose:

**a.** Acting alone or in collusion with others; or

**b.** Whether or not occurring during the hours of employment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0110 (08 16)
Page 1 of 7

This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

**a.** Acts of vandalism committed by your employees (including leased or temporary employees); or

**b.** Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

### 5. Earth Movement

We will not pay for loss or damage caused directly or indirectly by **"earth movement"**. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if **"earth movement"** results in fire, explosion, theft or sprinkler leakage, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, theft or sprinkler leakage.

### 6. Electronic Vandalism

We will not pay for loss or damage caused by or resulting from **"electronic vandalism"**.

This exclusion applies even if the **"electronic vandalism"** was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 7. Expected, Preventable, or Accumulated Losses

We will not pay for loss or damage caused by or resulting from:

**a.** Wear and tear;

**b.** Smoke, vapor, or gas from agricultural smudging or industrial operations;

**c.** Smog;

**d.** Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

**e.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

**f.** Inherent vice.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

### 8. Flood

We will not pay for loss or damage caused directly or indirectly by **"flood"**. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if **"flood"** results in fire, explosion, or theft, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, or theft.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**9. Governmental Action**

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to:

**a.** Seizure or destruction of property by order of governmental authority and taken at the time of fire to prevent its spread; or

**b.** Demolition orders issued pursuant to any ordinance or law in effect at the time of loss or damage regulating construction, use, or repair of any property; provided such demolition order has become legally enforceable as a result of physical damage to:

    **1)** Covered **"real property"**; or

    **2)** Covered **"personal property"**;

    directly caused by a **"covered cause of loss"**.

    However, this exception does not apply to demolition orders issued pursuant to any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, **"pollutants"** or **"microorganisms"**.

**10. Impact Damage**

We will not pay for loss or damage caused by or resulting from water, including water pressure, ice, or impact of watercraft to buildings or structures located on or partially over water, including retaining walls, bulkheads, piers, wharves, docks, or any other property located on those structures. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

**11. Loss of Market or Delay**

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

**12. Microorganisms**

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0110 (08 16)

Page 3 of 7

### 13. Nuclear Hazard

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

### 14. Off-Premises Service Interruption

We will not pay for loss or damage caused by or resulting from any **"off-premises service interruption"**.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

This exclusion does not apply to **"electronic data processing hardware"** or **"duplicate information property"**.

### 15. Pollutants

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release, or escape of **"pollutants"**.  But, if the discharge, dispersal, seepage, migration, release, or escape is caused by a **"specified cause of loss"**, we will pay only for that portion of the loss or damage solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"pollutants"**.

This exclusion does not apply to **"electronic data processing hardware"** or **"duplicate information property"**.

### 16. Process Failures, Defects, or Errors

We will not pay for any of the following:

**a.**   Loss or damage due to spoilage, destruction, adulteration, discard, reduction in value, or any other loss or damage to **"stock"** caused by or resulting from a **"mistake"** or **"malfunction"** in the alteration, calibration, development, distribution, installation, manufacturing, maintenance, processing, repair, research, or testing of such **"stock"**.

**b.**   Loss or damage, including the costs of correcting or making good, caused by or resulting from:

   **1)**   A **"mistake"** in planning, zoning, development, surveying, siting;

   **2)**   A **"mistake"** in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **3)**   A **"mistake"** in materials used in repair, construction, renovation, or remodeling; or

   **4)**   Insufficient or failure of maintenance or servicing,

   of part or all of any property on or off a **"premises"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0110 (08 16)

Page 4 of 7

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**c.** Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any property on or off a **"premises"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**d.** Loss of or damage to machinery or equipment while undergoing a pressure or electrical test. This exclusion applies even if this excluded cause of loss was caused by or resulted from an **"equipment breakdown cause of loss"**, **"mistake"**, or **"malfunction"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

### 17. Suspended Equipment

We will not pay for loss or damage caused by or resulting from an **"equipment breakdown cause of loss"** to **"suspended equipment"**. This exclusion applies even if this excluded cause of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

### 18. War and Military Action

We will not pay for loss or damage arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

## C. LIMITATIONS

**1.** The following types of property are covered only up to the Limits of Insurance shown below in any one occurrence for loss or damage due to theft:

**a.** $2,500 for furs, fur garments, and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum, and other precious alloys or metals.

This limit does not apply to:

**1)** Jewelry or watches worth $100 or less per item; or

**2)** Precious or semiprecious stones or metals used for industrial purposes.

    **c.** $250 for lottery tickets held for sale.

    These Limits of Insurance are included in, and not in addition to, any other applicable Limits of Insurance.

**2.** We will pay for direct physical loss of or damage to **"green roofing systems"** directly caused by a **"covered cause of loss"** other than loss or damage caused by or resulting from:

    **a.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals;

    **b.** Disease;

    **c.** Changes in or extremes of temperature;

    **d.** Dampness or dryness of atmosphere or of soil supporting the vegetation; or

    **e.** Rain, snow, hail, ice, or sleet.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

## E. VALUATION

We will determine the amount of covered loss or damage as follows:

**1.** Except as provided in 2., 3., 4., 5., 6., and 7. below, the lesser of the following amounts:

    **a.** The **"replacement cost"**; or

    **b.** The **"amount you actually spend"** to repair, rebuild, or replace the **"real property"** or **"personal property"** at the same or another location.

**2.** Except as provided in 3., 5., 6., and 7. below, **"real property"** or **"personal property"**, other than **"improvements and betterments"**, which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage. If you commence the repair, rebuilding, or replacement of the lost or damaged **"real property"** or **"personal property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

**3.** **"Merchandise"** which has been sold but not delivered and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

**4.** **"Stock in process"** at the value of **"raw stock"**, your labor expended, and your materials incorporated plus the proper proportion of your overhead charges, calculated in accordance with principles of Direct Costing. In no event will overhead be calculated in accordance with the principles of Absorption Costing.

**5.** **"Improvements and betterments"** at:

    **a.** The **"replacement cost"** if you make repairs with reasonable speed.

    **b.** A proportion of your original cost if you do not make repairs with reasonable speed. We will determine the proportionate value as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0110 (08 16)

Page 6 of 7

    **1)**  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **2)**  Divide the amount determined in 1) above by the number of days from the installation of **"improvements and betterments"** to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will be used as the expiration of the lease.

  **c.**  That portion which has not been paid if others pay for repairs, rebuilding, or replacement.

**6.** **"Personal property"** which has been permanently removed from service at **"actual cash value"**.

**7.** **"Duplicate information property"** at the lesser of:

  **a.**  The cost to purchase a duplicate copy, if a duplicate copy exists and is available for sale; or

  **b.**  The cost of blank materials, plus any cost incurred to copy data onto blank materials from a duplicate source on the same type of materials, provided such copying does not violate licensing or contract agreements.

## F. OPTIONAL COVERAGE

### Margin Clause

If Margin Clause is shown on the Declarations, we will not pay more than the lesser of the following:

**1.** The amount of covered loss or damage at the **"premises"**; or

**2.** The percentage applied to the applicable Limit of Insurance for such property at the **"premises"**.

The most we will pay is the applicable percentage shown on the Declarations for Margin Clause. However, in no event will we pay more than $5,000,000 over the applicable Limits of Insurance shown on the Declarations for that **"premises"**.

This Optional Coverage for **"real property"** or **"personal property"** does not apply to:

**1.** Any Limit of Insurance applicable to more than one **"premises"**; or

**2.** Any other Limit of Insurance applicable for which a specific coverage Limit of Insurance is provided.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Additional Coverages Form

## Table of Contents

| **Section** | **Page No.** |
|---|---|
| Additional Coverages | 1 |
| Consequential Loss--Net Leasehold Interest | 1 |
| Consequential Loss--Tenant's Improvements and Betterments | 2 |
| Consequential Loss--Undamaged Stock | 2 |
| Contamination by a Refrigerant. | 2 |
| Debris Removal | 3 |
| Deferred Payments | 3 |
| Electronic Vandalism--Direct Damage | 4 |
| Expediting Expense | 4 |
| Fairs or Exhibitions | 4 |
| Fire Department Service Charge | 4 |
| Fire Protective Equipment Refills | 5 |
| Inflation Guard | 5 |
| Lock and Key Replacement | 5 |
| Microorganisms | 6 |
| Newly Acquired Premises | 6 |
| Newly Acquired Property | 6 |
| Off-Premises Service Interruption--Direct Damage | 7 |
| Outdoor Trees, Shrubs, Plants, or Lawns | 7 |
| Pollutant Clean Up and Removal--Land and Water | 8 |
| Preservation of Property | 8 |
| Professional Fees | 8 |

| <u>Section</u> | <u>Page No.</u> |
|---|---|

Reported Unscheduled Premises ................................................................................................................ 8

Reward Payments.................................................................................................................................... 9

Salespersons Samples  .......................................................................................................................... 9

Spoilage--Equipment Breakdown............................................................................................................ 9

Theft Damage to Buildings...................................................................................................................... 9

Unreported Premises .............................................................................................................................. 10

Deductible.................................................................................................................................................. 10

# Additional Coverages Form

**ZURICH**®

## A.  ADDITIONAL COVERAGES

The following are Additional Coverages to coverages set forth in this Commercial Property Coverage Part.  If you have not chosen a coverage elsewhere in this Commercial Property Coverage Part, there is no coverage under its corresponding Additional Coverages.  For example, if you do not have coverage for **"stock"** under the REAL AND PERSONAL PROPERTY COVERAGE FORM, you will not have coverage related to **"stock"** under the Consequential Loss--Undamaged Stock Additional Coverage, or any other Additional Coverage for **"stock"**.

Each of the following Additional Coverages apply independently of one another.  Unless otherwise stated, the excluded causes of loss, exclusions, terms, and conditions in the applicable Coverage Forms apply to these Additional Coverages.

The most we will pay for loss, damage, cost, or expense under any of the following Additional Coverages are the Limits of Insurance shown on the Declarations.  Limits for these Additional Coverages apply in addition to any other applicable policy limits, unless otherwise stated.

1.   **Consequential Loss--Net Leasehold Interest**

We will pay for the loss of **"net leasehold interest"** you sustain when your lease is cancelled:

**a.**    By the lessor; and

**b.**    As a result of a valid condition of your lease,

due to direct physical loss of or damage to **"real property"** or **"personal property"** directly caused by a **"covered cause of loss"** at a **"premises"** or **"reported unscheduled premises"**.  We will not pay more than the **"net leasehold interest"** at the time of the cancellation of the lease.  However, if your lease is cancelled and your landlord lets you continue to use the **"premises"** or **"reported unscheduled premises"** under a new lease, we will not pay more than:

**a.**    The rent you will pay under the new lease; minus

**b.**    The rent you were paying at the time of cancellation.

We will not pay under this Additional Coverage if the **"premises"** or **"reported unscheduled premises"** where the lease is cancelled had been vacant for more than 60 consecutive days prior to the loss or damage unless you had entered into an agreement to sublease the **"premises"** or **"reported unscheduled premises"**.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Consequential Loss--Net Leasehold Interest.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**2.    Consequential Loss--Tenant's Improvements and Betterments**

We will pay for the value of undamaged **"improvements and betterments"** when your lease is cancelled:

**a.**    By the lessor; and

**b.**    As a result of a valid condition of your lease,

due to direct physical loss of or damage to **"real property"** or **"personal property"** directly caused by a **"covered cause of loss"** at a **"premises"** or **"reported unscheduled premises"**.

If you rent an entire building, we will pay only if:

**a.**    At least 25% of the area of that entire building has been damaged; or

**b.**    A minimum of 6 months remains in your current lease and at least 6 months is required to repair the building for your occupancy.

If you rent a portion of a building, we will only pay if:

**a.**    A minimum of 6 months remains in your lease; and

**b.**    At least 6 months is required to repair the building for your occupancy.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Consequential Loss--Tenant's Improvements and Betterments.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**3.    Consequential Loss--Undamaged Stock**

We will pay for the consequential loss in value of undamaged **"stock"** which has become unmarketable as a complete product because of direct physical loss of or damage to other **"stock"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Consequential Loss--Undamaged Stock.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**4.    Contamination by a Refrigerant**

We will pay for direct physical loss of or damage to **"stock"** caused by the release or escape of refrigerants from any equipment located at a **"premises"** or **"reported unscheduled premises"** provided the release or escape was not caused by or resulted from **"flood"** or **"earth movement"**.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Contamination by a Refrigerant.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

5.  **Debris Removal**

    **a.**    We will pay your expense to remove debris of Covered Property, for which a Limit of Insurance is shown on the Declarations, remaining after a **"covered cause of loss"**. The most we will pay under this Additional Coverage for Debris Removal is the remaining applicable Limit of Insurance for the Covered Property shown on the Declarations after payment of the covered physical loss or damage.

        If the total of the loss or damage and debris removal expense exceeds the applicable Limit of Insurance, we will pay the remaining debris removal expenses. The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Supplemental Limit.

    **b.**    If wind causes direct physical loss of or damage to Covered Property, we will also pay for the expenses you incur to remove debris of uncovered property that is blown on to the **"premises"** or **"reported unscheduled premises"** by wind and to remove debris of **"outdoor trees, shrubs, plants, or lawns"** damaged by wind.

        The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Uncovered Property.

    In no event will there be any coverage under this Debris Removal Additional Coverage for any costs to:

    **a.**    Extract **"pollutants"** from land or water; or

    **b.**    Remove, restore, or replace polluted land or water.

    The expenses will be paid only if they are reported to us in writing within 180 days of the date of loss or damage.

6.  **Deferred Payments**

    We will pay your financial interest in **"personal property"** that suffers direct physical loss or damage directly caused by a **"covered cause of loss"** after delivery to buyers and sold by you on a conditional sale or trust agreement, or any installment or deferred payment plan.

    This Additional Coverage does not apply to default of such agreement or plan by the buyer.

    We will determine the amount of covered loss or damage as follows:

    **a.**    In the event of a total loss and the buyer refuses to continue payment, coverage will be valued based on the amount shown on your books as due from the buyer;

    **b.**    In the event of partial loss or damage and the buyer refuses to continue payment, forcing you to repossess, coverage will be valued as follows:

        If the realized value of the repossessed **"personal property"** is:

        **1)**    Greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; or

        **2)**    Less than the amount shown on your books as due from the buyer, we will pay the difference, less any amount that was past due at the time of loss by more than 30 days; and

    **c.**    When a loss occurs and the buyer continues to pay you, there will be no loss payment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0111 (03 14)

Page 3 of 10

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Deferred Payments.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

7.  **Electronic Vandalism--Direct Damage**

We will pay for loss of or damage to **"accounts receivable records"**, **"duplicate information property"**, **"electronic data processing hardware"**, **"original information property"** or **"research and development property"** caused by **"electronic vandalism"**.

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Electronic Vandalism--Direct Damage.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

8.  **Expediting Expense**

In the event of covered loss of or damage to **"real property"** or **"personal property"** at a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**, we will pay reasonable and necessary additional expenses you incur for temporary repair of damage to such **"real property"** or **"personal property"** and the additional expenses you incur for expediting the permanent repair or replacement of such damaged property.  This Additional Coverage does not include expenses recoverable elsewhere in this Commercial Property Coverage Part.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Expediting Expense.

9.  **Fairs or Exhibitions**

We will pay for direct physical loss of or damage to **"personal property"**:

**a.**    At fairs or exhibitions; and

**b.**    In transit to or from fairs or exhibitions,

directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Fairs or Exhibitions--Personal Property.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

10.  **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a **"covered cause of loss"** at a **"premises"** or **"reported unscheduled premises"**, we will pay for your liability for the fire department service charges:

**a.**    Assumed by contract or agreement prior to loss; or

**b.**    Required by local ordinance, law, or statute.

We will also pay for those costs incurred by your fire brigade to save or protect Covered Property from a fire, but not including the costs to refill fire protective equipment.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Fire Department Service Charge.

No deductible applies to this Additional Coverage.

11. **Fire Protective Equipment Refills**

We will pay the reasonable and necessary costs you incur to refill fire protective equipment which has been discharged:

a.     Accidentally; or

b.     In the course of saving or protecting Covered Property from a **"covered cause of loss"**.

No Limit applies to this Additional Coverage.

12. **Inflation Guard**

The Limits of Insurance to which the Inflation Guard applies will automatically increase by the annual percentage shown on the Declarations.

The amount of the increase will be:

a.     The Limit of Insurance that applied on the most recent of this Commercial Property Coverage Part's inception date, anniversary date, or date of any other Commercial Property Coverage Part change amending the Limit of Insurance, multiplied by

b.     The percentage of annual increase shown on the Declarations, expressed as a decimal (Example: 8% is .08), multiplied by

c.     The number of days since the beginning of the most recent Commercial Property Coverage Part year or the effective date of the most recent Commercial Property Coverage Part change amending the Limit of Insurance, divided by 365.

**Example:**

If:      The applicable Limit of Insurance is            $100,000

         The annual percentage increase is                8%

         The number of days since the beginning of the
         Coverage Part Year (or last Coverage Part change) is         146

Then:   The amount of increase is $100,000 x .08 x 146 / 365 =  $   3,200

         The available Limit of Insurance is                    $103,200

13. **Lock and Key Replacement**

We will pay the reasonable cost of:

a.     Entry key replacement if keys to a **"premises"** or **"reported unscheduled premises"** are stolen; or

b.     Entry lock repair or replacement made necessary by theft or attempted theft at a **"premises"** or **"reported unscheduled premises"**.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Lock and Key Replacement.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

14. **Microorganisms**

We will pay the following when **"microorganisms"** are the result of a **"covered cause of loss"**, other than fire or lightning:

a.    Direct physical loss of or damage to Covered Property caused by **"microorganisms"**, including the cost of removal of the **"microorganisms"**;

b.    The reasonable cost to tear out and replace any part of the covered building or other property needed to gain access to the **"microorganisms"**; and

c.    The reasonable cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that the **"microorganisms"** are still present.

The most we will pay under this Additional Coverage in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Microorganisms.  Regardless of the number of claims, this Limit is the most we will pay for the total of all loss, damage, or cost, even if the **"microorganisms"** continue to be present, active, or recur.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

15. **Newly Acquired Premises**

We will pay for direct physical loss of or damage to **"real property"** or **"personal property"** at a **"newly acquired premises"** directly caused by a **"covered cause of loss"**.

This Additional Coverage will automatically expire on the earliest of the following dates:

a.    The date you report the **"newly acquired premises"** to us;

b.    The number of days shown on the Declarations from the date the location becomes a **"newly acquired premises"**; or

c.    The date this policy expires or is cancelled.

We will charge you additional premium for values reported from the date the location becomes a **"newly acquired premises"**.

The most we will pay under this Additional Coverage at any one **"newly acquired premises"** is the applicable Limit of Insurance shown on the Declarations for Newly Acquired Premises.

16. **Newly Acquired Property**

We will pay for direct physical loss of or damage to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0111 (03 14)

Page 6 of 10

**a.** Your newly acquired or constructed **"real property"** at a **"premises"** if coverage is not currently shown for **"real property"** at that **"premises"** on the Declarations; and

**b.** Your newly acquired **"personal property"** at a **"premises"** if coverage is not currently shown for **"personal property"** at that **"premises"** on the Declarations.

This Additional Coverage will automatically expire on the earliest of the following dates:

**a.** The date you report the newly acquired property to us;

**b.** The number of days shown on the Declarations from the date construction of **"real property"** begins or completed **"real property"** or **"personal property"** is acquired; or

**c.** The date this policy expires or is cancelled.

We will charge you additional premium for values reported from the date construction of **"real property"** begins or **"personal property"** or completed **"real property"** is acquired.

The most we will pay under this Additional Coverage at any one **"premises"** is the applicable Limit of Insurance shown on the Declarations for Newly Acquired Property.

**17. Off-Premises Service Interruption--Direct Damage**

We will pay for direct physical loss of or damage to **"real property"** and **"personal property"** at a **"premises"** or **"reported unscheduled premises"** directly caused by an **"off-premises service interruption"**. The interruption must result from direct physical loss or damage directly caused by a **"covered cause of loss"** to any property located away from the **"premises"** or **"reported unscheduled premises"** and used to provide any of the following services to the **"premises"** or **"reported unscheduled premises"**:

**a.** Water;

**b.** Power, including steam and natural gas; or

**c.** Communication.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Off-Premises Service Interruption--Direct Damage.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**18. Outdoor Trees, Shrubs, Plants, or Lawns**

We will pay for direct physical loss of or damage to **"outdoor trees, shrubs, plants, or lawns"** at a **"premises"** or **"reported unscheduled premises"** directly caused by:

**a.** Fire;

**b.** Lightning;

**c.** Explosion;

**d.** Riot or civil commotion; or

**e.** Aircraft.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0111 (03 14)
Page 7 of 10

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** and for any one tree, shrub, plant, or lawn are the Limits of Insurance shown on the Declarations for Outdoor Trees, Shrubs, Plants, or Lawns.

19.    **Pollutant Clean Up and Removal--Land and Water**

We will pay the reasonable expenses you incur to extract **"pollutants"** from land or water at a **"premises"** or **"reported unscheduled premises"** if the discharge, dispersal, seepage, migration, release, or escape of the **"pollutants"** is directly caused by a **"covered cause of loss"**.

This Additional Coverage does not apply to the costs to test for, monitor, or assess the existence, concentration, or effects of **"pollutants"**.  But we will pay for the reasonable cost of testing performed in the course of extracting the **"pollutants"** from the land or water.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** in any one policy year is the Annual Aggregate Limit of Insurance shown on the Declarations for Pollutant Clean Up and Removal--Land and Water.

The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the **"covered cause of loss"** occurs.

20.    **Preservation of Property**

If Covered Property is removed from a **"premises"** or **"reported unscheduled premises"** to preserve it from actual or imminent physical loss or damage caused by a **"covered cause of loss"**:

We will pay for:

a.    Any direct physical loss of or damage to Covered Property while it is being moved to or while stored at another location for up to the number of days shown on the Declarations for Preservation of Property; and

b.    The reasonable cost to remove Covered Property from the **"premises"** or **"reported unscheduled premises"**.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance shown on the Declarations for that Covered Property.

21.    **Professional Fees**

We will reimburse you for the reasonable expenses you incur for professional services for auditors, accountants, architects, or engineers which are necessary to prepare a statement of loss or exhibits required in connection with any loss covered under this Commercial Property Coverage Part.  This Additional Coverage does not apply to fees and costs of:

a.    Your employees; or

b.    Attorneys, public adjusters, loss appraisers, or loss consultants.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Professional Fees.

22.    **Reported Unscheduled Premises**

We will pay for direct physical loss of or damage to **"real property"** and **"personal property"** at a **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0111 (03 14)

Page 8 of 10

The most we will pay under this Additional Coverage at any one **"reported unscheduled premises"** is the applicable Limit of Insurance shown on the Declarations for Reported Unscheduled Premises.

**23.    Reward Payments**

We will reimburse you for rewards you pay for information leading to:

**a.**    The successful return of undamaged stolen Covered Property to you or a law enforcement agency; or

**b.**    The arrest and conviction of any persons for having damaged or stolen your Covered Property.

The reward payments must be documented.

The most we will pay under this Additional Coverage in any one occurrence is 25% of the covered loss, prior to the application of any applicable deductible and recovery of any Covered Property, up to the Limit of Insurance shown on the Declarations for Reward Payments.

**24.    Salespersons Samples**

We will pay for direct physical loss of or damage to **"salespersons samples"** in transit while in the custody of a salesperson or at any location, other than a **"premises"** or **"reported unscheduled premises"**, directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Salespersons Samples.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**25.    Spoilage--Equipment Breakdown**

We will pay for direct physical loss of or damage to **"stock"** at a **"premises"** or **"reported unscheduled premises"** directly caused by the loss of or changes in any artificially maintained or generated temperature, humidity, or atmosphere resulting from an **"equipment breakdown cause of loss"** to atmosphere control equipment at the **"premises"** or **"reported unscheduled premises"**.

The most we will pay under this Additional Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Spoilage--Equipment Breakdown.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

**26.    Theft Damage to Buildings**

We will pay for direct physical loss of or damage to **"real property"** at a **"premises"** or **"reported unscheduled premises"** in which you are a tenant directly caused by theft, burglary, or robbery, provided you are legally obligated to pay for such loss or damage.

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for **"personal property"** at that **"premises"** or **"reported unscheduled premises"**.

The Limit for this Additional Coverage is included in, and not in addition to, any other applicable Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0111 (03 14)

Page 9 of 10

27.     **Unreported Premises**

We will pay for direct physical loss of or damage to **"real property"** and **"personal property"**, other than **"salespersons samples"** or property in transit, at an **"unreported premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage at any one **"unreported premises"** is the Limit of Insurance shown on the Declarations for Unreported Premises.

B.     **DEDUCTIBLE**

We will not pay for loss, damage, cost, or expense in any one occurrence until the amount of loss, damage, cost, or expense exceeds the applicable Deductibles shown on the Declarations.  We will then pay the amount of loss, damage, cost, or expense in excess of the Deductibles, up to the applicable Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     PPP-0111 (03 14)

Page 10 of 10

# Accounts Receivable Coverage Form (Revenue Loss)



**Table of Contents**

| Section | Page No. |
| --- | --- |
| Coverages | 1 |
| Excluded Causes of Loss | 1 |
| Deductible | 5 |
| Valuation | 5 |

PPP-0112 (08/16)



# Accounts Receivable Coverage Form (Revenue Loss)

## A. COVERAGES

### 1. Accounts Receivable (Revenue Loss)

We will pay for:

a. The **"money"** due you from customers that you are unable to collect;

b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts; and

c. Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage;

that result from direct physical loss of or damage to your **"accounts receivable records"** at a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Accounts Receivable (Revenue Loss).

### 2. Accounts Receivable (Revenue Loss)--Away From Premises

We will also pay for:

a. The **"money"** due you from customers that you are unable to collect;

b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts; and

c. Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage;

that result from direct physical loss of or damage to your **"accounts receivable records"** away from a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Accounts Receivable (Revenue Loss)--Away From Premises.

## B. EXCLUDED CAUSES OF LOSS

### 1. Alteration, Falsification, Concealment, or Destruction

We will not pay for loss or damage caused by or resulting from alteration, falsification, concealment, or destruction of **"accounts receivable records"** done to conceal the wrongful giving, taking, or withholding of **"money"**, **"securities"**, or other property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0112 (08 16)
Page 1 of 5

2. **Bookkeeping, Accounting, or Billing Mistakes**

We will not pay for loss or damage caused by or resulting from a **"mistake"** or **"malfunction"** in bookkeeping, accounting, or billing.

3. **Defects or Errors**

We will not pay for any of the following:

a. Loss or damage caused by or resulting from a **"mistake"** in:

1) Programming;

2) Instructions to a machine; or

3) Installation or maintenance of **"electronic data processing hardware"** or component parts.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

b. Loss or damage, including the costs of correcting or making good, caused by or resulting:

1) A **"mistake"** in planning, zoning, development, surveying, siting;

2) A **"mistake"** in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3) A **"mistake"** in materials used in repair, construction, renovation, or remodeling; or

4) Insufficient or failure of maintenance or servicing;

of part or all of any property on or off a **"premises"** or **"reported unscheduled premises"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

c. Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any property on or off a **"premises"** or **"reported unscheduled premises"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

4. **Disappearance or Shortage**

We will not pay for loss caused by or resulting from disappearance or shortage disclosed on taking inventory or where there is no physical evidence to show what happened to the **"accounts receivable records"**. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

5. **Dishonest Acts**

We will not pay for loss or damage caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the **"accounts receivable records"** for any purpose:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0112 (08 16)

Page 2 of 5

**a.** Acting alone or in collusion with others; or

**b.** Whether or not occurring during the hours of employment.

This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

**a.** Acts of vandalism committed by your employees (including leased or temporary employees); or

**b.** Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

6. **Earth Movement**

We will not pay for loss or damage caused directly or indirectly by **"earth movement"**. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if **"earth movement"** results in fire, explosion, theft, or sprinkler leakage we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, theft or sprinkler leakage.

7. **Electronic Vandalism**

We will not pay for loss or damage caused by or resulting from **"electronic vandalism"**.

This exclusion applies even if the **"electronic vandalism"** was caused by or resulted from a **"mistake"** or **"malfunction"**.

8. **Expected, Preventable, or Accumulated Losses**

We will not pay for loss or damage caused by or resulting from:

**a.** Wear and tear;

**b.** Smoke, vapor, or gas from agricultural smudging or industrial operations;

**c.** Smog;

**d.** Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

**e.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

**f.** Inherent vice.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0112 (08 16)

Page 3 of 5

### 9. Flood

We will not pay for loss or damage caused directly or indirectly by **"flood"**.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if **"flood"** results in fire, explosion, or theft, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, or theft.

### 10. Governmental Action

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to acts of destruction of **"accounts receivable records"** ordered by governmental authority and taken at the time of fire to prevent its spread.

### 11. Loss of Market or Delay

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 12. Microorganisms

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

### 13. Nuclear Hazard

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

### 14. War and Military Action

We will not pay for loss or damage arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0112 (08 16)

Page 4 of 5

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

## C.  DEDUCTIBLE

We will not pay for loss, damage, or expense in any one occurrence until the amount of loss, damage, or expense exceeds the applicable Deductibles shown on the Declarations.  We will then pay the amount of loss, damage, or expense in excess of the Deductibles, up to the applicable Limits of Insurance.

## D.  VALUATION

If you cannot accurately establish the amount of accounts receivable outstanding at the time of loss or damage to **"accounts receivable records"**, the following method will be used to determine the amount of covered loss, damage, or expense:

**1.** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred; and

**2.** Adjust that total for normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1.** The amount of the accounts receivable for which there is no loss or damage;

**2.** The amount of the accounts receivable that you are able to re-establish or collect;

**3.** An amount to allow for probable bad debts that you are normally unable to collect; and

**4.** All unearned interest and service charges.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Crime Coverage Form

**ZURICH**®

**Table of Contents**

| <u>Section</u> | <u>Page No.</u> |
|---|---|
| Coverages | 1 |
| Excluded Causes of Loss | 2 |
| Deductible | 5 |
| Additional Conditions | 6 |
| Valuation | 9 |
| Additional Definitions | 10 |

PPP-0113 (04/09)

# Crime Coverage Form



## A. COVERAGES

### 1. Computer Fraud

We will pay for loss of **"money"** and **"securities"** resulting directly from the use of any computer to fraudulently cause a transfer from inside buildings at a **"premises"**, **"reported unscheduled premises"**, or **"banking premises"**.

The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Computer Fraud.

### 2. Employee Theft

We will pay for loss of or damage to **"money"**, **"securities"**, and **"personal property"** resulting directly from **"theft"** committed by an **"employee"**, whether identified or not, acting alone or in collusion with other persons.

The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Employee Theft.

### 3. Forgery or Alteration

**a.** We will pay for loss resulting directly from **"forgery"** or alteration of:

   **1)** Checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in **"money"** that are:

   **a)** Made or drawn by or drawn upon you; or

   **b)** Made or drawn by one acting as your agent;

   or that are purported to have been so made or drawn.

   With respect to this coverage, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

   **2)** Written instruments required in connection with any credit, debit, or charge card issued to you or any **"employee"** for business purposes.

   The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Forgery or Alteration.

**b.** If you are sued for refusing to pay any instrument covered in a. above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay is in addition to the Limit of Insurance applicable to this coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0113 (04 09)
Page 1 of 12

4.    **Funds Transfer Fraud**

We will pay for loss of **"funds"** resulting directly from a **"fraudulent instruction"** directing a financial institution to transfer, pay, or deliver **"funds"** from your **"transfer account"**.

The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Funds Transfer Fraud.

5.    **Money and Securities--Inside Buildings**

We will pay for loss of **"money"** and **"securities"** inside buildings at a **"premises"**, **"reported unscheduled premises"**, or **"banking premises"** resulting directly from **"theft"**, disappearance, or destruction.

The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Money and Securities--Inside Buildings.

6.    **Money and Securities--Outside Buildings**

We will pay for loss of **"money"** and **"securities"** outside buildings at or away from a **"premises"**, **"reported unscheduled premises"**, or **"banking premises"** and in the care and custody of a **"messenger"** or an armored motor vehicle company resulting directly from **"theft"**, disappearance, or destruction.

The most we will pay under this Crime Coverage in any one **"occurrence"** is the Limit of Insurance shown on the Declarations for Money and Securities--Outside Buildings.

B.    **EXCLUDED CAUSES OF LOSS**

1.    **Coverage Form Excluded Causes of Loss**

The following excluded causes of loss apply to all the coverages contained in this Coverage Form:

a.    **Acts Committed by You, Your Partners, or Your Members**

We will not pay for loss caused by or resulting from **"theft"** or any other fraudulent, dishonest, or criminal acts or omissions committed by you, or any of your partners or **"members"**, whether acting alone or in collusion with other persons.

b.    **Acts of Employees, Managers, Directors, Trustees, or Representatives**

We will not pay for loss caused by or resulting from **"theft"** or any other fraudulent, dishonest, or criminal acts or omissions committed by any of your **"employees"**, **"managers"**, directors, trustees, or authorized representatives:

1)    Whether acting alone or in collusion with other persons; or

2)    While performing services for you or otherwise;

except when covered under the Employee Theft Coverage.

c.    **Governmental Action**

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority.

### d.  Indirect Loss

We will not pay for loss that is an indirect result of any covered act or **"occurrence"** including, but not limited to, loss resulting from:

**1)**  Your inability to realize income that you would have realized had there been no loss of or damage to **"money"**, **"securities"**, or **"personal property"**.

**2)**  Payment of damages of any type for which you are legally liable.  But, we will pay compensatory damages arising directly from a loss or damage covered under this Coverage Form.

**3)**  Payment of costs, fees, or other expenses you incur in establishing either the existence or the amount of loss under this Coverage Form.

### e.  Legal Expenses

We will not pay for expenses incurred by you which are related to any legal action, except with respect to coverage provided under the Forgery or Alteration Coverage.

### f.  Nuclear Hazard

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused.

### g.  War or Military Action

We will not pay for loss or damage, arising directly or indirectly, out of:

**1)**  War, including undeclared or civil war;

**2)**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**3)**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

## 2.  Additional Excluded Causes of Loss--Computer Fraud Coverage

The following additional excluded causes of loss apply only with respect to Computer Fraud Coverage:

### a.  Exchange or Purchases

We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

### b.  Funds Transfer Fraud

We will not pay for loss resulting from a **"fraudulent instruction"** directing a financial institution to transfer, pay, or deliver **"funds"** from your **"transfer account"**.

### c.  Inventory Shortages

We will not pay for loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**1)**  An inventory computation; or

**2)**  A profit and loss computation.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0113 (04 09)

Page 3 of 12

d. **Voluntary Parting**

We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with **"money"** or **"securities"**.

3. **Additional Excluded Causes of Loss--Employee Theft Coverage**

The following additional excluded causes of loss apply only with respect to Employee Theft Coverage:

a. **Employee Cancelled Under Prior Insurance**

We will not pay for loss caused by any **"employee"** of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

b. **Inventory Shortages**

We will not pay for loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

1) An inventory computation; or

2) A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

c. **Trading**

We will not pay for loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

d. **Warehouse Receipts**

We will not pay for loss resulting from the fraudulent or dishonest signing, issuing, canceling, or failing to cancel, a warehouse receipt or any papers connected with it.

4. **Additional Excluded Causes of Loss--Forgery or Alteration Coverage**

The following additional excluded cause of loss applies only with respect to Forgery or Alteration Coverage:

**Non-Compliance with Credit, Debit, or Charge Card Issuer's Requirements**

We will not pay for loss arising from any credit, debit, or charge card if you have not complied fully with the provisions, conditions, or other terms under which the card was issued.

5. **Additional Excluded Causes of Loss--Funds Transfer Fraud Coverage**

The following additional excluded cause of loss applies only with respect to Funds Transfer Fraud Coverage:

**Computer Fraud**

We will not pay for loss resulting from the use of any computer to fraudulently cause a transfer of **"money"**, **"securities"**, or **"personal property"**.

6. **Additional Excluded Causes of Loss--Money and Securities Coverage**

The following additional excluded causes of loss apply only with respect to Money and Securities--Inside Buildings and Money and Securities--Outside Buildings Coverages:

a. **Accounting or Arithmetical Errors or Omissions**

We will not pay for loss caused by or resulting from accounting or arithmetical errors or omissions.

b. **Exchange or Purchases**

We will not pay for loss resulting from the giving or surrendering of property in any exchange or purchase.

c. **Money Operated Devices**

We will not pay for loss of **"money"** and **"securities"** contained in any money-operated device unless the amount of **"money"** deposited in it is recorded by a continuous recording instrument in the device.

d. **Transfer or Surrender of Money and Securities**

We will not pay for loss of **"money"** and **"securities"** after it has been transferred or surrendered to a person or place outside the building at or away from a **"premises"**, **"reported unscheduled premises"**, or **"banking premises"**:

1) On the basis of unauthorized instructions;

2) As a result of a threat to do bodily harm to any person; or

3) As a result of a threat to do damage to any property.

This exclusion does not apply to loss of **"money"** or **"securities"** while outside the building at or away from a **"premises"**, **"reported unscheduled premises"**, or **"banking premises"**, or in the care and custody of a **"messenger"** if you:

1) Had no knowledge of any threat at the time the conveyance began; or

2) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

e. **Voluntary Parting**

We will not pay for loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with **"money"** or **"securities"**.

## C. DEDUCTIBLE

We will not pay for loss or damage in any one **"occurrence"** until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

With respect to Forgery or Alteration Coverage, the Deductible shown on the Declarations does not apply to legal expenses paid.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0113 (04 09)

Page 5 of 12

## D. ADDITIONAL CONDITIONS

### 1. Additional Conditions--Coverage Form

The following conditions apply in addition to the COMMERCIAL PROPERTY CONDITIONS and the COMMON POLICY CONDITIONS and apply to all the coverages in this Coverage Form:

**a. Cancellation as to Any Employee**

This insurance is cancelled as to any **"employee"**:

1) Immediately upon discovery by you or any of your partners, **"members"**, **"managers"**, officers, directors, or trustees not in collusion with the **"employee"** of **"theft"** or any other dishonest act committed by the **"employee"** whether before or after becoming employed by you.

2) On the date specified in a notice mailed to the first Named Insured.  That date will be at least 30 days after the date of mailing.

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Consolidation--Merger**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become **"employees"** or you acquire the use and control of any **"newly acquired premises"**:

1) You must give us written notice and obtain our written consent to extend this insurance to such additional **"employees"** or **"newly acquired premises"**.  We may condition our consent upon payment of an additional premium; but

2) For the number of days shown on the Declarations for Newly Acquired Premises after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities, or the date this policy expires, any insurance afforded for **"employees"** or **"newly acquired premises"** also applies to these additional **"employees"** or **"newly acquired premises"** for acts committed or events occurring within this period.

**c. Discovery**

1) We will pay for loss that you sustain through acts committed or events occurring at any time and discovered by you:

   a) During the policy period shown on the Declarations; or

   b) During the period of time provided in the Extended Period to Discover Loss Condition below.

2) Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Coverage Form has been or will be incurred, even though the exact amount or details of loss may not then be known.

   Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts that if true would constitute a covered loss under this Coverage Form.

**d. Employee Benefit Plans**

1) The **"employee benefit plan"** shown on the Declarations (Plan) is included as an Insured under the Employee Theft Coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     PPP-0113 (04 09)

Page 6 of 12

**2)** If any **"employee benefit plan"** is insured jointly with any other entity under this Coverage Form, you or the Plan Administrator must select a Limit of Insurance for Employee Theft Coverage that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**3)** With respect to losses sustained or discovered by any such Plan, the Employee Theft Coverage is replaced by the following:

We will pay for loss of or damage to **"funds"** and other property resulting directly from fraudulent or dishonest acts committed by an **"employee"**, whether identified or not, acting alone or in collusion with other persons.

If a Blanket Excess Limit of Insurance is shown on the Declarations, that limit applies only to loss caused by or involving an **"employee"** of the **"employee benefit plan"** for which the Blanket Excess Limit of Insurance is shown. That Blanket Excess Limit of Insurance applies to that part of any loss that exceeds, and applies in addition to, the Limit of Insurance shown on the Declarations for Employee Theft.

**4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**5)** If two or more Plans are insured under this Coverage Form, any payment we make for loss:

**a)** Sustained by two or more Plans; or

**b)** Of commingled **"funds"** or other property of two or more Plans;

resulting directly from an **"occurrence"**, will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those Limits of Insurance of all Plans sustaining loss.

**6)** The Deductible otherwise applicable to Employee Theft Coverage does not apply to loss sustained by any Plan.

**7)** If, at the inception of this policy, you have a Limit of Insurance for your Plans that is equal to or greater than the Limit of Insurance required under ERISA, we agree to automatically increase the Limit of Insurance for the Plan or Plans scheduled on the Declarations, subject to the Non-Cumulation of Limit of Insurance Condition below, so that the Limit of Insurance equals the amount required under ERISA at the time you discover a loss. However, in no event shall the increase under this provision exceed 10% of the total Plan's asset value or the maximum per Plan Limit of Insurance of $500,000, whichever is less.

**e. Extended Period to Discover Loss**

**1)** We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you:

**a)** No later than 60 days from the date of that termination or cancellation; and

**b)** As respects any **"employee benefit plan"**, no later than 1 year from the date of that termination or cancellation.

**2)** However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this Coverage Form, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

f.  **Non-Cumulation of Limit of Insurance**

Regardless of the number of years this Coverage Form remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

g.  **Ownership of Property; Interests Covered**

The Covered Property under this Coverage Form is limited to property:

1)  That you own or lease; or

2)  That you hold for others.

2.  **Additional Condition--Computer Fraud Coverage**

The following additional condition applies only with respect to Computer Fraud Coverage:

**Territory**

The Policy Period, Coverage Territory Condition in the COMMERCIAL PROPERTY CONDITIONS applies except as modified below:

With respect to Computer Fraud Coverage, coverage applies anywhere in the world.

3.  **Additional Condition--Employee Theft Coverage**

The following additional condition applies only with respect to Employee Theft Coverage:

**Territory**

The Policy Period, Coverage Territory Condition in the COMMERCIAL PROPERTY CONDITIONS applies except as modified below:

With respect to Employee Theft Coverage, coverage applies anywhere in the world while an **"employee"** is temporarily outside the coverage territory for a period of not more than 90 days.

4.  **Additional Conditions--Forgery or Alteration Coverage**

The following additional conditions apply only with respect to Forgery or Alteration Coverage:

a.  **Duties in the Event of Loss**

The Duties in the Event of Loss or Damage Condition in the COMMERCIAL PROPERTY CONDITIONS applies except as modified below:

With respect to Forgery or Alteration Coverage, you must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

b.  **Electronic and Mechanical Signatures**

With respect to Forgery and Alteration Coverage, we will treat signatures that are produced or reproduced electronically, mechanically, or by other means the same as handwritten signatures.

c.  **Territory**

The Policy Period, Coverage Territory Condition in the COMMERCIAL PROPERTY CONDITIONS applies except as modified below:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0113 (04 09)
Page 8 of 12

With respect to Forgery or Alteration Coverage, coverage applies anywhere in the world.

## E.  VALUATION

We will determine the amount of covered loss or damage as follows:

1.  Except as provided in 2., 3., 4., 5., 6., 7., and 8. below, the lesser of the following amounts:

    a.  The **"replacement cost"**; or

    b.  The **"amount you actually spend"** to repair, rebuild, or replace the **"real property"** or **"personal property"** at the same or another location.

2.  Except as provided in 3., 5., and 6. below, **"personal property"** or other property which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage.  If you commence the repair, rebuilding, or replacement of the lost or damaged **"personal property"** or other property within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

3.  **"Merchandise"** and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

4.  **"Stock in process"** at the value of **"raw stock"**, your labor expended, and your materials incorporated plus the proper proportion of your overhead charges, calculated in accordance with principles of Direct Costing.  In no event will overhead be calculated in accordance with the principles of Absorption Costing.

5.  **"Personal property"** and other property which has been permanently removed from service at **"actual cash value"**.

6.  **"Duplicate information property"** at the lesser of:

    a.  The cost to purchase a duplicate copy, if a duplicate copy exists and is available for sale; or

    b.  The cost of blank materials, plus any cost incurred to copy data onto blank materials from a duplicate source on the same type of materials, provided such copying does not violate licensing or contract agreements.

7.  Loss of **"money"** but only up to and including its face value.  We may, at our option, pay for loss of **"money"** issued by any country other than the United States of America:

    a.  At face value in the **"money"** issued by that country; or

    b.  In the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day the loss was discovered.

8.  Loss of **"securities"** but only up to and including their value at the close of business on the day the loss was discovered.  We may, at our option:

    a.  Pay the market value of such **"securities"** or replace them in kind, in which event you must assign to us all your rights, title, and interest in and to those **"securities"**; or

    b.  Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **"securities"**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

        1)  Market value of the **"securities"** at the close of business on the day the loss was discovered; or

        2)  The Limit of Insurance shown on the Declarations.

## F.  ADDITIONAL DEFINITIONS

With respect to this Coverage Form, the following definitions apply in addition to the COMMERCIAL PROPERTY DEFINITIONS:

1.  **"Employee"** means:

    a.  Any natural person:

        1)  While in your service and for the first 30 days after termination of service immediately after termination of service, unless such termination is due to **"theft"** or any other dishonest act committed by the **"employee"**;

        2)  Who you compensate directly by salary, wages, or commissions; and

        3)  Who you have the right to direct and control while performing services for you;

    b.  Any natural person who is furnished temporarily to you:

        1)  To substitute for a permanent **"employee"** as defined in a. above, who is on leave; or

        2)  To meet seasonal or short-term work load conditions;

        while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **"premises"**;

    c.  Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary **"employee"** as defined in b. above;

    d.  Any natural person who is:

        1)  A trustee, officer, employee, administrator, or manager, except an administrator or manager who is an independent contractor, of any **"employee benefit plan"** insured under this Coverage Form; and

        2)  A director or trustee while that person is handling **"funds"** or other property of any **"employee benefit plan"**.

    e.  Any natural person who is a former **"employee"**, director, partner, **"member"**, **"manager"**, representative, or trustee retained as a consultant while performing services for you; or

    f.  Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the **"premises"**.

    **"Employee"** does not mean:

    a.  Any agent, broker, factor, commission merchant, consignee, independent contractor, or representative of the same general character; or

    b.  Any **"manager"**, director, or trustee except while performing acts coming within the scope of the usual duties of an **"employee"**.

2.  **"Employee benefit plan"** means any welfare or pension benefit plan shown on the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), and any amendments thereto.

3.  **"Forgery"** means the signing of the name of another person or organization with the intent to deceive.  It does not mean a signature that consists in whole or in part of one's own name signed with or without authority, in any

capacity, for any purpose.

4.  **"Fraudulent instruction"** means:

    a.  An electronic, telegraphic, cable, teletype, telefacsimile, or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

    b.  A written instruction, other than those described in the Forgery or Alteration Coverage, issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

    c.  An electronic telegraphic, cable, teletype, telefacsimile, telephone, or written instruction initially received by you which purports to have been transmitted by an **"employee"** but which was in fact fraudulently transmitted by someone else without your or the **"employee's"** knowledge or consent.

5.  **"Funds"** means **"money"** and **"securities"**.

6.  **"Messenger"** means you, or a relative of yours, or any of your partners or **"members"**, or any **"employee"** while having care and custody of property outside the **"premises"**.

7.  **"Occurrence"** means:

    a.  Under Employee Theft Coverage:

        1)  An individual act;

        2)  The combined total of all separate acts whether or not related; or

        3)  A series of acts whether or not related;

        committed by an **"employee"** acting alone or in collusion with other persons, during the policy period shown on the Declarations, before such policy period, or both.

    b.  Under Forgery or Alteration Coverage:

        1)  An individual act;

        2)  The combined total of all separate acts whether or not related; or

        3)  A series of acts whether or not related;

        committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the policy period shown on the Declarations, before such policy period, or both.

    c.  Under all other coverages in this Coverage Form:

        1)  An individual act or event;

        2)  The combined total of all separate acts or events whether or not related; or

        3)  A series of acts or events whether or not related;

        committed by a person acting alone or in collusion with other persons, or not committed by any person, during the policy period shown on the Declarations, before such policy period, or both.

8.  **"Theft"** means the unlawful taking of **"money"**, **"securities"**, or **"personal property"** to the deprivation of the Insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0113 (04 09)

Page 11 of 12

9.  **"Transfer account"** means an account maintained by you at a financial institution from which you can initiate the transfer, payment, or delivery of **"funds"**:

    a.  By means of electronic, telegraphic, cable, teletype, telefacsimile, or telephone instructions communicated directly through an electronic funds transfer system; or

    b.  By means of written instructions, other than those described in the Forgery or Alteration Coverage, establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0113 (04 09)

Page 12 of 12

# Fine Arts Coverage Form

**ZURICH**®

## Table of Contents

| Section | Page No. |
|---|---|
| Coverages | 1 |
| Excluded Causes of Loss | 1 |
| Deductible | 4 |
| Valuation | 4 |

PPP-0114 (08/16)



# Fine Arts Coverage Form

## A. COVERAGES

### 1. Fine Arts

We will pay for direct physical loss of or damage to **"fine arts"** at a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Fine Arts.

### 2. Fine Arts--Away From Premises

We will also pay for direct physical loss of or damage to **"fine arts"** away from a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Fine Arts--Away From Premises.

## B. EXCLUDED CAUSES OF LOSS

### 1. Defects or Errors

We will not pay for any of the following:

**a.** Loss or damage, including the costs of correcting or making good, caused by or resulting from:

   **1)** A "mistake" in planning, zoning, development, surveying, siting;

   **2)** A "mistake" in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **3)** A "mistake" in materials used in repair, construction, renovation, or remodeling; or

   **4)** Insufficient or failure of maintenance or servicing,

   of part or all of any property on or off a **"premises"** or **"reported unscheduled premises"**.

   But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**b.** Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any property on or off a **"premises"** or **"reported unscheduled premises"**.

   But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

2. **Disappearance or Shortage**

   We will not pay for loss caused by or resulting from disappearance or shortage disclosed on taking inventory or where there is no physical evidence to show what happened to the **"fine arts"**.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

3. **Dishonest Acts**

   We will not pay for loss or damage caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the **"fine arts"** for any purpose:

   **a.** Acting alone or in collusion with others; or

   **b.** Whether or not occurring during the hours of employment.

   This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

   This exclusion does not apply to:

   **a.** Acts of vandalism committed by your employees (including leased or temporary employees); or

   **b.** Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

4. **Earth Movement**

   We will not pay for loss or damage caused directly or indirectly by **"earth movement"**.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if **"earth movement"** results in fire, explosion, theft, or sprinkler leakage, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, theft, or sprinkler leakage.

5. **Expected, Preventable, or Accumulated Losses**

   We will not pay for loss or damage caused by or resulting from:

   **a.** Wear and tear;

   **b.** Smoke, vapor, or gas from agricultural smudging or industrial operations;

   **c.** Smog;

   **d.** Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

   **e.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

   **f.** Inherent vice.

   Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0114 (08 16)

Page 2 of 5

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

## 6. Flood

We will not pay for loss or damage caused directly or indirectly by **"flood"**. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if **"flood"** results in fire, explosion, or theft, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, or theft.

## 7. Governmental Action

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to:

a. Seizure or destruction of **"fine arts"** by order of governmental authority and taken at the time of fire to prevent its spread; or

b. Demolition orders issued pursuant to any ordinance or law in effect at the time of loss or damage regulating construction, use, or repair of any property; provided such demolition order has become legally enforceable as a result of physical damage to:

1) Covered **"real property"**; or

2) Covered **"personal property"**,

directly caused by a **"covered cause of loss"**.

However, this exception does not apply to demolition orders issued pursuant to any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, **"pollutants"** or **"microorganisms"**.

## 8. Loss of Market or Delay

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

## 9. Microorganisms

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

### 10. Nuclear Hazard

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

### 11. Pollutants

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release, or escape of **"pollutants"**.  But, if the discharge, dispersal, seepage, migration, release, or escape is caused by a **"specified cause of loss"**, we will pay only for that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"pollutants"**.

### 12. Repair, Restoration, or Retouching

We will not pay for loss of or damage to **"fine arts"** caused by or resulting from repair, restoration, or retouching.

### 13. War and Military Action

We will not pay for loss or damage arising, directly or indirectly, out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

## C. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations.  We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

## D. VALUATION

   **1.** **"Fine arts"** are valued based on the lesser of:

   **a.** **"Market value"** at the time of loss or damage; or

   **b.** The value of **"fine arts"** that are individually listed and described on the schedule on file with us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.     PPP-0114 (08 16)

Page 4 of 5

2. **Pairs or Sets**

In case of loss to any part of a pair or set, we may:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between the value of the pair or set before and after the loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0114 (08 16)

Page 5 of 5

# Installation and Service Property Coverage Form



**Table of Contents**

| Section | Page No. |
|---|---|
| Coverages | 1 |
| Excluded Causes of Loss | 2 |
| Deductible | 5 |
| Additional Conditions | 5 |
| Valuation | 5 |

# Installation and Service Property Coverage Form



## A. COVERAGES

### 1. Stock to be Installed

We will pay for direct physical loss of or damage to **"stock"** directly caused by a **"covered cause of loss"** while such **"stock"** is:

**a.** At an **"installation or service premises"**;

**b.** At a **"temporary storage location"**; or

**c.** In transit, to or from an **"installation or service premises"** or a **"temporary storage location"**.

Coverage ends at the earlier of the following:

**a.** Your insurable interest in the **"stock"** ceases;

**b.** The **"stock"** is accepted by the purchaser;

**c.** The **"stock"** is installed and you have been paid;

**d.** The **"stock"** is installed and put to its intended use; or

**e.** The policy expires or is cancelled.

The most we will pay under this Marine Coverage in any one occurrence is the applicable Limit of Insurance shown on the Declarations for Installation and Service Property--Stock to be Installed.

### 2. Tools and Equipment

We will pay for direct physical loss of or damage to:

**a.** **"Personal property"** that are tools and equipment; and

**b.** Vehicles that are not licensed for use on public roads,

used by you to install or service property at an **"installation or service premises"** directly caused by a **"covered cause of loss"**.  Coverage applies while such property is:

**a.** At an **"installation or service premises"**; or

**b.** In transit, to or from an **"installation or service premises"**.

The most we will pay under this Marine Coverage for any one item and in any one occurrence is the applicable Limit of Insurance shown on the Declarations for Installation and Service Property--Tools and Equipment or in a schedule on file with us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0115 (03 14)

Page 2 of  7

## B. EXCLUDED CAUSES OF LOSS

### 1. Artificially Maintained Conditions

We will not pay for loss of or damage to **"personal property"** caused by or resulting from the loss of or change in any artificially maintained or generated temperature, humidity, or atmosphere.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from an **"equipment breakdown cause of loss"**, **"mistake"**, or **"malfunction"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

This exclusion does not apply to **"electronic data processing hardware"** or **"duplicate information property"**.

### 2. Disappearance or Shortage

We will not pay for loss caused by disappearance or shortage disclosed on taking inventory or where there is no physical evidence to show what happened to the property.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 3. Dishonest Acts

We will not pay for loss caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the property for any purpose:

a.    Acting alone or in collusion with others; or

b.    Whether or not occurring during the hours of employment.

This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

a.    Acts of vandalism committed by your employees (including leased or temporary employees); or

b.    Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

### 4. Expected, Preventable, or Accumulated Losses

We will not pay for loss or damage caused by or resulting from:

a.    Wear and tear;

b.    Smoke, vapor, or gas from agricultural smudging or industrial operations;

c.    Smog;

d.    Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

e.    Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0115 (03 14)

Page 3 of  7

**f.** Inherent vice.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

5. **Governmental Action**

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to:

**a.** Seizure or destruction of property by order of governmental authority and taken at the time of fire to prevent its spread; or

**b.** Demolition orders issued pursuant to any ordinance or law in effect at the time of loss or damage regulating construction, use, or repair of any property; provided such demolition order has become legally enforceable as a result of physical damage to **"real property"** containing covered **"personal property"** directly caused by a **"covered cause of loss"**.

However, this exception does not apply to demolition orders issued pursuant to any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

6. **Loss of Market or Delay**

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

7. **Microorganisms**

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

8. **Nuclear Hazard**

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if

such other cause or event would otherwise be covered.  But, if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

**9.  Precipitation**

We will not pay for loss or damage caused by or resulting from rain, hail, snow, ice, or sleet to property in the open.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

**a.**  **"Stock"** in the custody of a carrier for hire; or

**b.**  Vehicles that are not licensed for use on public roads.

**10.  Process Failures, Defects, or Errors**

We will not pay for any of the following:

a.  Loss or damage due to spoilage, destruction, adulteration, discard, reduction in value, or any other loss or damage to **"stock"** caused by or resulting from a **"mistake"** or **"malfunction"** in the alteration, development, distribution, installation, manufacturing, maintenance, processing, repair, or testing of such **"stock"**.

**b.**  Loss or damage, including the costs of correcting or making good, caused by or resulting from:

**1)**  A **"mistake"** in planning, zoning, development, surveying, siting;

**2)**  A **"mistake"** in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**3)**  A **"mistake"** in materials used in repair, construction, renovation, or remodeling; or

**4)**  Insufficient or failure of maintenance or servicing,

of part or all of any property on or off an **"installation or service premises"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**c.**  Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any property on or off an **"installation or service premises"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**d.**  Loss of or damage to machinery or equipment while undergoing a pressure or electrical test.  This exclusion applies even this excluded cause of loss was caused by or resulted from an **"equipment breakdown cause of loss"**, **"mistake"**, or **"malfunction"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0115 (03 14)

Page 5 of  7

**11. Suspended Equipment**

We will not pay for loss or damage caused by or resulting from an **"equipment breakdown cause of loss"** to **"suspended equipment"**. This exclusion applies even if this excluded cause of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**12. War and Military Action**

We will not pay for loss or damage arising, directly or indirectly, out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

**13. Weight of Load**

We will not pay for loss of or damage to **"personal property"** that are tools and equipment or vehicles used by you to install or service property caused by or resulting from the weight of a load exceeding the manufacturer's rated lifting or supporting capacity of any machine under the operating conditions at the time of loss or damage.

## C. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

## D. ADDITIONAL CONDITIONS

The following conditions apply in addition to the COMMERCIAL PROPERTY CONDITIONS and the COMMON POLICY CONDITIONS:

   **1.** In the event of any loss or damage to Covered Property in transit, you must immediately make a claim in writing against the carrier, bailee, or others involved.

   **2.** The coverage provided for **"stock"** by this Coverage Form is primary to any other insurance not subject to the same plan, terms, conditions, and provisions as this Coverage Form.

## E. VALUATION

We will determine the value of covered loss or damage as follows:

   **1.** Except as provided in 2., 3., 4., 5., 6., and 7. below, the lesser of the following amounts:

      **a.** The **"replacement cost"**; or

      **b.** The **"amount you actually spend"** to repair, rebuild, or replace Covered Property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0115 (03 14)

Page 6 of 7

2.  Except as provided in 3., 5., 6., and 7. below, Covered Property which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage.  If you commence the repair, rebuilding, or replacement of the lost or damaged Covered Property within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

3.  **"Merchandise"** and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

4.  **"Stock in process"** at the value of **"raw stock"**, your labor expended, and your materials incorporated plus the proper proportion of your overhead charges, calculated in accordance with principles of Direct Costing. In no event will overhead be calculated in accordance with the principles of Absorption Costing.

5.  Covered Property which has been permanently removed from service at **"actual cash value"**.

6.  **"Duplicate information property"** at the lesser of:

    a.  The cost to purchase a duplicate copy, if a duplicate copy exists and is available for sale; or

    b.  The cost of blank materials, plus any cost incurred to copy data onto blank materials from a duplicate source on the same type of materials, provided such copying does not violate licensing or contract agreements.

7.  Subject to 1., 2., and 5. above, the most we will pay for any one item for scheduled equipment is the value per item shown on the schedule on file with us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0115 (03 14)

Page 7 of 7

# Original Information Property Coverage Form



## TABLE OF CONTENTS

| Section | Page No. |
|---|---|
| Coverages | 1 |
| Excluded Causes of Loss | 1 |
| Deductible | 4 |
| Valuation | 5 |

PPP-0116 (08 16)

# Original Information Property Coverage Form



## A. COVERAGES

### 1. Original Information Property

We will pay for direct physical loss of or damage to **"original information property"** at a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage at any one **"premises"** or **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Original Information Property.

### 2. Original Information Property--Away From Premises

We will also pay for direct physical loss of or damage to **"original information property"** away from a **"premises"** or **"reported unscheduled premises"** directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Original Information Property--Away From Premises.

## B. EXCLUDED CAUSES OF LOSS

### 1. Alteration, Falsification, Concealment, or Destruction

We will not pay for loss or damage caused by or resulting from alteration, falsification, concealment, or destruction of **"original information property"** done to conceal the wrongful giving, taking, or withholding of **"money"**, **"securities"**, or other property.

### 2. Bookkeeping, Accounting, or Billing Mistakes

We will not pay for loss or damage caused by or resulting from a **"mistake"** or **"malfunction"** in bookkeeping, accounting, or billing.

### 3. Defects or Errors

We will not pay for any of the following:

**a.** Loss or damage caused by or resulting from a **"mistake"** in:

    **1)** Programming;

    **2)** Instructions to a machine; or

    **3)** Installation or maintenance of **"electronic data processing hardware"** or component parts.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**b.** Loss or damage, including the costs of correcting or making good, caused by or resulting from:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0116 (08 16)
Page 1 of 5

1)  A **"mistake"** in planning, zoning, development, surveying, siting;

2)  A **"mistake"** in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3)  A **"mistake"** in materials used in repair, construction, renovation, or remodeling; or

4)  Insufficient or failure of maintenance or servicing,

of part or all of any **"original information property"** on or off a **"premises"** or **"reported unscheduled premises"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

c.  Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any **"original information property"** on or off a **"premises"** or **"reported unscheduled premises"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

## 4.  Disappearance or Shortage

We will not pay for loss caused by or resulting from disappearance or shortage disclosed on taking inventory or where there is no physical evidence to show what happened to the **"original information property"**.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

## 5.  Dishonest Acts

We will not pay for loss or damage caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the **"original information property"** for any purpose:

a.  Acting alone or in collusion with others; or

b.  Whether or not occurring during the hours of employment.

This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

a.  Acts of vandalism committed by your employees (including leased or temporary employees); or

b.  Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

## 6.  Earth Movement

We will not pay for loss or damage caused directly or indirectly by **"earth movement"**.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if **"earth movement"** results in fire, explosion, theft, or sprinkler leakage, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, theft, or sprinkler leakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0116 (08 16)

Page 2 of 5

### 7. Electronic Vandalism

We will not pay for loss or damage caused by or resulting from **"electronic vandalism"**.

This exclusion applies even if the **"electronic vandalism"** was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 8. Expected, Preventable, or Accumulated Losses

We will not pay for loss or damage caused by or resulting from:

**a.** Wear and tear;

**b.** Smoke, vapor, or gas from agricultural smudging or industrial operations;

**c.** Smog;

**d.** Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

**e.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

**f.** Inherent vice.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

### 9. Flood

We will not pay for loss or damage caused directly or indirectly by **"flood"**. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if **"flood"** results in fire, explosion, or theft, we will pay for that portion of the loss or damage which was solely caused by that fire, explosion, or theft.

### 10. Governmental Action

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to acts of destruction of **"original information property"** ordered by governmental authority and taken at the time of fire to prevent its spread.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0116 (08 16)

Page 3 of 5

### 11. Loss of Market or Delay

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

### 12. Microorganisms

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence, growth, proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

### 13. Nuclear Hazard

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered. But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

### 14. War and Military Action

We will not pay for loss or damage arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

## C.  DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.        PPP-0116 (08 16)

Page 4 of 5

## D. VALUATION

We will determine the value of covered loss or damage to lost or damaged **"original information property"** at the full cost necessary to research and reproduce a master copy, including the information and material on which it resides. However, we will only pay for costs of research and reproduction if you reproduce your **"original information property"**. We will not include the cost of making additional copies.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0116 (08 16)

Page 5 of 5

# Transit Coverage Form

**ZURICH**®

## TABLE OF CONTENTS

Section                                                                                          Page No.

Coverage ................................................................................................................   1

Property Not Covered  ...........................................................................................   1

Excluded Causes of Loss  .......................................................................................   2

Deductible ..............................................................................................................   4

Additional Conditions...............................................................................................   4

Valuation ................................................................................................................   4

# Transit Coverage Form



## A. COVERAGE

We will pay for direct physical loss of or damage to **"personal property"** in transit, including:

1. Your interest in shipments sold under Free on Board or Freight Allowed terms;

2. **"Personal property"** when the purchaser refuses to accept delivery or returns it to the shipper; or

3. General average and salvage charges on shipments while waterborne,

directly caused by a **"covered cause of loss"**.

The most we will pay under this Marine Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Transit--Personal Property.

## B. PROPERTY NOT COVERED

This Coverage Form does not apply to:

1. **"Personal property"** in transit to or from a fair or exhibition;

2. **"Salespersons samples"**;

3. Property of others in your care, custody, or control if you are acting as a carrier for hire, broker, loader, consolidator, or freight forwarder with a written contract or bill of lading;

4. **"Personal property"** used by you to install or service property at an **"installation or service premises"**;

5. **"Stock"** in transit to or from an **"installation or service premises"** or a **"temporary storage location"**;

6. Furs, fur garments, and garments trimmed with fur;

7. Jewelry, watches, watch movements, jewels, pearls, precious or semiprecious stones, bullion, gold, silver, platinum, and other precious alloys or metals, except for:

   a. Jewelry or watches worth $100 or less per item; or

   b. Precious or semiprecious stones or metals used for industrial purposes; or

8. Lottery tickets held for sale.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0117 (03 14)
Page 1 of 5

## C. EXCLUDED CAUSES OF LOSS

### 1. Artificially Maintained Conditions

We will not pay for loss of or damage to **"personal property"** caused by or resulting from the loss of or change in any artificially maintained or generated temperature, humidity, or atmosphere.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from an **"equipment breakdown cause of loss"**, **"mistake"**, or **"malfunction"**.

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

This exclusion does not apply to **"electronic data processing hardware"** or **"duplicate information property"**.

### 2. Dishonest Acts

We will not pay for loss or damage caused by or resulting from fraudulent, dishonest, or criminal acts or omissions, committed by you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, authorized representatives, or anyone else to whom you have entrusted the **"personal property"** for any purpose:

**a.** Acting alone or in collusion with others; or

**b.** Whether or not occurring during the hours of employment.

This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

This exclusion does not apply to:

**a.** Acts of vandalism committed by your employees (including leased or temporary employees); or

**b.** Carriers for hire or anyone claiming to be a carrier for hire at the time the property is entrusted to them.

### 3. Expected, Preventable, or Accumulated Losses

We will not pay for loss or damage caused by or resulting from:

**a.** Wear and tear;

**b.** Smoke, vapor, or gas from agricultural smudging or industrial operations;

**c.** Smog;

**d.** Rust or other corrosion, decay, deterioration, fading, hidden or latent defect, or any quality of the property that causes it to damage or destroy itself;

**e.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals; or

**f.** Inherent vice.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0117 (03 14)

Page 2 of 5

But if a result of one of these excluded causes of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

4. **Governmental Action**

We will not pay for loss or damage caused directly or indirectly by any seizure, confiscation, expropriation, nationalization, or destruction of property by order of governmental authority. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

This exclusion does not apply to seizure or destruction of property by order of governmental authority and taken at the time of fire to prevent its spread.

5. **Loss of Market or Delay**

We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay.  This exclusion applies even if one of these excluded causes of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

6. **Microorganisms**

We will not pay for loss or damage consisting of, directly or indirectly caused by, contributed to, or aggravated by the presence,  growth,  proliferation, spread, or any activity of **"microorganisms"**, unless resulting from fire or lightning.  Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

But if a result of one of these excluded causes of loss is a **"specified cause of loss"**, other than fire or lightning, we will pay that portion of the loss or damage which was solely caused by that **"specified cause of loss"**.

We will also not pay for loss, cost, or expense arising out of any request, demand, order, or statutory or regulatory requirement that requires any insured or others to test for, monitor, clean up, remove, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **"microorganisms"**.

7. **Nuclear Hazard**

We will not pay for loss or damage caused directly or indirectly by nuclear reaction or radiation, or radioactive contamination, however caused. Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.  But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for that portion of the loss or damage which was solely caused by that fire.

8. **Process Failures, Defects, or Errors**

We will not pay for any of the following:

a.  Loss or damage due to spoilage, destruction, adulteration, discard, reduction in value, or any other loss or damage to **"stock"** caused by or resulting from a **"mistake"** or **"malfunction"** in the alteration, development, distribution, installation, manufacturing, maintenance, processing, repair, or testing of such **"stock"**.

b.  Loss or damage, including the costs of correcting or making good, caused by or resulting from incorporating **"defective materials"** into part or all of any property on or off the **"premises"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**9.  Suspended Equipment**

We will not pay for loss or damage caused by or resulting from an **"equipment breakdown cause of loss"** to **"suspended equipment"**.  This exclusion applies even if this excluded cause of loss was caused by or resulted from a **"mistake"** or **"malfunction"**.

But if a result of this excluded cause of loss is a **"covered cause of loss"**, we will pay for that portion of the loss or damage which was solely caused by that **"covered cause of loss"**.

**10.  War and Military Action**

We will not pay for loss or damage arising, directly or indirectly, out of:

**a.**  War, including undeclared or civil war;

**b.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**c.**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority by hindering or defending against any of these.

Such loss or damage is excluded regardless of any other cause or event, including a **"mistake"** or **"malfunction"**, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

## D.  DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations.  We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

## E.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the COMMERCIAL PROPERTY CONDITIONS and the COMMON POLICY CONDITIONS:

**1.**  In the event of any loss or damage to **"personal property"** in transit, you must immediately make a claim in writing against the carrier, bailee, or others involved.

**2.**  If **"personal property"** in transit which was sold under Free on Board or Freight Allowed terms is lost or damaged and the consignee refuses to pay for such **"personal property"** because of the loss or damage, we will not attempt to enforce collection from the consignee without your written permission.

## F.  VALUATION

We will determine the amount of covered loss or damage as follows:

**1.**  Except as provided in 2., 3., 4., 5., and 6. below, the lesser of the following amounts:

**a.**  The **"replacement cost"**; or

**b.**  The **"amount you actually spend"** to repair, rebuild, or replace **"personal property"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0117 (03 14)

Page 4 of 5

2.  Except as provided in 3., 5., and 6. below, **"personal property"** which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage.  If you commence the repair, rebuilding, or replacement of the lost or damaged **"personal property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

3.  **"Merchandise"** which has been sold but not delivered and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

4.  **"Stock in process"** at the value of **"raw stock"**, your labor expended, and your materials incorporated plus the proper proportion of your overhead charges, calculated in accordance with principles of Direct Costing.  In no event will overhead be calculated in accordance with the principles of Absorption Costing.

5.  **"Personal property"** which has been permanently removed from service at **"actual cash value"**.

6.  **"Duplicate information property"** at the lesser of:

    a.  The cost to purchase a duplicate copy, if a duplicate copy exists and is available for sale; or

    b.  The cost of blank materials, plus any cost incurred to copy data onto blank materials from a duplicate source on the same type of materials, provided such copying does not violate licensing or contract agreements.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0117 (03 14)

Page 5 of 5

# Extra Expense Coverage Form

**ZURICH**®

**Table of Contents**

| Section | Page No. |
|---|---|
| Coverages | 1 |
| Additional Coverages | 1 |
| Exclusions | 2 |
| Limitations | 3 |
| Deductible | 4 |
| Loss Determination | 4 |

PPP-0132 (08/16)

# Extra Expense Coverage Form



## A. COVERAGE

We will pay for the actual and necessary **"extra expense"** you incur due to direct physical loss of or damage to property at a **"premises"** at which a Limit of Insurance is shown for Extra Expense on the Declarations. The loss or damage must be directly caused by a **"covered cause of loss"**. We will not pay more than the applicable Limit of Insurance shown on the Declarations for Extra Expense at that **"premises"**.

## B. ADDITIONAL COVERAGES

### 1. Civil Authority

We will pay for the actual and necessary **"extra expense"** you incur for up to the number of days shown on the Declarations for Civil Authority when an order of civil authority prohibits access to the **"premises"** or **"reported unscheduled premises"**. That order must result from a civil authority's response to direct physical loss of or damage to property located within one mile from the **"premises"** or **"reported unscheduled premises"** where the **"extra expense"** was incurred. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage is the Limit of Insurance shown on the Declarations for Extra Expense at the **"premises"** or **"reported unscheduled premises"** where access was prohibited.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

### 2. Ingress/Egress

We will pay for the actual and necessary **"extra expense"** you incur for up to the number of days shown on the Declarations for Ingress/Egress, when ingress or egress by your suppliers, customers, or employees to the **"premises"** or **"reported unscheduled premises"** is physically obstructed due to direct physical loss or damage. The actual and necessary **"extra expense"** you incur must be caused by direct physical loss of or damage to property not owned, occupied, leased, or rented by you, or insured under this Commercial Property Coverage Part. That property must be located within one mile from the **"premises"** or **"reported unscheduled premises"** where the **"extra expense"** was incurred. The obstruction cannot be the result of an order of civil authority that prohibits access to that **"premises"** or **"reported unscheduled premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under the Additional Coverage is the Limit of Insurance shown on the Declarations for Extra Expense at the **"premises"** or **"reported unscheduled premises"** where ingress or egress was obstructed.

The Limit for this Additional Coverage is included in, and not in addition to, the applicable Limit of Insurance.

### 3. Newly Acquired Premises

We will pay for the actual and necessary **"extra expense"** you incur due to direct physical loss of or damage to your property at a **"newly acquired premises"**. The loss or damage must be directly caused by a **"covered cause of loss"**.

This Additional Coverage will automatically expire on the earliest of the following dates:

**a.** The date you report the **"newly acquired premises"** to us;

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0132 (08 16)
Page 1 of 4

b. The number of days shown on the Declarations from the date the location becomes a **"newly acquired premises"**; or

c. The date this policy expires or is cancelled.

We will charge you additional premium for values reported from the date the location becomes a **"newly acquired premises"**.

The most we will pay under this Additional Coverage at any one **"newly acquired premises"** is the Limit of Insurance shown on the Declarations for Newly Acquired Premises--Extra Expense.

### 4. Reported Unscheduled Premises

We will pay for the actual and necessary **"extra expense"** you incur due to direct physical loss of or damage to property at a **"reported unscheduled premises"**.  The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage at any one **"reported unscheduled premises"** is the Limit of Insurance shown on the Declarations for Reported Unscheduled Premises--Extra Expense.

### 5. Unreported Premises

We will pay for the actual and necessary **"extra expense"** you incur due to direct physical loss of or damage to your property at an **"unreported premises"**.  The loss or damage must be directly caused by a **"covered cause of loss"**.

The most we will pay under this Additional Coverage at any one **"unreported premises"** is the Limit of Insurance shown on the Declarations for Unreported Premises--Extra Expense.

## C. EXCLUSIONS

### 1. Real or Personal Property

The exclusions in paragraphs 4., 5., and 6. below and the excluded causes of loss in the REAL AND PERSONAL PROPERTY COVERAGE FORM, except Off Premises Service Interruption, apply to **"extra expense"** incurred, caused by or resulting from loss of or damage to any property other than:

a. **"Fine arts"**;

b. **"Original information property"**;

c. **"Outdoor trees, shrubs, plants, or lawns"**; or

d. **"Green roofing systems"**.

### 2. Fine Arts

The exclusions in paragraphs 4., 5., and 6. below and the excluded causes of loss in the FINE ARTS COVERAGE FORM apply to **"extra expense"** incurred, caused by or resulting from loss of or damage to **"fine arts"**.

### 3. Original Information Property

The exclusions in paragraphs 4., 5., and 6. below and the excluded causes of loss in the ORIGINAL INFORMATION PROPERTY COVERAGE FORM apply to **"extra expense"** incurred, caused by or resulting from loss of or damage to **"original information property"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.          PPP-0132 (08 16)

Page 2 of 4

4. **Off-Premises Service Interruption**

We will not pay for **"extra expense"** incurred, caused by or resulting from any **"off-premises service interruption"**. Such loss is excluded regardless of any other cause or event, including a **"mistake"**, **"malfunction"**, or weather condition, that contributes concurrently or in any sequence to the loss, even if such other cause or event would otherwise be covered.

5. **Suspension, Lapse, or Cancellation**

We will not pay for **"extra expense"** incurred, caused by or resulting from a suspension, lapse, or cancellation of any license, lease, or contract, unless the suspension, lapse, or cancellation is directly caused by the **"suspension"** of your **"operations"**. If the suspension, lapse, or cancellation of any license, lease, or contract is directly caused by the **"suspension"** of your **"operations"**, we will not pay for that portion of any **"extra expense"** incurred from such suspension, lapse, or cancellation which occurs after the **"period of restoration"**.

6. **Space and Space Related Risks**

We will not pay for **"extra expense"** incurred, caused by or resulting from loss or damage to:

a. Spacecraft, satellites, associated launch vehicles and any major components, including any property contained therein; or

b. Launch facilities for spacecraft or satellites.

D. **LIMITATIONS**

1. **Idle Periods**

We will not pay for **"extra expense"** incurred during any period in which business would not or could not have been conducted for any reason other than:

a. Direct physical loss of or damage to property as described in Section A., Coverage, above;

b. A civil authority prohibiting access to the **"premises"** or **"reported unscheduled premises"** as described in the Civil Authority Additional Coverage above; or

c. A physical obstruction affecting ingress or egress to the **"premises"** or **"reported unscheduled premises"** as described in the Ingress/Egress Additional Coverage above.

2. **Strikers or Others Causing Delay**

We will not pay for any increase in **"extra expense"** incurred, caused by delay in rebuilding, repairing, or replacing property or resuming **"operations"**, due to the interference at the location of the rebuilding, repair, or replacement by strikers or other persons.

3. **Outdoor Trees, Shrubs, Plants, or Lawns**

We will not pay for **"extra expense"** incurred, caused by or resulting from loss of or damage to **"outdoor trees, shrubs, plants, or lawns"** unless the loss or damage is directly caused by fire, lightning, explosion, riot or civil commotion, or aircraft.

4. **Green Roofing Systems**

We will not pay for **"extra expense"** incurred, caused by or resulting from loss of or damage to **"green roofing systems"** unless the loss or damage is directly caused by a **"covered cause of loss"** other than loss or damage caused by or resulting from:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    PPP-0132 (08 16)

Page 3 of 4

**a.** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals;

**b.** Disease;

**c.** Changes in or extremes of temperature;

**d.** Dampness or dryness of atmosphere or of soil supporting the vegetation; or

**e.** Rain, snow, hail, ice, or sleet.

## E. DEDUCTIBLE

We will not pay for any **"extra expense"** incurred in any one occurrence until the amount of **"extra expense"** incurred exceeds the applicable Deductibles shown on the Declarations. We will then pay the actual and necessary **"extra expense"** incurred in excess of the Deductibles up to the applicable Limits of Insurance.

## F. LOSS DETERMINATION

### 1. Sources of Information

The amount of actual and necessary **"extra expense"** incurred will be based on relevant sources of information, including, but not limited to:

**a.** Your financial records, tax returns, and accounting procedures;

**b.** Bills, invoices, and other vouchers; and

**c.** Deeds, liens, and contracts.

### 2. Extra Expense

The amount of actual and necessary **"extra expense"** incurred will be determined based on:

**a.** All **"extra expense"** that exceeds the normal operating expenses that would have been incurred by your **"operations"** during the **"period of restoration"** if no direct physical loss or damage had occurred; and

**b.** All expenses that reduce the **"extra expense"** that otherwise would have been incurred.

We will deduct from the total **"extra expense"** incurred the salvage value of any property bought for temporary use during the **"period of restoration"**, once **"operations"** are resumed.

### 3. Resumption of Operations

We will reduce the amount of **"extra expense"** paid to the extent you can return **"operations"** to normal and discontinue such **"extra expense"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0132 (08 16)

Page 4 of 4

# Named Storm--Direct Damage and Time Element Deductible



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies the following:

**ACCOUNTS RECEIVABLE COVERAGE FORM (REVENUE LOSS)**
**ADDITIONAL COVERAGES FORM**
**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**
**BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING**
     **EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY**
**COMMERCIAL PROPERTY DEFINITIONS**
**CONTRACTOR'S EQUIPMENT COVERAGE FORM**
**EXTRA EXPENSE COVERAGE FORM**
**FINE ARTS COVERAGE FORM**
**INSTALLATION PROPERTY COVERAGE FORM**
**ORIGINAL INFORMATION PROPERTY COVERAGE FORM**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**
**RESEARCH AND DEVELOPMENT PROPERTY COVERAGE FORM**

A.  The Named Storm--Direct Damage and Time Element Deductible only applies to loss or damage that, but for the application of the Deductible, would be paid by us under this Commercial Property Coverage Part.

  All loss or damage arising out of the same **"named storm"** will constitute a single occurrence.  For purposes of this insurance, a **"named storm"** begins at the time a Watch or Warning is issued by the U.S. National Oceanic and Atmospheric Administration, the U.S. National Weather Service, the Central Pacific Hurricane Center, the National Hurricane Center, or any comparable worldwide equivalent for the area in which the affected **"premises"** is located, and ends 72 hours after the termination of the last Watch or Warning issued for that area.

B.  With respect to any **"premises"** at which a Named Storm--Direct Damage and Time Element Deductible is shown on the Declarations, the following is added to the Deductible section in the following forms:

  ACCOUNTS RECEIVABLE COVERAGE FORM (REVENUE LOSS)
  ADDITIONAL COVERAGES FORM
  BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)
  BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING
       EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY
  CONTRACTOR'S EQUIPMENT COVERAGE FORM
       EXTRA EXPENSE COVERAGE FORM
  FINE ARTS COVERAGE FORM
  INSTALLATION PROPERTY COVERAGE FORM
  ORIGINAL INFORMATION PROPERTY COVERAGE FORM
  REAL AND PERSONAL PROPERTY COVERAGE FORM
  RESEARCH AND DEVELOPMENT PROPERTY COVERAGE FORM

  With respect to all loss or damage caused directly or indirectly by a **"named storm"**, regardless of whether any other cause or event, including a **"mistake"**, **"malfunction"**, or another weather condition, contributes concurrently or in any sequence to the loss, the following applies:

We will not pay for loss, damage, cost, or expense at any one **"premises"** in any one occurrence until the amount of covered loss, damage, cost, or expense exceeds the Named Storm--Direct Damage and Time Element Deductible shown on the Declarations for that **"premises"**. We will then pay for the amount of covered loss, damage, cost, or expense in excess of the Deductible, up to the applicable Limits of Insurance.

If more than one **"premises"** suffers loss or damage in one occurrence, the applicable Deductibles shown on the Declarations will apply separately and individually to the covered loss, damage, cost, or expense for each **"premises".**

The Named Storm Deductibles apply to all covered loss, damage, cost, or expense covered by **"time element coverage"** when the loss, damage, cost, or expense is caused directly or indirectly by a **"named storm"** even if no other deductible applies to the **"time element coverage"**.

**C.** The following is added to the COMMERCIAL PROPERTY DEFINITIONS:

**"Named storm"** means any storm or weather disturbance that is named by the U.S. National Oceanic and Atmospheric Administration, the U.S. National Weather Service, the Central Pacific Hurricane Center, the National Hurricane Center, or any comparable worldwide equivalent. **"Named storm"** does not mean **"flood"** even if **"flood"** is caused directly or indirectly by wind, including storm surge.

# Wind and Hail--Direct Damage and Time Element Deductible



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ACCOUNTS RECEIVABLE COVERAGE FORM (REVENUE LOSS)**
**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**
**BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES**
   **(EXCLUDING EXTRA EXPENSE)--TECHNOLOGY**
**EXTRA EXPENSE COVERAGE FORM**
**FINE ARTS COVERAGE FORM**
**ORIGINAL INFORMATION PROPERTY COVERAGE FORM**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**
**RESEARCH AND DEVELOPMENT PROPERTY COVERAGE FORM**

**A.** The Wind and Hail--Direct Damage and Time Element Deductible only applies to loss or damage that, but for the application of the Deductible, would be paid by us under this Commercial Property Coverage Part.

**B.** With respect to any **"premises"** at which a Wind and Hail--Direct Damage and Time Element Deductible is shown on the Declarations, the following is added to the Deductible section:

With respect to all loss or damage caused directly or indirectly by wind or hail, regardless of whether any other cause or event, including a **"mistake"**, **"malfunction"**, or another weather condition, contributes concurrently or in any sequence to the loss, the following applies:

We will not pay for loss, damage, cost, or expense at any one **"premises"** in any one occurrence until the amount of covered loss, damage, cost, or expense exceeds the Wind and Hail--Direct Damage and Time Element Deductible shown on the Declarations for that **"premises"**.  We will then pay for the amount of covered loss, damage, cost, or expense in excess of the Deductible, up to the applicable Limits of Insurance.

If more than one **"premises"** suffers loss or damage in one occurrence, the applicable Deductibles shown on the Declarations will apply separately and individually to the covered loss, damage, cost, or expense at each **"premises"**.

The Wind and Hail Deductibles apply to all covered loss, damage, cost, or expense covered by **"time element coverage"** when the loss, damage, cost, or expense is caused directly or indirectly by wind or hail even if no other deductible applies to the **"time element coverage"**.

Includes copyrighted material of ISO Properties, Inc. with its permission
Copyright, ISO Properties, Inc.

# Roof Covering Valuation



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies the following:

**REAL AND PERSONAL PROPERTY COVERAGE FORM
COMMERCIAL PROPERTY DEFINITIONS**

**SCHEDULE\***

| Premises /<br>Location Number | Address / Description |
|---|---|
| 1-1 | 5017 N Coolidge Ave, Tampa, FL 33614-6421 |
| 2-1 | 8218 N 279 W, Lake Village, IN 46349-9498 |
| 3-1 | 10095 N Saginaw Blvd, Fort Worth, TX 76179 |

\*Information required to complete this Schedule, if not shown on this endorsement, will be shown on the Declarations.

With respect to a **"premises"**, or to a building at a **"premises"**, described in the Schedule of this endorsement:

A.  Section E., Valuation, of the REAL AND PERSONAL PROPERTY COVERAGE FORM, is replaced by the following:

   We will determine the amount of covered loss or damage as follows:

   1.  Except as provided in 2., 3., 4., 5., 6., 7. and 8. below, the lesser of the following amounts:

      a.  The **"replacement cost"**; or

      b.  The **"amount you actually spend"** to repair, rebuild, or replace the **"real property"** or **"personal property"** at the same or another location.

   2.  Except as provided in 3., 5., 6., 7. and 8. below, **"real property"** or **"personal property"**, other than **"improvements and betterments"**, which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage.  If you commence the repair, rebuilding, or replacement of the lost or damaged **"real property"** or **"personal property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

   3.  **"Merchandise"** which has been sold but not delivered and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

   4.  **"Stock in process"** at the value of **"raw stock"**, your labor expended, and your materials incorporated plus the proper proportion of your overhead charges, calculated in accordance with principles of Direct Costing. In no event will overhead be calculated in accordance with the principles of Absorption Costing.

   5.  **"Improvements and betterments"** at:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0250 (08/16)
Page 1 of 2

a.  The **"replacement cost"** if you make repairs with reasonable speed.

b.  A proportion of your original cost if you do not make repairs with reasonable speed.  We will determine the proportionate value as follows:

1)  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

2)  Divide the amount determined in 1) above by the number of days from the installation of **"improvements and betterments"** to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will be used as the expiration of the lease.

c.  That portion which has not been paid if others pay for repairs, rebuilding, or replacement.

6.  **"Personal property"** which has been permanently removed from service at **"actual cash value"**.

7.  **"Duplicate information property"** at the lesser of:

a.  The cost to purchase a duplicate copy, if a duplicate copy exists and is available for sale; or

b.  The cost of blank materials, plus any cost incurred to copy data onto blank materials from a duplicate source on the same type of materials, provided such copying does not violate licensing or contract agreements.

8.  **"Roof covering"** at the lesser of the following amounts:

a.  The **"actual cash value"**; or

b.  The **"amount you actually spend"** to repair or replace the **"roof covering"** at the same location.

B.  With respect to this endorsement, the following is added to the COMMERCIAL PROPERTY DEFINITIONS.

**"Roof covering"** means the covering material installed in a building over the roof deck, including all materials used in securing the roof covering, all materials applied under the roof cover for moisture protection, and the roof flashing.

**"Roof covering"** does not mean the roof deck, roof deck supports or building frame.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Water Damage Deductible



**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies the following:

**ACCOUNTS RECEIVABLE COVERAGE FORM (REVENUE LOSS)**
**ADDITIONAL COVERAGES FORM**
**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**
**BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES**
    **(EXCLUDING EXTRA EXPENSE)--TECHNOLOGY**
**COMMERCIAL PROPERTY DEFINITIONS**
**EXTRA EXPENSE COVERAGE FORM**
**FINE ARTS COVERAGE FORM**
**ORIGINAL INFORMATION PROPERTY COVERAGE FORM**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**
**RESEARCH AND DEVELOPMENT PROPERTY COVERAGE FORM**

**A.** The following applies to all forms (except COMMERCIAL PROPERTY DEFINITIONS) listed above:

With respect to a **"premises"** for which a Water Damage Deductible is shown on the Declarations, the following is added to the Deductible section:

1. We will not pay for loss, damage, cost, or expense at any one **"premises"** caused by or resulting from **"certain water"** in any one occurrence until the amount of covered loss, damage, cost, or expense exceeds the Water Damage Deductible shown on the Declarations for that **"premises"**.  We will then pay for the amount of covered loss, damage, cost, or expense in excess of the Deductible, up to the applicable Limits of Insurance.

2. If more than one **"premises"** suffers loss or damage in one occurrence, the applicable Deductibles shown on the Declarations will apply separately and individually to the covered loss, damage, cost, or expense at each **"premises"**.

3. The Water Damage Deductible applies to all covered loss, damage, cost, or expense covered by **"time element coverage"** when the loss, damage, cost, or expense is caused directly or indirectly by **"certain water"** even if no other deductible applies to the **"time element coverage"**.

4. The Water Damage Deductible only applies to loss, damage, cost or expense that, but for the application of the Deductible, would be paid by us under this Commercial Property Coverage Part.

**B.** The following is added to the COMMERCIAL PROPERTY DEFINITIONS:

**"Certain water"** means:

1. Leakage, escape or discharge of any substance from a fire extinguishing system or equipment, caused by freezing or any other **"covered cause of loss"**, except for discharge in response to a fire;

2. Leakage, escape, discharge, back-up or overflow of water or steam from a plumbing, heating, air conditioning or other system or appliance, caused by freezing or any other **"covered cause of loss"**;

3. Accidental discharge or leakage from roof drains, gutters, downspouts or similar fixtures or equipment;

4. Incursion, leakage or seepage of water caused by or resulting from thawing of snow, sleet or ice on buildings or structures; or

5. Incursion, leakage or seepage of rain, snow, sleet or ice, whether driven by wind or not, into the interior of buildings or structures unless the building or structure first sustains damage caused by or resulting from a **"covered cause of loss"** through which the rain, snow, sleet or ice enters.

INTERNAL USE ONLY

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0253 (09/18)
Page 1 of 1

# Enabling Endorsement



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies the following:

**COMMERCIAL PROPERTY CONDITIONS**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**

The provisions of any forms or endorsements that make reference to the BUILDING AND PERSONAL PROPERTY COVERAGE FORM or the CAUSES OF LOSS SPECIAL FORM are applicable to the COMMERCIAL PROPERTY CONDITIONS and the REAL AND PERSONAL PROPERTY COVERAGE FORM.

Includes copyrighted material of ISO Properties, Inc. with its permission
Copyright, ISO Properties, Inc.

PPP-0308 (06/06)
Page 1 of 1

# Joint Loss Agreement--Property and Equipment Breakdown



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

In the event of loss of or damage to Covered Property at a **"premises"** that is covered by both this Commercial Property Coverage Part and Equipment Breakdown Insurance or similar insurance provided by other insurers, and there is disagreement between us and the Equipment Breakdown Insurers as to whether the loss or damage:

1.  Was caused by a **"covered caused of loss"** insured under the Equipment Breakdown Insurance;

2.  Was caused by a **"covered cause of loss"** to property insured under this Commercial Property Coverage Part; or

3.  Is partially covered by either;

we will pay, after we receive your written request, the amount of loss or damage that we have accepted as covered by this Commercial Property Coverage Part and one-half (1/2) the amount of loss or damage that is in disagreement, but no more than we would have paid had there been no Equipment Breakdown Insurance in effect at the time of the occurrence, subject to the following conditions:

1.  The amount of loss or damage is agreed to by you, the Equipment Breakdown insurers, and us.

2.  Any payment under this endorsement is limited to the least amount payable under either the Equipment Breakdown Insurance or this Commercial Property Coverage Part.  In no event will we pay more than the applicable Limit of Insurance shown on the Declarations.

3.  The Equipment Breakdown Insurers will pay you the amount of loss they have accepted as covered by the Equipment Breakdown Insurance and one-half (1/2) the amount of loss that is in disagreement.

4.  After payment of the loss under the terms of this endorsement, the Equipment Breakdown Insurers and we agree to submit our differences to arbitration within 90 days of such payment.  There will be three arbitrators; one will be appointed by us, one will be appointed by the Equipment Breakdown Insurers, and one will be appointed by the mutual agreement of the Equipment Breakdown Insurers and us.  The arbitrators' decision shall be binding on the insurers.  Judgment on any award can be entered in any court that has jurisdiction.

5.  You agree to cooperate with us in any arbitration proceedings.

6.  The provisions of this endorsement will not apply unless the Equipment Breakdown Insurance or similar insurance is similarly endorsed with a Joint Loss Agreement.

7.  Acceptance by you of sums paid under this endorsement does not alter, waive or surrender your rights against us.

Includes copyrighted material of ISO Properties, Inc. with its permission
Copyright, ISO Properties, Inc.



# Selling Price--Merchandise

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**
**BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING**
**    EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**

**A.**  Paragraph 3. of Section E., Valuation, in the REAL AND PERSONAL PROPERTY COVERAGE FORM is replaced by the following:

   **3.**  **"Merchandise"** which has been in your possession for 12 months or less and **"finished stock"** at the regular cash selling price, less any discounts and expenses you otherwise would have had.

**B.**  The Finished Stock exclusion in Section C., Exclusions, in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) and BUSINESS INCOME COVERAGE FORM INCLUDING RESEARCH AND DEVELOPMENT CONTINUING EXPENSES (EXCLUDING EXTRA EXPENSE)--TECHNOLOGY is replaced by the following:

   **Finished Stock and Merchandise**

   We will not pay for loss of **"business income"** caused by or resulting from:

   **a.**  Loss of or damage to **"merchandise"** which has been in your possession for 12 months or less or **"finished stock"**; or

   **b.**  The time required to replace **"merchandise"** which has been in your possession for 12 months or less or **"finished stock"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Unintentional Errors or Omissions Coverage

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ADDITIONAL COVERAGES FORM**
**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**

The following is added to Section A., Additional Coverages, in the ADDITIONAL COVERAGES FORM and Section B., Additional Coverages, in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE):

**Unintentional Errors or Omissions**

1.  We will pay for direct physical loss of or damage to Covered Property and the actual loss of **"business income"** you sustain which is not payable under this policy as a result of:

    a.      Your unintentional error or omission in the description or location of such Covered Property; or

    b.      Failure to include a **"premises"** you own, lease, rent, or control as of the effective date shown on the Declarations due to your unintentional error or omission.

    We will pay such loss or damage only to the extent such loss or damage would have been covered under the terms and conditions of this Commercial Property Coverage Part if the unintentional error or omission had not been made.

2.  This Additional Coverage applies only if:

    a.      You report and correct such unintentional error or omission when discovered; and

    b.      You pay any additional premium that may be due.

3.  This Additional Coverage does not apply if:

    a.      You collect or are entitled to collect any portion of the loss or damage under this or any other policy; or

    b.      The loss or damage is caused directly or indirectly by **"earth movement"** or **"flood"**.

4.  The most we will pay under this Additional Coverage for direct physical loss of or damage to Covered Property and the actual loss of **"business income"** you sustain in any one occurrence is the Limit of Insurance shown on the Declarations for Unintentional Errors or Omissions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0338 (05/10)
Page 1 of 1

# Control of Damaged Goods



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies the following:

**COMMERCIAL PROPERTY CONDITIONS**

Paragraph 2. of the Loss Payment Condition in the COMMERCIAL PROPERTY CONDITIONS is replaced by the following:

**2.**   If we elect to exercise option 1.c. with respect to covered **"merchandise"** or **"finished stock"**, you retain the full right of possession and control of such damaged **"merchandise"** or **"finished stock"** bearing labels or permanent markings identifying you as the manufacturer or distributor of that **"merchandise"** or **"finished stock"**.

After proper segregation of damaged from undamaged **"merchandise"** or **"finished stock"**, you may, using reasonable judgment, determine whether the damaged **"merchandise"** or **"finished stock"** can be reprocessed or sold.  None of the damaged **"merchandise"** or **"finished stock"** that you determine to be unfit for reprocessing or sale will be sold or otherwise disposed of except by you or with your consent.

The salvage value of the damaged property will be determined at the time of loss.  We will deduct the fair market value of the salvage which could have been obtained from the sale or other disposition of such **"merchandise"** or **"finished stock"** through normal insurance industry salvage practices.

If the **"merchandise"** or **"finished stock"** are to be destroyed, you will allow us to confirm such destruction, and we will include the reasonable costs you incur as part of your claim.

# Crisis Event Management Coverage

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This insurance modifies the following:

**ADDITIONAL COVERAGES FORM**
**COMMERCIAL PROPERTY DEFINITIONS**

**A.** The following is added to Section A., Additional Coverages, in the ADDITIONAL COVERAGES FORM:

**Crisis Event Management**

We will reimburse you for the reasonable and necessary **"crisis management expenses"** you incur to minimize negative publicity and restore your reputation due to a **"crisis event"** at a **"premises"** or **"reported unscheduled premises"**.

This Additional Coverage does not apply to:

**a.** Any loss or damage payable elsewhere in this policy;

**b.** Any loss or damage payable to your **"employee"** by a workers compensation insurance policy or program;

**c.** Any loss or damage payable under any other insurance.

**B.** LIMITS OF INSURANCE

With respect to the coverage provided by this endorsement, the most we will pay for reasonable and necessary **"crisis management expenses"** in any one occurrence or in any one policy year is the Limit of Insurance shown on the Declarations for Crisis Event Management.

These Limits are included in, and not in addition to, any other applicable Limits of Insurance.

**C.** The following definitions are added to the COMMERCIAL PROPERTY DEFINITIONS:

**"Crisis event"** means any of the following actual, attempted, or threatened acts committed by someone other than you, your partners, **"members"**, officers, **"managers"**, employees (including leased or temporary employees), directors, trustees, or authorized representatives:

**a.** Arson;

**b.** Bombing;

**c.** Child abduction or kidnapping of a child under 10 years of age by someone other than the child's parent or legal guardian;

**d.** Criminal use of a firearm;

**e.** Criminal sexual assault;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0411 (08/16)
Page 1 of 2

**f.**   Hostage-taking;

**g.**   Robbery;

**h.**   Stalking of an employee, tenant, or customer; or

**i.**   Terrorism, unless terrorism or Certified Acts of Terrorism coverage is specifically excluded under this policy.

**"Crisis management expenses"** means:

**a.**   Facilitating the evacuation of customers, patients, guests, employees, and workers from the **"premises"** or **"reported unscheduled premises"** during or after the **"crisis event"**;

**b.**   Fees or expenses for services provided by:

  **1)**   A public relations firm;

  **2)**   A professional communications firm;

  **3)**   A crisis management firm; or

  **4)**   Your in-house public relations or communications department;

  that are directly related to a **"crisis event"**;

**c.**   Funeral expenses for those persons killed in the **"crisis event"**;

**d.**   Medical expenses for persons injured during the **"crisis event"**;

**e.**   Printing, advertising, or mailing materials to manage your reputation after the **"crisis event"**;

**f.**   Psychological counseling expenses for:

  **1)**   Persons injured in the **"crisis event"**; or

  **2)**   Immediate family members of persons killed in the **"crisis event"**;

**g.**   Temporary lodging and meal expenses for the immediate family members of persons injured or killed in the **"crisis event"**; or

**h.**   Travel expenses for:

  **1)**   Persons injured in a **"crisis event"**; or

  **2)**   The immediate family members of persons injured in, or killed in the **"crisis event"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Down Zoning Coverage



This endorsement modifies the following:

**BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE)**
**COMMERCIAL PROPERTY DEFINITIONS**
**REAL AND PERSONAL PROPERTY COVERAGE FORM**

**A.** The following is added to Section E., Valuation, in the REAL AND PERSONAL PROPERTY COVERAGE FORM:

If you are prohibited from repairing, rebuilding, or replacing **"real property"** to the same height, floor area, number of units, configuration, or occupancy due to restrictions imposed by an applicable ordinance or law that regulates construction, zoning, or use that became effective during your ownership of the **"real property"** and prior to the date of the direct physical loss or damage, we will determine the amount of covered loss or damage as follows:

1.  **"Real property"** not subject to a waiver of the ordinance or law that allows the repair, rebuilding, or replacement of **"real property"** to the original height, floor area, number of units, configuration, or occupancy will be valued as follows:

    **a.** Except as provided in b. and c. below, **"real property"** repaired, rebuilt, or replaced at the same location to the height, floor area, number of units, configuration, or occupancy allowed by the ordinance or law, will be valued at the lesser of the following amounts:

    1)  **"Replacement cost"** for that portion of the **"real property"** that can be repaired, rebuilt, or replaced in accordance with the applicable ordinance or law and **"actual cash value"** for that portion of the **"real property"** that cannot be repaired, rebuilt, or replaced due to the applicable ordinance or law; or

    2)  The **"amount you actually spend"** to repair, rebuild, or replace the **"real property"** but only the **"actual cash value"** for that portion of the **"real property"** that cannot be repaired, rebuilt, or replaced due to the applicable ordinance or law.

    **b.** Except as provided in c. below, **"real property"** rebuilt or replaced at another location will be valued at the lesser of the following amounts:

    1)  **"Replacement cost"**; or

    2)  The **"amount you actually spend"** to rebuild or replace the **"real property"**.

    **c.** **"Real property"** not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** for the **"real property"** that existed at the time and place of loss or damage.  If you commence the repair, rebuilding, or replacement of the damaged **"real property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** for that portion of **"real property"** repaired, rebuilt, or replaced.

2.  **"Real property"** subject to a waiver of the ordinance or law that allows the repair, rebuilding, or replacement of **"real property"** to the original height, floor area, number of units, configuration, or occupancy will be valued as follows:

    **a.** Except as provided in b. below, the lesser of the following amounts:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0412 (05/10)
Page 1 of 2

following amounts:

1) **"Replacement cost"**, including any fees paid to secure the waiver; or

2) The **"amount you actually spend"**, including any fees paid to secure the waiver, to repair, rebuild, or replace the **"real property"** to the same height, floor area, number of units, configuration, or occupancy that existed as of the date of the loss or damage at the same or another location.

b. **"Real property"** not repaired, rebuilt, or replaced to the same height, floor area, number of units, configuration, or occupancy that existed as of the date of the loss or damage will be valued at:

1) **"Replacement cost"** for that portion of the **"real property"** that is repaired, rebuilt, or replaced; and

2) **"Actual cash value"** at the time and place of loss or damage for that portion of the **"real property"** not repaired, rebuilt, or replaced.  If you commence the repair, rebuilding, or replacement of the remainder of the damaged **"real property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage, including any applicable municipal waiver fees.

Fees paid to secure a waiver are included in, and not in addition to, any other applicable Limits of Insurance.

3. Subject to 1. and 2. above, the most we will pay for **"real property"** at any one **"premises"** is the lesser of the applicable Limit of Insurance shown on the Declarations or the stated value for such **"real property"** as shown on the most current statement of values or other documentation on file with us as of the date of the loss or damage.

B. If the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) is included in this Commercial Property Coverage Part, the following is added to the definition of **"period of restoration"** in the COMMERCIAL PROPERTY DEFINITIONS:

If you do not resume **"operations"** due to restrictions imposed by an applicable ordinance or law that regulates construction, zoning, or use and that prohibits you from repairing, rebuilding, or replacing **"real property"** to the same height, floor area, number of units, configuration, or occupancy at the time of the direct physical loss or damage, the **"period of restoration"** will end for that portion of the **"real property"** that cannot be repaired, rebuilt, or replaced due to the applicable ordinance or law 12 months from the time of the direct physical loss or damage.

C. If the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE) is included in this Commercial Property Coverage Part, the following is added to the Extended Period of Indemnity Additional Coverage in the BUSINESS INCOME COVERAGE FORM (EXCLUDING EXTRA EXPENSE):

This Additional Coverage does not apply to **"business income"** from **"operations"** that are not resumed due to restrictions imposed by an applicable ordinance or law that regulates construction, zoning, or use and that prohibits you from repairing, rebuilding, or replacing **"real property"**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-0412 (05/10)
Page 2 of 2

# Real Estate Tax Assessment Coverage

**Z**

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ADDITIONAL COVERAGES FORM**

The following is added to Section A., Additional Coverages:

**Real Estate Tax Assessment**

If loss or damage to **"real property"** at a **"premises"** is the result of a **"covered cause of loss"**, and as a direct result of the repairs to, rebuilding of, or replacement of the **"real property"** with materials of like kind and quality there is an increased real estate tax assessment of that **"real property"**, we will reimburse you for the amount of the increased real estate tax that is directly attributable to the repairs to, rebuilding of, or replacement of that **"real property"**.

We will only pay for the amount of such increased real estate tax if it is assessed within 2 years of the covered loss or damage.

The most we will pay under this Additional Coverage in any one occurrence is the amount of the increased real estate tax for two consecutive annual tax assessment periods or $50,000, whichever is less.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Florida Changes

**ZURICH**®

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

The following provisions only apply with respect to **"premises"**, **"scheduled property"** and **"reported unscheduled premises"** in the state of Florida:

A.  The following provision applies when the Additional Condition--Coinsurance endorsement is applicable:

Florida Law states as follows:

Coinsurance contract:  The rate charged in this Commercial Property Coverage Part is based upon the use of the coinsurance clause attached to this Commercial Property Coverage Part, with the consent of the insured.

B.  If wind is a **"covered cause of loss"** and loss or damage to Covered Property is caused by or resulting from wind, the following is added to Section B., Excluded Causes of Loss, in the REAL AND PERSONAL PROPERTY COVERAGE FORM and applies in:

   1.  Broward County;

   2.  Dade County;

   3.  Martin County;

   4.  Monroe County;

   5.  Palm Beach County; and

   6.  All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

      a.  Indian River; and

      b.  St. Lucie.

**Wind Exterior**

We will not pay for loss or damage caused by or resulting from wind to paint or waterproofing material applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by wind in the course of the same wind event.  But such coverage applies only if wind is a **"covered cause of loss"**.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

   1.  The amount of the Wind and Hail Deductible;

   2.  The amount of Named Storm Deductible; or

   3.  The value of Covered Property when applying the coinsurance percentage.

C.  Paragraph 6. in the Loss Payment Condition in the COMMERCIAL PROPERTY CONDITIONS is replaced by the following:

   6.  If you have complied with all of the terms of this Commercial Property Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

      a.  Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

      b.  Within 30 days after we receive the sworn proof of loss; and

         1)  There is an entry of a final judgment; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PPP-1091 B (01/20)
Page 1 of 3

**2)** There is a filing of an appraisal award with us; or

**c.** Within 90 days of receiving notice of claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment.  If a portion of the claim is denied, then the 90 day time period for payment of claim relates to the portion of the claims that is not denied.

This paragraph **c.** applies only to the following:

**1)** A claim under the Commercial Property Coverage Part covering residential property;

**2)** A claim for **"real property", "personal property"** or **"scheduled property"** coverage if the insured structure is 10,000 square feet or less and the Commercial Property Coverage Part covers only **"premises", "reported unscheduled premises"** or **"scheduled property"** in Florida; or

**3)** A claim for **"personal property"** or **"scheduled property"** coverage under a tenant's policy if the rented **"premises"** or **"reported unscheduled premises"** are 10,000 square feet or less and the Commercial Property Coverage Part covers only **"premises", "reported unscheduled premises"** or **"scheduled property"** in Florida.

**D.** The following are added to the COMMERCIAL PROPERTY DEFINITIONS with respect to coverage provided by this endorsement:

**"Catastrophic ground cover collapse"** means geological activity that results in all of the following:

**a.** The abrupt collapse of the ground cover;

**b.** A depression in the ground cover clearly visible to the naked eye;

**c.** **"Structural damage"** to the building, including the foundation; and

**d.** The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

**"Catastrophic ground cover collapse"** does not mean:

**a.** Damage consisting of the mere settling or cracking of a foundation, structure, or building;

**b.** **"Sinkhole collapse"**; or

**c.** **"Earth movement"**.

**"Structural damage"** means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members becomes unfit for service or represent a safety hazard as defined within the Florida Building code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings or similar structure, purpose, or **"premises"**;

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**E.** The definition of **"earth movement"** in the COMMERCIAL PROPERTY DEFINITIONS is replaced by the following with respect to coverage provided by this endorsement:

**"Earth movement"** means earthquake or other seismic activity, rising or shifting of earth (including frost heaves), or subsidence other than **"sinkhole collapse"** and **"catastrophic ground cover collapse"**.

**"Earth movement"** does not mean landslide, avalanche, or volcanic eruption, explosion or effusion, or tsunami.

**F.**  The following is added to the definition of **"specified causes of loss"**:

**"Catastrophic ground cover collapse"**.

**G.**  Section **F.**, Transfer Of Your Rights And Duties Under This Policy, of the COMMON POLICY CONDITIONS is replaced by the following:

Your rights and duties under this policy may not be transferred without our written consent except:

**1.**  In the case of death of an individual named insured, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**2.**  The Named Insureds may assign or transfer their post-loss benefits under this Policy through an assignment agreement to a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property, provided such assignment agreement complies with Florida law. Any rights to post-loss benefits assigned do not alter this Policy or relieve you or us of any obligations or duties under this Policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.   PPP-1091 B (01/20)

Page 3 of 3



# IMPORTANT NOTICE TO POLICYHOLDERS
## General Liability Supplemental Coverage Endorsement (U-GL-1345-C)

This is a summary of the major changes in your Commercial General Liability Coverage Part.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided.  If there is any conflict between the policy and this summary, **THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

The material in the notice makes reference to form and endorsement numbers; **however, not all forms and endorsements are included in a particular policy.**  Please consult with your broker for how the change impacts your individual policy as certain coverages may have previously been extended by endorsement.

### COVERAGE FORMS, CAUSES OF LOSS FORMS AND RELATED ENDORSEMENTS

**Reduction of Coverage**

- **General Liability Supplemental Coverage Endorsement** (U-GL-1345-C)

  With this updated endorsement, we are removing the Priority Condition in the General Liability Supplemental Endorsement that applied limits of insurance in a priority order beginning with the Named Insured.

# Notification to Others of Cancellation



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part
Liquor Liability Coverage Part
Products/Completed Operations Liability Coverage Part**

**A.** If we cancel this Coverage Part(s) by written notice to the Named Insured for any reason other than nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation:

    **1.** To the name and address corresponding to each person or organization shown in the Schedule below; and

    **2.** At least 10 days prior to the effective date of the cancellation, as advised in our notice to the Named Insured, or the longer number of days notice if indicated in the Schedule below.

**B.** If we cancel this Coverage Part(s) by written notice to the Named Insured for nonpayment of premium, we will mail or deliver a copy of such written notice of cancellation to the name and address corresponding to each person or organization shown in the Schedule below at least 10 days prior to the effective date of such cancellation.

**C.** If notice as described in Paragraphs **A.** or **B.** of this endorsement is mailed, proof of mailing will be sufficient proof of such notice.

| SCHEDULE | |
|---|---|
| **Name and Address of Other Person(s) / Organization(s):** | **Number of Days Notice:** |
| A-1 CONTRACT STAFFING PAY ADMIN., LLC ET AL<br>3829 COCONUT PALM DR TAMPA, FL 33619-1353 | 30 |

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1446-A FL (05/10)
Page 1 of 1

# Recording And Distribution Of Material Or Information In Violation Of Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

A.  Exclusion **q. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

 **2. Exclusions**

 This insurance does not apply to:

 **q. Recording And Distribution Of Material Or Information In Violation Of Law**

 "Bodily injury" or "property damage" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

 **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

 **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

 **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

 **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

B.  Exclusion **p. Recording And Distribution Of Material Or Information In Violation Of Law** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

 **2. Exclusions**

 This insurance does not apply to:

 **p. Recording And Distribution Of Material Or Information In Violation Of Law**

 "Personal and advertising injury" directly or indirectly arising out of or based upon any action or omission that violates or is alleged to violate:

 **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

 **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

 **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1517-B CW (04/13)
Page 1 of 2

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, or any other legal liability, at common law or otherwise, that addresses, prohibits, or limits the printing, dissemination, disposal, monitoring, collecting, recording, use of, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1517-B CW (04/13)
Page 2 of 2

# Employee Benefits Liability – Claims-Made Coverage Form



**ZURICH**®

**This Coverage Form provides *claims-made* coverage.  Please read the entire form carefully.**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us", and "our" refer to the Company providing this insurance.

**Other words and phrases that appear in quotes have special meaning.  Refer to the Definitions Section.**

## Section I. Coverage - Employee Benefit Liability

### 1.  Insuring Agreement

**A.** We will pay those sums that the "insured" becomes legally obligated to pay as damages  because of an act, error, or omission in the "administration" of the "insured's" "employee benefit programs".  We will have the right and duty to defend the "insured" against any suit seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for any act, error, or omission for which this insurance does not apply.  We may, at our discretion, investigate any "claim" and settle any "suit" that may result; but:

**(1)** The amount we pay for damages is limited as described in Section II. - Limits of  Insurance of this Coverage Part; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Employee Benefit Liability coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments of this Coverage Part.

**B. (1)** This insurance applies to an act, error or omission only if:

**a.** A "claim" arising out of the act, error or omission is first made against any "insured" during  the policy  period;

**b.** The act, error, or omission takes place in the "coverage territory";

**c.** The "insured" had no knowledge of and could not have reasonably foreseen any circumstances which might result in a "claim" or "suit"; and

**d.** The act, error, or omission did not occur before the Retroactive Date, if any, shown

in the Declarations or after the end of the policy period.

**(2)** A "claim" will be deemed to have been made when notice of such claim is received and recorded by any "insured" or by us, whichever comes first.  "All "claims" for damages to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

### 2.  Exclusions

This insurance does not apply to:

**A.** "Bodily injury", "property damage", or "personal and advertising injury";

**B.** Any "claim" or "suit" arising out of any dishonest, fraudulent, criminal or malicious act;

**C.** Any "claim" or "suit" arising out of discrimination or humiliation;

**D.** Any "claim" or "suit"  arising out of an insurer's or other provider's failure to perform its contract;

**E.** Any "claim" or "suit" arising out of your failure to comply with any workers compensation, unemployment insurance, social security, disability benefits law, or similar laws;

**F.** Any "claim" or "suit" arising out of the failure of any of your "employee benefit plans" to meet obligations due to insufficient funds;

**G.** Any "claim" or "suit" arising out of:

**(1)** Advice given to any person to participate or not participate in a plan or program included in "employee benefit programs";

**(2)** The appointment of, or failure to appoint, any investment manager, administrator, trustee, actuary, advisor, counsel, accountant, custodian, or consultant;

(3) Any investment activity, including the management, administration or disposition of assets of your "employee benefit programs"; or

(4) Failure of any investment to perform as represented by any "insured".

H. Any "claim" or "suit" arising out of an "insured's" liability as a fiduciary under:

a. The Employee Retirement Income Security Act of 1974 (PL93-406) and its amendments; or

b. The Internal Revenue Code of 1986 (including the Internal Revenue Code of 1954) and its amendments.

3. **Supplementary Payments**

We will pay, in addition to the applicable Limits of Insurance, with respect to any "claim" we investigate or settle or "suit" we defend:

A. All expenses incurred by us, all costs taxed against the "insured" in any "suit" defended by us and all interest on the full amount of any judgment which accrues after entry of the judgment and before we have paid or tendered or deposited in court, that part of the judgment which does not exceed the limit of our insurance.

B. Premiums on appeal bonds required and on bonds to release attachments in any "suit". We do not have to furnish these bonds.

C. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

D. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

II. **Limits of Insurance**

A. The Limits of Insurance shown in the Declarations and the rules below establish the most we will pay regardless of the number of:

(1) "Insureds";

(2) "Claims" made or "suits" brought; or

(3) "Employees" or dependents or beneficiaries of "employees" making "claims" or bringing "suits".

B. The Aggregate Limit is the most we will pay for all damages because of all "claims" or "suits" arising from the "administration" of your "employee benefit programs" during the policy period.

C. Subject to the Aggregate Limit provisions in **B.** above, the Each Claim Limit is the most we will pay for all damages sustained by any one "employee", including the "employee's" dependents and beneficiaries, because of acts, errors, or omissions committed in the "administration" of your "employee benefit programs".

D. The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

III. **Conditions**

A. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of our obligations.

B. **Duties in the Event of an Act, Error, Omission, Claim or Suit**

(1) Regardless of whether the loss exceeds any applicable deductible amount, you must see to it that we are notified as soon as practicable of any act, error, or omission which may result in a "claim". To the extent possible, notice should include:

a. How, when, and where the act, error, or omission took place;

b. The names and addresses of any injured "employee", dependents, or beneficiaries of any "employee" and witnesses.

Notice of an act, error, or omission is not notice of a "claim".

(2) If a "claim" is received by any "insured", you must:

a. Immediately record the specifics of the "claim" and the date received; and

b. Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

(3) You and any other involved "insured" must:

a. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit";

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury to which this insurance may also apply.

**(4)** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## C. Legal Action Against Us

No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured", and the claimant or the claimant's legal representative.

## D. Other Insurance

If other valid and collectible insurance is available to the "insured" for a loss we cover under this Coverage Part, our obligations are limited as follows:

### (1) Primary Insurance

This insurance is primary except when **2.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **3.** below.

### (2) Excess Insurance

This insurance is excess over any other insurance whether primary, excess, contingent, or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to an act, error, or omission on other than a claims-made basis, if:

a. No Retroactive Date is shown in the Declarations of this insurance; or

b. The other insurance has a policy period which continues after the Retroactive Date, if any, shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

i. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

ii. The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### (3) Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## E. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each "insured" against whom "claim" is made or "suit" is brought.

## F. Transfer Of Rights Of Recovery Against Others To Us

If the "insured" has rights to recover all or part of any payment we made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

## IV. Definitions

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**(1)** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**(2)** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Administration" means:

**(1)** Counseling "employees", including their dependents and beneficiaries, with respect to "employee benefit programs";

**(2)** Handling records in connection with "employee benefit programs"; or

**(3)** Effecting or terminating an "employee's" participation in a plan included in "employee benefit programs".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**D.** "Claim" means:

The receipt by you of a demand for money or services which alleges an act, error, or omission in the "administration" of your "employee benefit programs."

**E.** "Coverage territory" means:

**(1)** The United States of America (including its territories and possessions), Puerto Rico, and Canada; or

**(2)** All parts of the world if the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **E. 1.** above, or in a settlement to which we agree.

**F.** "Employee" means:

Your officers and employees, whether actively employed, disabled, or retired.

**G.** "Employee benefit programs" mean:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers compensation, unemployment insurance, salary continuation plans, social security, disability benefits insurance, savings plans, vacation plans, or any other similar plans or programs.

**H.** "Insured" means:

You and any of your partners, executive officers, directors, members, stockholders or "employees", provided such "employee" is authorized to act in the "administration" of your "employee benefit programs".

**I.** "Personal and advertising injury" means:

Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**(1)** False arrest, detention, or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from wrongful entry into, or invasion of the right of private occupancy of, a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

**(4)** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

**(5)** Oral or written publication,' in any manner, of material that violates a person's right of privacy;

**(6)** The use of another's advertising idea in your "advertisement"; or

**(7)** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J.** "Property damage" means:

**(1)** Physical injury to tangible property, including all resulting loss of use of that property.

**(2)** Loss of use of tangible property that is not physically injured.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications, software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**K.** "Suit" means:

A civil proceeding in which damages to which this insurance applies is alleged. "Suit" includes:

**(1)** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**(2)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

U-GL-849-B CW (8/04)
Page 4 of 4

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

**Zurich American Insurance Company**

Policy Number:    **CPO 0117720 - 06**

Named Insured    Worldwide Door Components Inc

Policy Period:   Coverage begins 09/29/2021 at 12:01 A.M.; Coverage ends 09/29/2022 at 12:01 A.M.

Producer Name:  BROWN & BROWN OF FLORIDA, INC. PINELLAS       Producer No.   84364000
                DIVISION

| | |
|---|---|
| **Item 1.**   Business Description: | |
| **Item 2.**   Limits of Insurance | |
| GENERAL AGGREGATE LIMIT | $2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $1,000,000 Any one premises |
| MEDICAL EXPENSE LIMIT | $10,000 Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $1,000,000 Any one person or organization |

**Item 3.**   Retroactive Date **(CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here:

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.**   Form of Business and Location Premises

Form of Business:  Corporation

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.**   Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.**   Premiums

| | |
|---|---|
| Coverage Part Premium: | $50,090.00 |
| Other Premium: | |
| Total Premium: | $50,090.00 |

U-GL-D-1115-B CW  (9/04)

Policy Number    CPO 0117720 - 06

## COMMERCIAL GENERAL LIABILITY COVERAGE SCHEDULE

### Zurich American Insurance Company of Illinois

Named Insured    Worldwide Door Components Inc

Effective Date:   09/29/2021
12:01 A.M., Standard Time

Agent Name   BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION

Agent No.   84364000

**Item 5.**  Location of Premises

Location of All Premises You Own, Rent or Occupy:  **See Schedule of Locations**

| Code No. 61212 | Premium Basis Area | Premises/Operations | |
|---|---|---|---|
| Location 001/001 | Exposure 10,000 | Rate 152.213 | Premium $1,522.00 |
| Classification: Buildings or Premises-bank,office-merc,Mfg(lessor's risk only)-Other than Not-FP | | Products/Completed Operations | |
| | | Rate | Premium |
| Code No. 13715 | Premium Basis Gross Sales | Premises/Operations | |
| Location 002/001 | Exposure 3,492,000 | Rate .2808 | Premium $981.00 |
| Classification: Hardware and Tool Distributors | | Products/Completed Operations | |
| | | Rate .8108 | Premium $2,831.00 |
| Code No. 13715 | Premium Basis Gross Sales | Premises/Operations | |
| Location 003/001 | Exposure 11,349,000 | Rate .512 | Premium $5,811.00 |
| Classification: Hardware and Tool Distributors | | Products/Completed Operations | |
| | | Rate 1.035 | Premium $11,746.00 |
| Code No. 13715 | Premium Basis Gross Sales | Premises/Operations | |
| Location 005/001 | Exposure 10,152,000 | Rate .825 | Premium $8,375.00 |
| Classification: Hardware and Tool Distributors | | Products/Completed Operations | |
| | | Rate 1.193 | Premium $12,111.00 |

U-GL-1113-A CW (10/02)
Page 1 of 2

Policy Number    CPO 0117720 - 06

## COMMERCIAL GENERAL LIABILITY COVERAGE SCHEDULE

Zurich American Insurance Company of Illinois

Named Insured    Worldwide Door Components Inc

Effective Date:   09/29/2021
12:01 A.M., Standard Time

Agent Name    BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION

Agent No.   84364000

**Item 5.**   Location of Premises

Location of All Premises You Own, Rent or Occupy:  **See Schedule of Locations**

| Code No. | Premium Basis | Premises/Operations | |
|---|---|---|---|
| Location | Exposure | Rate | Premium $2,820.00 |
| Classification: | | Products/Completed Operations | |
| Additional Insured - Automatic - Owners, Lessees Or Contractors | | Rate | Premium |
| Code No. 92100 | Premium Basis No. of Employees | Premises/Operations | |
| Location | Exposure 25 | Rate | Premium $150.00 |
| Classification: Employee Benefits Liability | | Products/Completed Operations | |
| | | Rate | Premium |
| Code No. 1345B | Premium Basis | Premises/Operations | |
| Location | Exposure | Rate | Premium $3,036.00 |
| Classification: GL Supplemental Coverage Endorsement | | Products/Completed Operations | |
| | | Rate | Premium |
| Code No. | Premium Basis | Premises/Operations | |
| Location | Exposure | Rate | Premium $707.00 |
| Classification: Terrorism - CAT | | Products/Completed Operations | |
| | | Rate | Premium |

U-GL-1113-A CW (10/02)
Page 2 of 2

**EMPLOYEE BENEFIT LIABILITY COVERAGE PART - CLAIMS MADE DECLARATIONS**

Named Insured:   Worldwide Door Components Inc                          Policy Number:  CPO 0117720 - 06

Policy Period: Coverage begins 09/29/2021 at 12:01 A.M.; Coverage ends 09/29/2022 at 12:01 A.M.

Producer Name:   BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION                          Producer No.   84364000

**Item 1.**   Limits of Insurance

$2,000,000          Aggregate Limit

$1,000,000          Each Claim Limit

**Item 2.**   Form of Business:

☐ Individual          ☐ Partnership          ☐ Joint Venture          ☒ Corporation

☐ Other _____

**Item 3.**   Premium Schedule:

| Code No. | Premium Basis (Estimated Number of Employees) | Rate | | Advance Premium |
|---|---|---|---|---|
| 92100 | 25 | $ INCL | Per Employee | $ INCL |
| | | $ INCL | Flat Charge | $ INCL |

Total Advance Premium For This Coverage Part: $ ___INCL___

Audit Period:     ☐ Annual     ☐ Semi-annual     ☐ Quarterly     ☐ Monthly

**Forms And Endorsements Applicable To This Coverage Part:**

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

**Retroactive Date:**

08/28/2015          (Enter date or "None" if no Retroactive Date applies)

This insurance does not apply to damages caused by an act, error, or omission which occurred before the Retroactive Date, if any, shown above.

U-GL-D-849-B CW (9/04)
Page 1 of 1

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any

**CG 00 01 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 3 of 16**

insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "**suit**" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.    Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.    Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.    Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software,

including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

Page 6 of 16                    © Insurance Services Office, Inc., 2012                    CG 00 01 04 13

**g. Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's

name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS — COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding,

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

# Fungi Or Bacteria Exclusion Endorsement



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I. – Coverage A – Bodily Injury And Property Damage Liability** and paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

A. "Bodily injury", "property damage" or "personal and advertising injury " caused directly or indirectly by the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any:

   1. "Fungi"or "bacteria"; or

   2. Substance, vapor or gas produced by or arising out of any "fungi" or "bacteria".

B. Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

C. For the purposes of this exclusion, the following definitions are added:

   1. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, "spores", scents or byproducts produced or released by fungi.

   2. "Spores" means reproductive bodies produced by or arising out of "fungi".

   3. "Bacteria" means any type or form of bacteria and any materials or substances that are produced or released by bacteria.

This exclusion does not apply to any "fungi"or "bacteria" that are, are on, or are contained in, an edible good or edible product intended for human or animal consumption.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1171-A CW (07/03)
Page 1 of 1

Case 2:26-cv-02135-KCD-NPM    Document 5    Filed 07/06/26    Page 206 of 301 PageID 906

# Additional Insured – Automatic – Owners, Lessees Or Contractors



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Named Insured:**  Worldwide Door Components Inc

**Address (including ZIP Code):**  19175 N. Dale Mabry Hwy
Lutz, FL 33548

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

A.  Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   1.  Your acts or omissions; or

   2.  The acts or omissions of those acting on your behalf,

   in the performance of your ongoing operations or "your work" as included in the "products-completed operations hazard", which is the subject of the written contract or written agreement.

   However, the insurance afforded to such additional insured:

   1.  Only applies to the extent permitted by law; and

   2.  Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

B.  With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

   This insurance does not apply to:

   "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services including:

   a.  The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b.  Supervisory, inspection, architectural or engineering activities.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1175-F CW (04/13)
Page 1 of 2

**C.** The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of Section **IV – Commercial General Liability Conditions**:

The additional insured must see to it that:

1. We are notified as soon as practicable of an "occurrence" or offense that may result in a claim;

2. We receive written notice of a claim or "suit" as soon as practicable; and

3. A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured may be an insured in any capacity.  This provision does not apply to insurance on which the additional insured is a Named Insured if the written contract or written agreement requires that this coverage be primary and non-contributory.

**D.** For the purposes of the coverage provided by this endorsement:

1. The following is added to the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   **Primary and Noncontributory insurance**

   This insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

   **a.** The additional insured is a Named Insured under such other insurance; and

   **b.** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

2. The following paragraph is added to Paragraph **4.b.** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions**:

   This insurance is excess over:

   Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", offense, claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by a written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

**E.** This endorsement does not apply to an additional insured which has been added to this policy by an endorsement showing the additional insured in a Schedule of additional insureds, and which endorsement applies specifically to that identified additional insured.

**F.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the written contract or written agreement referenced in Paragraph **A.** of this endorsement; or

2. Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1175-F CW (04/13)
Page 2 of 2

# Welding Health Hazard Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Owners and Contractors Protective Liability Coverage Form—Coverage For Operations of Designated Contractor**
**Products-Completed Operations Liability Coverage Part**
**Railroad Protective Liability Coverage Form**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

## 2.  Exclusions

This insurance does not apply to:

**Welding Health Hazard**

"Bodily injury" caused directly or indirectly by  the actual, alleged or threatened inhalation, ingestion, absorption, or exposure to harmful fumes or gases caused by "welding materials and equipment" used in connection with the process of welding or fusing together of any metals or other materials.

For the purposes of this exclusion, the following definition applies:

"Welding materials and equipment" means:

(1)  Welding machinery or other welding process equipment;

(2)  Welding rods;

(3)  Electrodes; or

(4)  Any consumable products including, but not limited to, wires, fluxes, coatings or cleaning agents.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.    U-GL-1205-B CW (01/08)
Page 1 of 1



# General Liability Supplemental Coverage Endorsement

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No.    CPO 0117720 - 06 | Effective Date:  09/29/2021 |

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following changes apply to this Coverage Part.  However, endorsements attached to this Coverage Part will supersede any provisions to the contrary in this General Liability Supplemental Coverage Endorsement.

## A. Broadened Named Insured

1. The following is added to Section **II – Who Is An Insured**:

   Any organization of yours, other than a partnership or joint venture, which is not shown in the Declarations, and over which you maintain an ownership interest of more than 50% of such organization as of the effective date of this Coverage Part, will qualify as a Named Insured.  However, such organization will not qualify as a Named Insured under this provision if it:

   a. Is newly acquired or formed during the policy period;

   b. Is also an insured under another policy, other than a policy written to apply specifically in excess of this Coverage Part; or

   c. Would be an insured under another policy but for its termination or the exhaustion of its limits of insurance.

   Each such organization remains qualified as a Named Insured only while you maintain an ownership interest of more than 50% in the organization during the policy period.

2. The last paragraph of Section **II – Who Is An Insured** does not apply to this provision to the extent that such paragraph would conflict with this provision.

## B. Newly Acquired or Formed Organizations as Named Insureds

1. Paragraph 3. of Section **II – Who Is An Insured** is replaced by the following:

   3. Any organization you newly acquire or form during the policy period, other than a partnership or joint venture, and over which you maintain an ownership interest of more than 50% of such organization, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

      a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

      b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

      c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

U-GL-1345-C CW (03/20)
Page 1 of 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

An additional premium will apply in accordance with our rules and rates in effect on the date you acquired or formed the organization.

**2.** The last paragraph of Section **II – Who Is An Insured** does not apply to this provision to the extent that such paragraph would conflict with this provision.

## C. Insured Status – Employees

Paragraph **2.a.(1)** of Section **II – Who Is An Insured** is replaced by the following:

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

However:

Paragraphs **(1)(a)** and **(1)(d)** do not apply to your "employees" or "volunteer workers", who are not employed by you or volunteering for you as health care professionals, for "bodily injury" arising out of "Good Samaritan Acts" while the "employee" or "volunteer worker" is performing duties related to the conduct of your business.

"Good Samaritan Acts" mean any assistance of a medical nature rendered or provided in an emergency situation for which no remuneration is demanded or received.

Paragraphs **(1)(a), (b)** and **(c)** do not apply to any "employee" designated as a supervisor or higher in rank, with respect to "bodily injury" to co-"employees". As used in this provision, "employees" designated as a supervisor or higher in rank means only "employees" who are authorized by you to exercise direct or indirect supervision or control over "employees" or "volunteer workers" and the manner in which work is performed.

## D. Additional Insureds – Lessees of Premises

**1.** Section **II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) who leases or rents a part of the premises you own or manage who you are required to add as an additional insured on this policy under a written contract or written agreement, but only with respect to liability arising out of your ownership, maintenance or repair of that part of the premises which is not reserved for the exclusive use or occupancy of such person or organization or any other tenant or lessee.

This provision does not apply after the person or organization ceases to lease or rent premises from you.

However, the insurance afforded to such additional insured:

**a.** Only applies to the extent permitted by law; and

**b.** Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

**2.** With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

U-GL-1345-C CW (03/20)
Page 2 of 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the written contract or written agreement referenced in Subparagraph **D.1.** above (of this endorsement); or

**b.** Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This Paragraph **D.** shall not increase the applicable Limits of Insurance shown in the Declarations.

## E. Additional Insured – Vendors

**1.** The following change applies if this Coverage Part provides insurance to you for "bodily injury" and "property damage" included in the "products-completed operations hazard":

Section **II – Who Is An Insured** is amended to include as an additional insured any person or organization (referred to throughout this Paragraph **E.** as vendor) who you have agreed in a written contract or written agreement, prior to loss, to name as an additional insured, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business:

However, the insurance afforded to such vendor:

**a.** Only applies to the extent permitted by law; and

**b.** Will not be broader than that which you are required by the written contract or written agreement to provide for such vendor.

**2.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**a.** The insurance afforded the vendor does not apply to:

**(1)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(2)** Any express warranty unauthorized by you;

**(3)** Any physical or chemical change in the product made intentionally by the vendor;

**(4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(7)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(8)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

**(a)** The exceptions contained in Subparagraphs **(4)** or **(6)**; or

**(b)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**b.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c.  This insurance does not apply to any of "your products" for which coverage is excluded under this Coverage Part.

3.  With respect to the insurance afforded to the vendor under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the vendor is the amount of insurance:

a.  Required by the written contract or written agreement referenced in Subparagraph **E.1.** above (of this endorsement); or

b.  Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This Paragraph **E.** shall not increase the applicable Limits of Insurance shown in the Declarations.

F.  **Additional Insured – Managers, Lessors or Governmental Entity**

1.  Section **II – Who Is An Insured** is amended to include as an insured any person or organization who is a manager, lessor or governmental entity who you are required to add as an additional insured on this policy under a written contract, written agreement or permit, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

a.  Your acts or omissions; or

b.  The acts or omission of those acting on your behalf; and

resulting directly from:

a.  Operations performed by you or on your behalf for which the state or political subdivision has issued a permit;

b.  Ownership, maintenance, occupancy or use of premises by you; or

c.  Maintenance, operation or use by you of equipment leased to you by such person or organization.

However, the insurance afforded to such additional insured:

a.  Only applies to the extent permitted by law; and

b.  Will not be broader than that which you are required by the written contract or written agreement to provide for such additional insured.

2.  This provision does not apply:

a.  Unless the written contract or written agreement has been executed, or the permit has been issued, prior to the "bodily injury", "property damage" or offense that caused "personal and advertising injury";

b.  To any person or organization included as an insured under Paragraph **3.** of Section **II – Who Is An Insured**;

c.  To any lessor of equipment if the "occurrence" or offense takes place after the equipment lease expires;

d.  To any:

(1) Owners or other interests from whom land has been leased by you; or

(2) Managers or lessors of premises, if:

(a) The "occurrence" or offense takes place after the expiration of the lease or you cease to be a tenant in that premises;

(b) The "bodily injury", "property damage" or "personal and advertising injury" arises out of the structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessor; or

(c) The premises are excluded under this Coverage Part.

3.  With respect to the insurance afforded to the additional insureds under this endorsement, the following is added to Section **III – Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **a.**  Required by the written contract or written agreement referenced in Subparagraph **F.1.** above (of this endorsement); or

    **b.**  Available under the applicable Limits of Insurance shown in the Declarations,

whichever is less.

This Paragraph **F.** shall not increase the applicable Limits of Insurance shown in the Declarations.

**G. Damage to Premises Rented or Occupied by You**

    **1.**  The last paragraph under Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

    Exclusions **c.** through **n.** do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Section **III – Limits Of Insurance**.

    **2.**  Paragraph **6.** of Section **III – Limits Of Insurance** is replaced by the following:

        **6.**  Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or in the case of damage by one or more "specific perils" to any one premises, while rented to you or temporarily occupied by you with permission of the owner.

**H. Broadened Contractual Liability**

The "insured contract" definition under the **Definitions** Section is replaced by the following:

"Insured contract" means:

    **a.**  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**  A sidetrack agreement;

    **c.**  Any easement or license agreement;

    **d.**  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.**  An elevator maintenance agreement;

    **f.**  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage", or "personal and advertising injury" arising out of the offenses of false arrest, detention or imprisonment, to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

    **(1)**  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)**  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)**  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(2)**  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

**I. Definition – Specific Perils**

The following definition is added to the **Definitions** Section:

"Specific perils" means:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Fire;

b. Lightning;

c. Explosion;

d. Windstorm or hail;

e. Smoke;

f. Aircraft or vehicles;

g. Vandalism;

h. Weight of snow, ice or sleet;

i. Leakage from fire extinguishing equipment, including sprinklers; or

j. Accidental discharge or leakage of water or steam from any part of a system or appliance containing water or steam.

J. **Limited Contractual Liability Coverage – Personal and Advertising Injury**

1. Exclusion **e.** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

    2. **Exclusions**

        This insurance does not apply to:

        e. **Contractual Liability**

            "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

            This exclusion does not apply to:

            (1) Liability for damages that the insured would have in the absence of the contract or agreement; or

            (2) Liability for "personal and advertising injury" if:

                (a) The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment;

                (b) The liability pertains to your business and is assumed in a written contract or written agreement in which you assume the tort liability of another.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; and

                (c) The "personal and advertising injury" occurs subsequent to the execution of the written contract or written agreement.

            Solely for purposes of liability so assumed in such written contract or written agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal and advertising injury" described in Paragraph **(a)** above, provided:

            (i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same written contract or written agreement; and

            (ii) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2. Paragraph **2.d.** of Section **I – Supplementary Payments – Coverages A and B** is replaced by the following:

    d. The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

3. The following is added to the paragraph directly following Paragraph **2.f.** of Section **I – Supplementary Payments – Coverages A and B**:

    Notwithstanding the provisions of Paragraph **2.e.(2)** of Section **I – Coverage B – Personal And Advertising Injury Liability**, such payments will not be deemed to be damages for "personal and advertising injury" and will not reduce the limits of insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**K. Supplementary Payments**

The following changes apply to **Supplementary Payments – Coverages A and B**:

Paragraphs **1.b.** and **1.d.** are replaced by the following:

**b.** Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**L. Broadened Property Damage**

**1. Property Damage to Contents of Premises Rented Short-Term**

The paragraph directly following Paragraph **(6)** in Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" to premises (other than damage by "specific perils"), including "property damage" to the contents of such premises, rented to you under a rental agreement for a period of 14 or fewer consecutive days.  A separate Limit of Insurance applies to Damage to Premises Rented to You as described in Section **III – Limits Of Insurance**.

**2. Elevator Property Damage**

**a.** The following is added to Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability**:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" arising out of the use of an elevator at premises you own, rent or occupy.

**b.** The following is added to Section **III – Limits Of Insurance**:

Subject to Paragraph **5.** above, the most we will pay under Coverage **A** for damages because of "property damage" to property loaned to you or personal property in the care, custody or control of the insured arising out of the use of an elevator at premises you own, rent or occupy is $25,000 per "occurrence".

**3. Property Damage to Borrowed Equipment**

**a.** The following is added to Exclusion **j.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability**:

Paragraph **(4)** of this exclusion does not apply to "property damage" to equipment you borrow from others at a jobsite.

**b.** The following is added to Section **III – Limits Of Insurance**:

Subject to Paragraph **5.** above, the most we will pay under Coverage **A** for damages because of "property damage" to equipment you borrow from others is $25,000 per "occurrence".

**M. Expected or Intended Injury or Damage**

Exclusion **a.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**a. Expected Or Intended Injury Or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**N. Definitions – Bodily Injury**

The "bodily injury" definition under the **Definitions** Section is replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death sustained by that person which results from that bodily injury, sickness or disease.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**O. Insured Status – Amateur Athletic Participants**

Section **II – Who Is An Insured** is amended to include as an insured any person you sponsor while participating in amateur athletic activities.  However, no such person is an insured for:

**a.** "Bodily injury" to:

**(1)** Your "employee", "volunteer worker" or any person you sponsor while participating in such amateur athletic activities; or

**(2)** You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company) while participating in such amateur athletic activities; or

**b.** "Property damage" to property owned by, occupied or used by, rented to, in the care, custody or control of, or over which the physical control is being exercised for any purpose by:

**(1)** Your "employee", "volunteer worker" or any person you sponsor; or

**(2)** You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**P. Non-Owned Aircraft, Auto and Watercraft**

Exclusion **g.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**(5)** An aircraft that is hired or chartered by you or loaned to you, with a paid and licensed crew, and is not owned in whole or in part by an insured; or

**(6)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**Q. Definitions – Leased Worker, Temporary Worker and Labor Leasing Firm**

**1.** The "leased worker" and "temporary worker" definitions under the **Definitions** Section are replaced by the following:

"Leased worker" means a person leased to you by a "labor leasing firm" under a written agreement between you and the "labor leasing firm", to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"Temporary worker" means a person who is furnished to you to support or supplement your work force during "employee" absences, temporary skill shortages, upturns or downturns in business or to meet seasonal or short-term workload conditions. "Temporary worker" does not include a "leased worker".

2. The following definition is added to the **Definitions** Section:

"Labor leasing firm" means any person or organization who hires out workers to others, including any:

    **a.** Employment agency, contractor or services;

    **b.** Professional employer organization; or

    **c.** Temporary help service.

## R. Definition – Mobile Equipment

Paragraph **f.** of the "mobile equipment" definition under the **Definitions** Section is replaced by the following:

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment, exceeding a combined gross vehicle weight of 1000 pounds, are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

## S. Definitions – Your Product and Your Work

The "your product" and "your work" definitions under the **Definitions** Section are replaced by the following:

"Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, use, handling, maintenance, operation or safety of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

"Your work":

**a.** Means:

    **(1)** Work, services or operations performed by you or on your behalf; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **(2)** Materials, parts or equipment furnished in connection with such work, services or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, use, handling, maintenance, operation or safety of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**T. Duties in the Event of Occurrence, Offense, Claim or Suit Condition**

The following paragraphs are added to Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** of Section **IV – Commercial General Liability Conditions**:

Notice of an "occurrence" or of an offense which may result in a claim under this insurance or notice of a claim or "suit" shall be given to us as soon as practicable after knowledge of the "occurrence", offense, claim or "suit" has been reported to any insured listed under Paragraph **1.** of Section **II – Who Is An Insured** or an "employee" authorized by you to give or receive such notice. Knowledge by other "employees" of an "occurrence", offense, claim or "suit" does not imply that you also have such knowledge.

In the event that an insured reports an "occurrence" to the workers compensation carrier of the Named Insured and this "occurrence" later develops into a General Liability claim, covered by this Coverage Part, the insured's failure to report such "occurrence" to us at the time of the "occurrence" shall not be deemed to be a violation of this Condition. You must, however, give us notice as soon as practicable after being made aware that the particular claim is a General Liability rather than a Workers Compensation claim.

**U. Other Insurance Condition**

Paragraphs **4.a.** and **4.b.(1)** of the Other Insurance Condition of Section **IV – Commercial General Liability Conditions** are replaced by the following:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

  **a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below. However, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured provided that:

    **(1)** The additional insured is a Named Insured under such other insurance; and

    **(2)** You are required by written contract or written agreement that this insurance be primary and not seek contribution from any other insurance available to the additional insured.

Other insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.

  **b. Excess Insurance**

    **(1)** This insurance is excess over:

      **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(i)** That is property insurance, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(ii)** That is property insurance purchased by you (including any deductible or self insurance portion thereof) to cover premises rented to you or temporarily occupied by you with permission of the owner;

        **(iii)** That is insurance purchased by you (including any deductible or self insurance portion thereof) to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability**; or

(v) That is property insurance (including any deductible or self insurance portion thereof) purchased by you to cover damage to:

Equipment you borrow from others; or

Property loaned to you or personal property in the care, custody or control of the insured arising out of the use of an elevator at premises you own, rent or occupy.

**(b)** Any other primary insurance (including any deductible or self insurance portion thereof) available to the insured covering liability for damages arising out of the premises, operations, products, work or services for which the insured has been granted additional insured status either by policy provision or attachment of any endorsement.  Other primary insurance includes any type of self insurance or other mechanism by which an insured arranges for funding of its legal liabilities.

**(c)** Any of the other insurance, whether primary, excess, contingent or on any other basis, available to an additional insured, in which the additional insured on our policy is also covered as an additional insured on another policy providing coverage for the same "occurrence", claim or "suit".  This provision does not apply to any policy in which the additional insured is a Named Insured on such other policy and where our policy is required by written contract or written agreement to provide coverage to the additional insured on a primary and non-contributory basis.

## V.  Unintentional Failure to Disclose All Hazards

Paragraph **6. Representations** of Section **IV – Commercial General Liability Conditions** is replaced by the following:

### 6.  Representations

By accepting this policy, you agree:

**a.**  The statements in the Declarations are accurate and complete;

**b.**  Those statements are based upon representations you made to us; and

**c.**  We have issued this policy in reliance upon your representations.

Coverage will continue to apply if you unintentionally:

**a.**  Fail to disclose all hazards existing at the inception of this policy; or

**b.**  Make an error, omission or improper description of premises or other statement of information stated in this policy.

You must notify us as soon as possible after the discovery of any hazards or any other information that was not provided to us prior to inception of this Coverage Part.

## W.  Waiver of Right of Subrogation

Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of Section **IV – Commercial General Liability Conditions** is replaced by the following:

### 8.  Transfer Of Rights Of Recovery Against Others To Us

**a.**  If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.**  If the insured waives its right to recover payments for injury or damage from another person or organization in a written contract executed prior to a loss, we waive any right of recovery we may have against such person or organization because of any payment we have made under this Coverage Part.  The written contract will be considered executed when the insured's performance begins, or when it is signed, whichever happens first.  This waiver of rights shall not be construed to be a waiver with respect to any other operations in which the insured has no contractual interest.

## X.  Liberalization Condition

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The following condition is added to Section **IV – Commercial General Liability Conditions**:

**Liberalization Clause**

If we revise this Coverage Part to broaden coverage without an additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in the state shown in the mailing address of your policy.

All other terms, conditions, provisions and exclusions of this policy remain the same.

U-GL-1345-C CW (03/20)
Page 12 of 12

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Silica or Silica Mixed Dust Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l. Prem | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**
**Products-Completed Operations Liability Coverage Part**

The following additional exclusion is added to **2. Exclusions** of **Section I. Coverages**:

**2.    Exclusions**

This insurance does not apply to:

**Silica or Silica Mixed Dust**

A.  "Bodily injury", "property damage" or "personal and advertising injury" caused directly or indirectly, in whole or in part, by the actual, alleged or threatened inhalation, ingestion, absorption, exposure to, existence of or presence of "silica"; or

B.  Loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any manner responding to or assessing the effects of "silica" by any insured or by any other person or entity.

C.  For the purposes of this exclusion, the following definition applies:

"Silica" means:

(1)  Any form of crystalline or non-crystalline (amorphous) silica, silica particles, silica compounds, silica dust or silica mixed or combined with dust or other particles; or

(2)  Synthetic silica, including precipitated silica, silica gel, pyrogenic or fumed silica or silica-flour.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# Asbestos Exclusion Endorsement



**ZURICH**®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer No. | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| CPO 0117720 - 06 | 09/29/2021 | 09/29/2022 | | 84364000 | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

**Commercial General Liability Coverage Part**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability:**

**2.    Exclusions**

This insurance does not apply to:

**Asbestos**

**A.**    "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.**    Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.    Request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.    Claim or "suit" for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.**    Any other loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-GL-1178-A CW (07/03)
Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 01 03 06 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

  © Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

    If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even **if** damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even **if** damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14                    © Insurance Services Office, Inc., 2013                    **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

 © Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 53 01 96

# EXCLUSION—DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br><br>09/29/2021    12:01 A.M. standard time | Policy No.<br><br>CPO 0117720 - 06 |
|---|---|
| Named Insured<br> Worldwide Door Components Inc | Countersigned by |

(Authorized Representative)

## SCHEDULE

**Description of Designated Ongoing Operation(s):**    Installation Services

**Specified Location (If Applicable):**    All Locations

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

CL 799 (1-96)<br>CG 21 53 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

   Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 26 39 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

Copyright, ISO Properties, Inc., 2006



**THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# NOTICE REGARDING TERRORISM PREMIUM (FOR COMMERCIAL AUTOMOBILE INSURANCE)

**SCHEDULE\***

Premium attributable to risk of loss resulting from terrorism for the Commercial Automobile line of insurance:

Automobile          $19

\*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Terrorism Risk Insurance Act ("TRIA")**

The Commercial Automobile line is not part of TRIA. On December 22, 2005, the President of the United States signed the first TRIA extension act into law and, at that time, the Commercial Auto line was removed from the program. The federal government does not share in Commercial Automobile terrorism losses.

**B. Disclosure of Terrorism Premium**

We have elected to provide notice to you of the amount of the total policy premium attributable to the risk of loss from terrorism for the Commercial Automobile line of insurance.

Copyright © 2008 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission

**POLICY  NUMBER:  CPO 0117720 - 06**                                    **COMMERCIAL AUTO**

### Zurich American Insurance Company of Illinois
1299 Zurich Way
Schaumburg, IL 60196-1056

# BUSINESS  AUTO DECLARATIONS

## ITEM ONE

| PRODUCER: | BROWN & BROWN OF FLORIDA, INC. PINELLAS DIVISION |
|---|---|

**NAMED INSURED:**    Worldwide Door Components Inc

**MAILING ADDRESS:**    19175 N. Dale Mabry Hwy
Lutz, FL 33548

**POLICY PERIOD:**    From  __09/29/2021__  to  __09/29/2022__    at 12:01 A.M. Standard Time at your
mailing address shown above

**PREVIOUS POLICY NUMBER:**    0117720 - 05

**FORM OF BUSINESS:**

[X] CORPORATION        [ ] LIMITED LIABILITY COMPANY        [ ] INDIVIDUAL

[ ] PARTNERSHIP        [ ] OTHER _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception:    $1,923.00 | | | | | | | |
|---|---|---|---|---|---|---|---|
| AUDIT PERIOD (IF APPLICABLE) | | ANNUALLY | | SEMI-ANNUALLY | | QUARTERLY | MONTHLY |

**ENDORSEMENTS ATTACHED TO THIS POLICY:**
    **IL 00 17** – Common Policy Conditions (**IL 01 46** in Washington)
    **IL 00 21 –** Broad Form Nuclear Exclusion (not Applicable in New York) (**IL 01 98** in Washington)

### SEE SCHEDULE OF FORMS AND ENDORSEMENTS

COUNTERSIGNED _____    BY _____
                                (Date)                                        (Authorized Representative)

**U-CA-D 600 C (04 14)**                                                        **Page 1**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.**

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| COVERED AUTOS LIABILITY | 8, 9 | $1,000,000 | $1,904 |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS DEDUCTIBLE. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS DEDUCTIBLE FOR EACH ACCIDENT. | |
| AUTO MEDICAL PAYMENTS | | EACH INSURED | |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | | | |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE TOWING AND LABOR | | FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| | | **TAX/SURCHARGE/FEE** | |
| | | **PREMIUM FOR ENDORSEMENTS** | $19.00 |
| | | **\*ESTIMATED TOTAL PREMIUM** | $1,923.00 |

\*This policy may be subject to final audit.

**U-CA-D 600 C (04 14)**                                                                 **Page 2**

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS YOU OWN**

| Covered Auto No. | DESCRIPTION | | TERRITORY | Original Cost New |
|---|---|---|---|---|
| | Year, Model, Trade Name, Body Type Serial Number (S) Vehicle Identification Number (VIN) | | Town & State Where The Covered Auto Will Be Principally Garaged | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Covered Auto No. | CLASSIFICATION | | | | | | EXCEPT For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below According To Their Interests In The Auto At The Time Of The Loss: |
|---|---|---|---|---|---|---|---|
| | Radius Of Operation | Business Use s = service r = retail c = commercial | Size, GVW, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES**
(Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.)

| Covered Auto No. | COVERED AUTOS LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED P.I.P. | PROPERTY PROTECTION (Michigan Only) | |
|---|---|---|---|---|---|---|---|
| | Limit | Premium | Limit Stated In Each P.I.P. Endt. Minus Deductible Shown Below | Premium | Premium For Limit Stated In Each Added P.I.P. Endt. | Limit Stated In P.P.I. Endt. Minus Deductible Shown Below | Premium |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total Premium | | | | | | | |

**U-CA-D 600 C (04 14)**                                                                 **Page 3**

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS YOU OWN (Continued)**

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | |
|---|---|---|---|---|---|---|---|
| | AUTO MEDICAL PAYMENTS | | MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia Only) | | UNINSURED MOTORISTS | | UNDERINSURED MOTORISTS |
| | Limit Each Insured | Premium | Limit Stated In The Medical Expense and Income Loss Benefits Endorsement For Each Person | Premium | Limit | Premium | Premium |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total Premium | | | | | | | |

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | |
|---|---|---|---|---|---|---|---|
| | COMPREHENSIVE | | SPECIFIED CAUSES OF LOSS | | COLLISION | | TOWING & LABOR |
| | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Per Disablement | Premium |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total Premium | | | | | | | |

**U-CA-D 600 C (04 14)**                                                                 **Page 4**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,

2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (*i.e.*, repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | FL | $10,000 | $748 |
| | | TOTAL HIRED AUTO PREMIUM | $748 |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Continued)**

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | FL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE  FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | IF ANY | |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH  COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | FL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO. | IF ANY | |
| | | | TOTAL HIRED AUTO PREMIUM | |
| For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver. | | | | |

**U-CA-D 600 C (04 14)**                                                                                              **Page 6**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Continued)**

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment – Other Than Physical Damage Coverages | | | | | |
|---|---|---|---|---|---|
| **COVERAGE** | **STATE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE** | | **PREMIUM** | |
| | | **Mobile Equipment** | **Farm Equipment** | **Mobile Equipment** | **Farm Equipment** |
| Covered Autos Liability – Primary Coverage | | | | | |
| Covered Autos Liability – Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| **TOTAL HIRED AUTO PREMIUMS** | | | | | |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**U-CA-D 600 C (04 14)**                                                                 **Page 7**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Continued)**

| Cost Of Hire Rating Basis For Mobile or Farm Equipment – Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | | PREMIUM | |
| COVERAGE | STATE | LIMIT OF INSURANCE | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| COMPREHENSIVE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE  FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | | | |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | | | |
| COLLISION | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO. | | | | |
| TOTAL HIRED AUTO PREMIUM | | | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any auto that is leased, hired, rented or borrowed with a driver.

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Continued)**

| | | ESTIMATED NUMBER OF DAYS EQUIPMENT WILL BE RENTED | | PREMIUM | |
|---|---|---|---|---|---|
| COVERAGE | TOWN AND STATE WHERE THE JOB SITE IS LOCATED | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Covered Autos Liability – Primary Coverage | | | | | |
| Covered Autos Liability – Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| | | | TOTAL HIRED AUTO PREMIUMS | | |

**ITEM FIVE**

**SCHEDULE FOR NON-OWNERSHIP COVERED AUTO LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 25 | $1,156 |
| | Number Of Partners (Active and Inactive) | | |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | |
| | Number Of Partners (Active and Inactive) | | |
| Social Service Agencies | Number Of Employees | | |
| | Number Of Volunteers Who Regularly Use Autos To Transport Clients | | |
| | Number Of Partners (Active and Inactive) | | |
| TOTAL NON-OWNERSHIP COVERED AUTOS LIABILITY PREMIUM | | | $1,156 |

**ITEM SIX**

**SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS**

| | | |
|---|---|---|
| **Type Of Risk** (Check one): | ☐ **Public Autos** | ☐ **Leasing Or Rental Concern** |
| **Rating Basis** (Check one): | ☐ **Gross Receipts (Per $100)** | ☐ **Mileage (Per Mile)** |
| **Estimated Yearly** (Check One): | ☐ **Gross Receipts (Per $100)** | ☐ **Mileage** |

| Premiums | |
|---|---|
| **Covered Autos Liability** | |
| **Personal Injury Protection** | |
| **Added Personal Injury Protection** | |
| **Property Protection Insurance (Michigan Only)** | |
| **Auto Medical Payments** | |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | |
| **Comprehensive** | |
| **Specified Causes Of Loss** | |
| **Collision** | |
| **Towing And Labor** | |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.

Gross receipts does not include:

**A.** Amounts paid to air, sea or land carriers operating under their own permits.

**B.** Advertising revenue.

**C.** Taxes collected as a separate item and paid directly to the government.

**D.** C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

**U-CA-D 600 C (04 14)**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V –** Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

     © Insurance Services Office, Inc., 2011

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

## 2. Coverage Extensions

### a. Supplementary Payments

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

### b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. Exclusions

This insurance does not apply to any of the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

### 5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

### 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  © Insurance Services Office, Inc., 2011  CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

   **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

        © Insurance Services Office, Inc., 2011        CA 00 01 10 13

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

      © Insurance Services Office, Inc., 2011      CA 00 01 10 13

4. **Loss Payment – Physical Damage Coverages**

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011

**CA 00 01 10 13**

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

    **1.** A lease of premises;

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

    **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

COMMERCIAL AUTO
CA 02 67 01 21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.2.b.** of the Common Policy Conditions, **Cancellation,** is replaced by the following:

   **b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**B.** Paragraphs **A.4.** and **A.5.** of the Common Policy Conditions, **Cancellation,** are replaced by the following:

   **4.** Notice of cancellation will state the effective date of, and reason(s) for, the cancellation. The policy period will end on that date.

   **5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

   **7.** If this Policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

   **a.** It is a new or renewal policy, it may not be cancelled by the first Named Insured during the first 60 days immediately following the effective date of the Policy or renewal, except for one of the following reasons:

   **(1)** The covered "auto" is completely destroyed such that it is no longer operable;

CA 02 67 01 21

© Insurance Services Office, Inc., 2020

    (2) Ownership of the covered "auto" is transferred; or

    (3) The Named Insured has purchased another policy covering the motor vehicle insured under this Policy.

**b.** It is a new policy, we may not cancel it during the first 30 days immediately following the effective date of the Policy for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

**D.** The following condition is added:

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**2.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

**3.** Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

© Insurance Services Office, Inc., 2020 **CA 02 67 01 21**

COMMERCIAL AUTO
CA 01 28 12 21

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

Paragraph **(5)** of **a. Supplementary Payments** under **Coverage Extensions** in the Auto Dealers, Business Auto and Motor Carrier Coverage Forms is replaced by the following:

We will pay for the "insured":

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**B. Physical Damage Coverage** is changed as follows:

**1.** No deductible applies under Specified Causes Of Loss or Comprehensive Coverage for "loss" to glass used in the windshield.

**2.** All other **Physical Damage Coverage** provisions will apply.

**C.** Paragraph **1.** of **Loss Conditions, Appraisal For Physical Damage Loss,** is replaced by the following:

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

CA 01 28 01 21                    © Insurance Services Office, Inc., 2020                    Page 1 of 3

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**D.** The **General Conditions** are amended as follows:

1. The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Motor Carrier Coverage Form:

   **a.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

   **(1)** One provides coverage to a lessor of "autos" for rent or lease; and

   **(2)** The other provides coverage to a person not described in Paragraph **D.1.a.(1);**

   then the Coverage Form or policy issued to the lessor described in Paragraph **D.1.a.(1)** is excess over any insurance available to a person described in **D.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

   > The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

   **b.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" being used as a temporary substitute for a service customer's auto that is being held by a motor vehicle dealer, or a motor vehicle dealer's leasing or rental affiliate for repair, service or adjustment; and:

   **(1)** One provides coverage to the service customer; and

   **(2)** The other provides coverage to a motor vehicle dealer, or a motor vehicle dealer's leasing or rental affiliate;

then the Coverage Form or policy issued to the service customer described in Paragraph **D.1.b.(1)** is primary over any insurance available to an entity described in **D.1.b.(2)** if:

**(1)** The vehicle is provided without charge or at a reasonable daily charge;

**(2)** There is no negligence or criminal wrongdoing on the part of the vehicle dealer, or its leasing or rental affiliate; and

**(3)** The vehicle dealer or its leasing or rental affiliate executes a written rental or use agreement and obtains from the person receiving the temporary replacement a copy of the person's driver license and insurance information reflecting at least the minimum motor vehicle insurance coverage provided in the state.

2. The following condition is added to the Auto Dealers, Business Auto and Motor Carrier Coverage Forms:

**Mediation**

1. In any claim filed by an "insured" with us for:

   **a.** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

   **b.** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

   **c.** "Loss" to a covered "auto" or its equipment, in any amount;

   either party may make a written demand for mediation of the claim prior to the institution of litigation.

2. A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

---

**Page 2 of 3**     © Insurance Services Office, Inc., 2020     **CA 01 28 01 21**

3. The request must state:

   a. Why mediation is being requested.

   b. The issues in dispute, which are to be mediated.

4. The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

5. Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

6. The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

© Insurance Services Office, Inc., 2020

COMMERCIAL AUTO
CA 05 04 08 18

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FLORIDA PUBLIC OR LIVERY PASSENGER CONVEYANCE, TRANSPORTATION NETWORK AND ON-DEMAND DELIVERY SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Covered Autos Liability Coverage

The following exclusion is added:

**Public Or Livery Passenger Conveyance And On-demand Delivery Services**

This insurance does not apply to any covered "auto" while being used:

1. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

2. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

Paragraph **A.2.** does not apply to any period of time such covered "auto" is being used by an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver, the goods, items or products to be delivered are not in the covered "auto" and that driver has not accepted a request through the "transportation network platform" or "delivery network platform" to provide "delivery services".

## B. Changes In Physical Damage Coverage

The following exclusion is added:

We will not pay for "loss" to any covered "autos" while being used:

1. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

2. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

Paragraph **B.2.** does not apply to any period of time such covered "auto" is being used by an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver, the goods, items or products to be delivered are not in the covered "auto" and that driver has not accepted a request through the "transportation network platform" or "delivery network platform" to provide "delivery services".

CA 05 04 08 18 © Insurance Services Office, Inc., 2017 **Page 1 of 3**

## C. Changes In Auto Medical Payments

If Auto Medical Payments Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance And On-demand Delivery Services**

This insurance does not apply to:

"Bodily injury" sustained by an "insured" "occupying" a covered "auto" while it is being used:

1. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

2. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

   Paragraph **C.2.** does not apply to any period of time such covered "auto" is being used by an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver, the goods, items or products to be delivered are not in the covered "auto" and that driver has not accepted a request through the "transportation network platform" or "delivery network platform" to provide "delivery services".

## D. Changes In Uninsured Motorists Coverage

If Uninsured Motorists Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance And On-demand Delivery Services**

This insurance does not apply to any covered "auto" while being used:

1. As a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; or

2. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "auto".

Paragraph **D.2.** does not apply to any period of time such covered "auto" is being used by an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver, the goods, items or products to be delivered are not in the covered "auto" and that driver has not accepted a request through the "transportation network platform" or "delivery network platform" to provide "delivery services".

## E. Changes In Personal Injury Protection And Extended Personal Injury Protection Coverage

If Personal Injury Protection or Extended Personal Injury Protection Coverage is attached, then the following exclusion is added:

**Transportation Network And On-demand Delivery Services**

This insurance does not apply to any covered "motor vehicle" while being used:

1. During any period of time, by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "motor vehicle"; or

2. By an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver to provide "delivery services", whether or not the goods, items or products to be delivered are in the covered "motor vehicle".

   Paragraph **E.2.** does not apply to any period of time such covered "motor vehicle" is being used by an "insured" who is logged into a "transportation network platform" or "delivery network platform" as a driver, the goods, items or products to be delivered are not in the covered "motor vehicle" and that driver has not accepted a request through the "transportation network platform" or "delivery network platform" to provide "delivery services".

## F. Additional Definitions

As used in this endorsement:

1. "Delivery network platform" means an online-enabled application or digital network, used to connect customers:

   a. With drivers; or

   b. With local vendors using drivers;
   for the purpose of providing prearranged "delivery services" for compensation. A "delivery network platform" does not include a "transportation network platform".

**2.** "Delivery services" includes courier services.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4**. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:      **724176**

Filing Accepted:    **10/25/2023**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **WORLDWIDE DOOR COMPONENTS INC** |
| Street Address: | **101 WEST PALMETTO STREET** |
| City, State Zip: | **ARCADIA, FL  34266** |
| Email Address: | **JERRYMONTSDEOCA@GMAIL.COM** |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **WORLDWIDE DOOR COMPONENTS INC** |
| Policy #: | **CPO0117720** |
| Claim #: | **563-0086907 001 LH** |

### Attorney

| | |
|---|---|
| Name: | **MATTHEW R DANAHY** |
| Street Address: | **901 W. SWANN AVENUE** |
| City, State Zip: | **TAMPA, FLORIDA  33606** |
| Email Address: | **SERVICE@DANDDLAW.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **ZURICH AMERICAN INSURANCE COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**CLAIMS DEPARTMENT, SUPERVISORS, MANAGEMENT, AGENTS, AND ADJUSTERS, INCLUDING THE FOLLOWING REPRESENTATIVE & ADJUSTER(S), CONSULTANTS AND VENDORS SPECIFICALLY: LINDSEY HARRELL AND GREGORY BEACH**

| | |
|---|---|
| Type of Insurance: | **Commercial Property & Casualty** |

DFS-10-363
Rev. 10/14/2008



## Civil Remedy Notice of Insurer Violations

Filing Number:        **724176**

### Reason for Notice

Reasons for Notice:

**Claim Delay**

**Unsatisfactory Settlement Offer**

**Unfair Trade Practice**

**Violation of Code of Ethics**

**Litigation Strategy and Behavior**

---

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.** |
| 624.155(1)(b)(3) | **Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.** |
| 626.9541(1)(i)(2) | **A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy.** |
| 626.9541(1)(i)(3)(a) | **Failing to adopt and implement standards for the proper investigation of claims.** |
| 626.9541(1)(i)(3)(b) | **Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.** |
| 626.9541(1)(i)(3)(c) | **Failing to acknowledge and act promptly upon communications with respect to claims.** |
| 626.9541(1)(i)(3)(d) | **Denying claims without conducting reasonable investigations based upon available information.** |

---

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Based upon the information available to the Insured, it believes the following language from its Commercial Policy with Zurich American Insurance Company may be applicable:**

**F. DUTIES IN THE EVENT OF LOSS OR DAMAGE**
**1. You must see that the following are done in the event of loss or damage to Covered Property:**
**a. Notify the police if a law may have been broken.**
**b. Give us prompt notice of the loss or damage, including a description of the property involved.**
**c. As soon as possible, give us a description of how, when, and where the loss or damage occurred.**
**d. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.**

DFS-10-363
Rev. 10/14/2008

This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a "covered cause of loss". Also, if feasible, set the damaged property aside and in the best possible order for examination.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.

f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.

g. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

h. Cooperate with us in the investigation or settlement of the claim.

2. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. Failure of an agent or one of your employees, other than an officer, partner, manager, "member", director, trustee, proprietor, or risk management employee, to notify us of any loss or damage that they know about will not affect the insurance afforded you by this Commercial Property Coverage Part.

…

## J. LOSS PAYMENT

The following apply unless otherwise provided in a Coverage Form in this Commercial Property Coverage Part:

1. In the event of loss or damage covered by this Commercial Property Coverage Part, at our option, we will either:

a. Pay the amount of the loss or damage;

b. Pay the cost of repairing or replacing the lost or damaged property;

c. Take all or any part of the property at an agreed or appraised value; or

d. Repair, rebuild, or replace the property with other property of like kind and quality.

We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

…

## Real and Personal Property Coverage Form

## A. COVERAGE

We will pay for direct physical loss of or damage to "real property" and "personal property" at a "premises" directly caused by a "covered cause of loss". We will not pay more in any one occurrence than the applicable Limit of Insurance shown on the Declarations for such loss of or damage to Covered Property at that "premises".

…

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

## Additional Coverages Form

## A. ADDITIONAL COVERAGES

The following are Additional Coverages to coverages set forth in this Commercial Property Coverage Part. If you have not chosen a coverage elsewhere in this Commercial Property Coverage Part, there is no coverage under its corresponding Additional Coverages. For example, if you do not have coverage for "stock" under the REAL AND PERSONAL PROPERTY COVERAGE FORM, you will not have coverage related to "stock" under the Consequential Loss--Undamaged Stock Additional Coverage, or any other Additional Coverage for "stock".

Each of the following Additional Coverages apply independently of one another. Unless otherwise stated, the excluded causes of loss, exclusions, terms, and conditions in the applicable Coverage Forms apply to these Additional Coverages.

The most we will pay for loss, damage, cost, or expense under any of the following Additional Coverages

DFS-10-363
Rev. 10/14/2008

are the Limits of Insurance shown on the Declarations. Limits for these Additional Coverages apply in addition to any other applicable policy limits, unless otherwise stated.

...

**5. Debris Removal**

**a. We will pay your expense to remove debris of Covered Property, for which a Limit of Insurance is shown on the Declarations, remaining after a "covered cause of loss". The most we will pay under this Additional Coverage for Debris Removal is the remaining applicable Limit of Insurance for the Covered Property shown on the Declarations after payment of the covered physical loss or damage.**
**If the total of the loss or damage and debris removal expense exceeds the applicable Limit of Insurance, we will pay the remaining debris removal expenses. The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Supplemental Limit.**

**b. If wind causes direct physical loss of or damage to Covered Property, we will also pay for the expenses you incur to remove debris of uncovered property that is blown on to the "premises" or "reported unscheduled premises" by wind and to remove debris of "outdoor trees, shrubs, plants, or lawns" damaged by wind.**

**The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Uncovered Property.**
**In no event will there be any coverage under this Debris Removal Additional Coverage for any costs to:**
**a. Extract "pollutants" from land or water; or**
**b. Remove, restore, or replace polluted land or water.**
**The expenses will be paid only if they are reported to us in writing within 180 days of the date of loss or damage.**

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**The property located at 101 West Palmetto Street, Arcadia, FL 34266 (the "Insured Property") was damaged by Hurricane Ian on or about September 28, 2022. Prior to the loss, the Insured had obtained a commercial policy from Zurich American Insurance Company ("Zurich"). Zurich's administrative address is 1299 Zurich Way, Schaumburg, IL 60196, its home address is 4 World Trade Center, 15 Greenwich Street, New York, NY 10007, and its mailing address is 1299 Zurich Way, 5th Floor, Schaumburg, IL 60196.**

**The Insured timely filed a claim with Zurich for damages to its Insured Property resulting from Hurricane Ian. Zurich thereafter assigned claim number 5630086907 and adjuster, Lindsey Harrell, to the Insured's claim. Zurich then retained third-party vendor JS Held to conduct an inspection of the Insured Property and to prepare an estimate of damages on its behalf.**

**After reporting the claim, the Insured produced to their insurance agent at Brown and Brown an estimate from roofing company, Metalmax Buildings, Inc., which specified that proper restoration to the roofs alone at the subject premises, as a direct consequence of Hurricane Ian, would exceed seven figures. The insurance agent produced this roofing estimate to Zurich on behalf of the Insured.**

**JS Held thereafter inspected the Insured Property for the first time on or about November 15, 2022, through November 16, 2022. Based on this inspection, it produced an initial estimate of damages (dated December 5, 2022) in the amount of $88,703.32 (RCV). This initial estimate was not provided to the Insured for review until February 21, 2023.**

**However, as the insurance agent had previously provided Zurich with the Metalmax Buildings' roofing estimate which, by itself, significantly exceeded Zurich's initial estimate, the agent advised Zurich that he did not understand how it could have ascertained $88,703.32 would be enough funds to properly restore the Insured Property to its pre-loss state.**

**This conversation between the insurance agent and the representatives for Zurich resulted in Zurich sending out structural engineer, Lazell Preator, P.E., to reinspect the Insured Property on or about December 29, 2022, and to prepare a report as to his findings. The engineer inspected the entire perimeter of the building, the fencing surrounding the property, inside the warehouse and the roof. He was shown loose wall panels including ones with holes, missing rake/gable edge trim, damaged roof panels, missing skylights that had to be covered with plywood, damaged roll up doors and damaged fencing, etc. At no time did he enter or inspect any of the office space mentioned in the December 5, 2022, estimate, which is in**

DFS-10-363
Rev. 10/14/2008

a separate area inside the warehouse. Subsequent to this inspection, JS Held rendered its "storm focused assessment report" on or about February 2, 2023.

Upon reviewing the estimate and report, the Insured's personal counsel emailed Zurich on February 22, 2023, stating in pertinent part, as follows:

Mr. Preator concluded among other things that there "appeared to be less than 25% damage to the roof." What does that mean?  Is it 24%? Is it 23%? Is it 22%? Is it 21% Is it 2%? I could go on but I think you get my point.  Further where is this damage to the roof Mr. Preator noted located and how did he calculate less than 25%?  Without a drawing specifying the location on the roof and measurements his conclusion that there appears to be less than 25% damage to the roof is utterly meaningless.   He could not possibly have given his calculations regarding the roof to the estimator as the estimate was prepared prior to his visit and admittedly never changed.   It is inconceivable that there was only approximately $1200 in damages to the roof/elevations as reflected in the estimate.   In fact the estimate states no damages to the roof and itemizes minimal damages to certain elevations.

Most troubling is that you have now advised that Mr. Preator and your building consultant determined that the December 5, 2022 estimate did not need to be adjusted based upon Mr. Preator's December 29, 2022 inspection. I now have reviewed that estimate.  How could they possibly conclude that the estimate did not need to be adjusted when the estimate essentially was almost exclusively limited to interior office space with the exception of about $1200 allocated to roof panels and gable edge trim?  The estimate does not include items Mr. Preator in fact identified as storm related damages.   It does not include fencing or roll up door replacement.   Mr. Preator acknowledged damaged fencing and roll up doors.   I frankly have to ask, did he even review the December 5, 2022 estimate?  If he had reviewed the estimate it would have necessitated an adjustment based upon his own conclusions.     Further neither Mr. Preator's report nor the estimate makes any mention  of damaged skylights.  At this point I have little confidence in the quality of the assessment done by these individuals.

In response to this email, JS Held issued a "revised" estimate of damages (dated February 28, 2023) in the amount of $202,410.11 (RCV). Based upon this revised estimate, Zurich tendered a check to the Insured on or about March 16, 2023, in the amount of $63,250.85 (RCV of $202,410.11 less depreciation of $163,250.85 less $100,000 deductible). Zurich then simply closed out the claim despite being in possession of evidence from its Insured (i.e., the Metalmax estimate) that the full extent of Hurricane-related damage is well in excess of the JS Held estimates. The evident under scoping and undervaluation of the losses sustained to the Insured Property by Zurich and its representatives is a patent misrepresentation to its Insured.

As such, the Insured retained Prescott Engineering, LLC ("Prescott") and Triad Restoration Services ("Triad") to separately and independently evaluate the extent of damages sustained to the Insured Property as a result of Hurricane Ian and determine the amount required to make repairs.

In its report dated June 21, 2023, Prescott rendered the following conclusion/recommendations:

Based on the conditions observed it appears that the structures located at 101 W. Palmetto have experienced damages caused by a hurricane event on September 28,
2022. Based on the conditions observed PE does not believe that an immediate unsafe condition exists at the structure and the structure. Wind related damages observed and reported at the structures consisted of the following:

Main Building

1. Ridge cap separations
2. Crimped/bent roof decking
3. Abrasions in SPF system
4. Dislodged portions of SPF system
5. Holes in SPF system
6. Bent/dislodged roof vents
7. Blown out skylights
8. Dented roof decking
9. Separations around skylights
10. Dislodged skylights
11. Gaps in eaves of roof
12. Dislodged gutters
13. Missing roof deck fasteners
14. Dislodged rake edges
15. Dislodged wall panels

DFS-10-363
Rev. 10/14/2008

16. Dislodged wall vents
17. Fractured roof decking
18. Holes in wall panels
19. Blown out overhead door assemblies
20. Blown out wall panels
21. Holes in roof deck
22. Separations between roof and wall panels
23. Sagging insulation from apparent moisture intrusion
24. Observed and reported leaks on the interior of the warehouse
25. Shifted roof purlins
26. Wrinkled carpet from moisture intrusion
27. Sagging ceiling tiles
28. Separations of window assemblies
29. Collapsed tectum decking
30. Collapsed ceiling drywall
31. Widespread staining consistent with moisture intrusion and/or mold/fungi growth
32. Deteriorated and collapsed floor decking
33. Deteriorated and collapsed roof sheathing
34. Widespread staining in floor decking
35. Widespread staining rood sheathing
36. Staining in kick plates of cabinetry

**Trailer Manufacturing Building**

1. Dislodged roof decking
2. Gaps in eave of roof deck
3. Gaps in roof ridge

**Property**

1. Blown down or dislodged fencing

The above outlined damages observed at the 101 W Palmetto property appear to have all been caused by high winds and rains associated with the hurricane event, as well as subsequent moisture intrusion through breaches caused by the high winds.

Based on the conditions observed, PE recommends the following scope of work:

1. The dislodged roof caps should be removed and replaced.
2. The portions of decking with crimping/bends, fractures, or dents should be removed and replaced.
3. The missing fasteners in the roof deck should be replaced with new gasketed fasteners.
4. The bent/dislodged ridge vents should be removed and replaced.
5. The blown out, separated, or dislodged skylights should be removed and replaced.
6. The damaged portions of the SPF system should have any areas of wet foam removed and a new SPF system applied overtop the entire SPF system.
7. The portions of the roof deck with gaps along the eaves should be resecured. If the deck is found to be bent/crimped in these areas the panels should be replaced.
8. The dislodged sections of the interior gutters should be removed and replaced. The replacement gutter should be properly flashed into the existing roof panel system.
9. The dislodged rake edge flashing should be replaced.
10. The dislodged wall panels should be removed and replaced.
11. The wall panels with holes should be removed and replaced.
12. The roof panels with holes should be examined for the source of the hole. If the hole is from a missing side lap fastener, a new fastener should be installed. If the holes is not from a sidelap fastener, then depending on the size of the hole it may be resealed or patched.
13. Any overhead doors that were blown out and have not been replaced should be removed and replaced.
14. The dislodged wall vents should be removed and replaced.
15. Any wet insulation should be removed and replaced. This may require partial removal and reinstallation of roof panels in these areas as the insulation is draped over the purlins and under the roof deck.
16. The window assemblies in the old office area should be removed and replaced.
17. The deteriorated/rotted roof decking, floor sheathing, and tectum decking should be removed and replaced.
18. The roof system over the old office area should be removed and replaced.
19. Interior finishes, drywall, and insulation that was affected by moisture intrusion should be removed and replaced.

DFS-10-363
Rev. 10/14/2008

20. The dislodged roof deck in the trailer assembly building should be replaced.
21. The rake edge flashing on the north side of the trailer assembly building should be replaced.
22. The portions of the roof deck with gaps along the eaves in the trailer assembly building should be resecured. If the deck is found to be bent/crimped in these areas the panels should be replaced.
23. The ridge cap flashing of the trailer assembly building should be removed and replaced.
24. The perimeter fencing that was blown down or damaged should be removed and replaced.
25. A licensed indoor air quality specialist should be retained to determine if any mold remediation is necessary for the structures.

In addition, on August 31, 2023, Prescott rendered the following addendum to its prior report with respect to the replacement of roofs at the Insured Property:

The roof structure was surveyed to determine the extent of bent roof panels caused by high wind pressures and/or wind-borne debris impact that would require replacement. Based on the survey the following measurements were found:
1. Bay A: 100% of the roof panels were bent
2. Bay B: 100% of the roof panels were bent
3. Bay C: 70% of the roof panels were bent
4. Bay D: 33.5% of the roof panels were bent
5. Bay E: 42.7% of the roof panels were bent
6. Covered Storage: 60.0% of the roof panels were bent

Triad conducted its own independent inspection of the damages to the Insured Property and based upon that inspection, and the findings outlined in Prescott's reports, it determined the full amount of funds required to put the Insured Property into a pre-loss condition is $3,527,870.33 RCV/$2,615,342.25 ACV. This figure is in stark contrast to the estimates prepared for Zurich by JS Held.

Because Zurich refuses to pay the full amounts necessary to restore the Insured Property back to a pre-loss condition, the Insured has had to come out-of-pocket to make temporary and permanent repairs in order to mitigate its losses. These repairs include, but may not be limited to, replacing the roll-up bay doors blown in by the hurricane, roofing repairs/tarping, insulation replacement, temporary repairs to the fencing, demolition of the front offices, and securing the siding of the building, clean up/debris removal, etc.

Despite evidence to the contrary, Zurich has made no additional payments to for losses to property damage sustained to the property's buildings and resulting losses to the Insured's inventory.

The damage to the inventory owned by the insured remains unaddressed entirely. During JS Held's first inspection, it was shown damaged stock (i.e., Thresholds) but its reports/ estimates do not account for these items, and nothing has been paid to date for damaged inventory. There are also additional stock items which have been damaged as a result of the loss and the Insured is providing information about those additional stock items to Zurich for its review and consideration.

The Insured Property was damaged by a covered loss. The Insured timely reported the damage to Zurich. Zurich (and its representatives) conducted a deficient investigation and improperly delayed, under scoped, undervalued, and underpaid the loss, particularly in light of the visual evidence of damages which was ignored by its approved vendor, JS Held, which is a well-known insurance industry vendor.

Zurich has failed to create and implement adequate guidelines for proper claims investigation, claims evaluation, claims handling, and for training and supervision of employees and independent contractors handlings its claims resulting in statutory violations as set forth above. Zurich has failed and/or refused to thoroughly, accurately, and completely investigate and evaluate the Insured's claim for damages.

The concept of insurance is that it is the insurer's granting of timely and prompt indemnity or security against a contingent loss. Fla. Stat. § 624.02 defines insurance as a contract whereby one undertakes to indemnify another or pay or allow specified amount or a determinable benefit upon determinable contingencies. Inherent is the fact that payment is made timely and promptly so that insureds may mitigate their damages and be put back into the position they were in prior to the loss as quickly as possible. Zurich has failed to comply with its duty to timely adjust and fully indemnify its Insured.

Further, Zurich has breached its policy of insurance with its Insured through its actions and/or inactions.

Zurich has refused and/or failed to pay the full insurance proceeds owed to the Insured as required by the policy and law. Refusal and/or failure to settle the Insured's claim when under all the circumstances it could have and should have done so had it acted fairly and honestly towards the Insured is wrong.

DFS-10-363
Rev. 10/14/2008

The actions taken by Zurich in the handling and adjustment of its Insured's claim was willful, wanton, and in complete disregard for the rights of its Insured and occurs with such a frequency as to indicate a general business practice, and further, is in violation of Florida Statutes § 624.155 and § 626.9541.

Based on the foregoing actions and omissions, Zurich has engaged in wrongful conduct. That wrongful conduct includes, but is not limited to, the following:

1. Improper claim delay.
2. Improper claim denial of the portions of damage ignored and under scoped.
3. Looking for ways to deny recovery to its Insured.
4. Looking for ways to delay recovery to its Insured.
5. Not adjusting the claim and not evaluating the loss properly, promptly, and fairly so as to provide full and prompt indemnity to its Insured.
6. Looking for ways to underpay the claim.
7. Failing to implement proper standards for the adjustment and investigation of insurance claims.
8. Making misrepresentations to the Insured about coverage.
9. Making misrepresentations to the Insured about facts.
10. Not training, supervising, or managing adjusters and independent contractors properly so that prompt and full payments are made, but rather placing the company's interests before the policyholders' interests by attempting to deny or minimize payments owed.
11. Establishing severity control initiatives and otherwise establishing a culture of not fully and promptly paying claims following losses.
12. Ignoring submitted claim documentation and information from the Insured.
13. Using JS Held to evaluate and estimate damages, which is a well-known outcome-oriented expert and vendor who makes significant income from Zurich, subsidiary companies, and the insurance industry in general.
14. Failing to timely respond to communications from the insured and its agents.
15. Forcing the insured to adjust its own loss.

Therefore, to cure the defects outlined in this Civil Remedy Notice, Zurich must:

Tender all insurance monies owed to the Insured for the Hurricane Ian loss to the Insured Property.

A copy of this form has been submitted to the FDFS and has been printed out and mailed to the following parties providing them notice of the filing of the Civil Remedy Notice:

Zurich American Insurance Company, via Certified Mail R.R.R.
Ms. Lindsey Harrell, Zurich American Ins. Co., via Certified Mail, R.R.R.
Claims Department, Zurich American Ins. Co., via U.S. Mail.
Tabatha A. Liebert, Esq., via email
Beth and Jerry Monts De Oca (o/b/o the Insured), via email.

**Comments**

| User Id | Date Added | Comment |
|---------|-----------|---------|
| | | |

DFS-10-363
Rev. 10/14/2008



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

# Civil Remedy Notice of Insurer Violations

Filing Number: **871998**

Filing Accepted: **3/20/2026**

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

## Complainant

| | |
|---|---|
| Name: | **101 PALMETTO LLC** |
| Street Address: | **101 WEST PALMETTO STREET** |
| City, State Zip: | **ARCADIA, FL  34266** |
| Email Address: | **JERRYMONTSDEOCA@GMAIL.COM** |
| Complainant Type: | **Insured** |

## Insured

| | |
|---|---|
| Name: | **101 PALMETTO LLC** |
| Policy #: | **CPO0117720-06** |
| Claim #: | **563-0086907 001 LH** |

## Attorney

| | |
|---|---|
| Name: | **MATTHEW R DANAHY** |
| Street Address: | **901 W SWANN AVE** |
| City, State Zip: | **TAMPA, FL  36606** |
| Email Address: | **SERVICE@DANDDLAW.COM** |

## Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **ZURICH AMERICAN INSURANCE COMPANY** |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**ZURICH CLAIMS DEPARTMENT, INCLUDING ALL SUPERVISORS, MANAGEMENT, AGENTS, AND ADJUSTERS INVOLVED IN THE CLAIM, INCLUDING THE FOLLOWING REPRESENTATIVES & ADJUSTERS, CONSULTANTS AND VENDORS SPECIFICALLY: LINDSEY HARRELL, CHAD COOK, TANYA GROOVER, WAYNE**

| | |
|---|---|
| Type of Insurance: | **Commercial Property & Casualty** |

DFS-10-363
Rev. 10/14/2008


FLORIDA
DEPARTMENT OF
FINANCIAL SERVICES

# Civil Remedy Notice of Insurer Violations

Filing Number:        **871998**

## Reason for Notice

Reasons for Notice:

> **Non-renewal**
>
> **Claim Denial**
>
> **Claim Delay**
>
> **Unsatisfactory Settlement Offer**
>
> **Unfair Trade Practice**
>
> **Violation of Code of Ethics**
>
> **Litigation Strategy and Behavior**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| **624.155(1)(b)(1)** | **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.** |
| **624.155(1)(b)(3)** | **Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.** |
| **626.9541(1)(i)(2)** | **A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy.** |
| **626.9541(1)(i)(3)(a)** | **Failing to adopt and implement standards for the proper investigation of claims.** |
| **626.9541(1)(i)(3)(b)** | **Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.** |
| **626.9541(1)(i)(3)(c)** | **Failing to acknowledge and act promptly upon communications with respect to claims.** |
| **626.9541(1)(i)(3)(d)** | **Denying claims without conducting reasonable investigations based upon available information.** |
| **626.9541(1)(i)(3)(f)** | **Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.** |
| **626.9541(1)(i)(3)(g)** | **Failing to promptly notify the insured of any additional information necessary for the processing of a claim.** |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**The Insured makes reference to the commercial property coverage provided under the Property Protection**

Portfolio in Zurich policy number CPO 0117720-06 (The Policy) in effect on September 28, 2022 including the Property Portfolio Protection schedule of Forms and Endorsements, including The Policy Declarations including the Commercial Property Part Declarations, The Notice of Deductibles Applicable to Hurricane, The Commercial Property Coverage Part General Provisions, The Commercial Property Conditions, The Commercial Property Definitions, The Real and Personal Property Coverage Form, The Additional Coverages form, The Roof Covering Valuation form, The Named Storm -Direct Damage and Time Element Deductible, The Florida Changes form, The Schedule of Locations and The Schedule of Named Insureds.

Further, the Insured refers to all policy language contained in letters provided to it by Zurich, its Third-Party Administrators and its Attorneys during the claim and before and after Appraisal.

Finally, The Insured refers to the following language from The Policy:

**F. DUTIES IN THE EVENT OF LOSS OR DAMAGE**
1. You must see that the following are done in the event of loss or damage to Covered Property:
a. Notify the police if a law may have been broken.
b. Give us prompt notice of the loss or damage, including a description of the property involved.
c. As soon as possible, give us a description of how, when, and where the loss or damage occurred.
d. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a "covered cause of loss". Also, if feasible, set the damaged property aside and in the best possible order for examination.
e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values, and amount of loss claimed.
f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also, permit us to take samples of damaged and undamaged property for inspection, testing, and analysis, and permit us to make copies from your books and records.
g. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
h. Cooperate with us in the investigation or settlement of the claim.
2. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.
3. Failure of an agent or one of your employees, other than an officer, partner, manager, "member", director, trustee, proprietor, or risk management employee, to notify us of any loss or damage that they know about will not affect the insurance afforded you by this Commercial Property Coverage Part.

…

**J. LOSS PAYMENT**
The following apply unless otherwise provided in a Coverage Form in this Commercial Property Coverage Part:
1. In the event of loss or damage covered by this Commercial Property Coverage Part, at our option, we will either:
a. Pay the amount of the loss or damage;
b. Pay the cost of repairing or replacing the lost or damaged property;
c. Take all or any part of the property at an agreed or appraised value; or
d. Repair, rebuild, or replace the property with other property of like kind and quality.
We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

…

**Real and Personal Property Coverage Form**

**A. COVERAGE**
We will pay for direct physical loss of or damage to "real property" and "personal property" at a "premises" directly caused by a "covered cause of loss". We will not pay more in any one occurrence than the applicable Limit of Insurance shown on the Declarations for such loss of or damage to Covered Property at that "premises".

…

**D. DEDUCTIBLE**

DFS-10-363
Rev. 10/14/2008

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductibles shown on the Declarations. We will then pay the amount of loss or damage in excess of the Deductibles, up to the applicable Limits of Insurance.

…

## E. VALUATION
We will determine the amount of covered loss or damage as follows:

2. Except as provided in 3., 5., 6., and 7. below, "real property" or "personal property", other than "improvements and betterments", which is not repaired, rebuilt, or replaced will be valued at the "actual cash value" at the time and place of loss or damage. If you commence the repair, rebuilding, or replacement of the lost or damaged "real property" or "personal property" within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the "actual cash value" previously paid and the "replacement cost" at the time of loss or damage.

…

Additional Coverages Form

## A. ADDITIONAL COVERAGES

The following are Additional Coverages to coverages set forth in this Commercial Property Coverage Part. If you have not chosen a coverage elsewhere in this Commercial Property Coverage Part, there is no coverage under its corresponding Additional Coverages. For example, if you do not have coverage for "stock" under the REAL AND PERSONAL PROPERTY COVERAGE FORM, you will not have coverage related to "stock" under the Consequential Loss--Undamaged Stock Additional Coverage, or any other Additional Coverage for "stock".

Each of the following Additional Coverages apply independently of one another. Unless otherwise stated, the excluded causes of loss, exclusions, terms, and conditions in the applicable Coverage Forms apply to these Additional Coverages.

The most we will pay for loss, damage, cost, or expense under any of the following Additional Coverages are the Limits of Insurance shown on the Declarations. Limits for these Additional Coverages apply in addition to any other applicable policy limits, unless otherwise stated.

…

5. Debris Removal

a. We will pay your expense to remove debris of Covered Property, for which a Limit of Insurance is shown on the Declarations, remaining after a "covered cause of loss". The most we will pay under this Additional Coverage for Debris Removal is the remaining applicable Limit of Insurance for the Covered Property shown on the Declarations after payment of the covered physical loss or damage.
If the total of the loss or damage and debris removal expense exceeds the applicable Limit of Insurance, we will pay the remaining debris removal expenses. The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Supplemental Limit.

b. If wind causes direct physical loss of or damage to Covered Property, we will also pay for the expenses you incur to remove debris of uncovered property that is blown on to the "premises" or "reported unscheduled premises" by wind and to remove debris of "outdoor trees, shrubs, plants, or lawns" damaged by wind.

The most we will pay under this Additional Coverage in any one occurrence is the Limit of Insurance shown on the Declarations for Debris Removal--Uncovered Property.
In no event will there be any coverage under this Debris Removal Additional Coverage for any costs to:
a. Extract "pollutants" from land or water; or
b. Remove, restore, or replace polluted land or water.
The expenses will be paid only if they are reported to us in writing within 180 days of the date of loss or damage.

…

Mediation Or Appraisal
…

DFS-10-363
Rev. 10/14/2008

**B. If we and you disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:**
**1. Pay its chosen appraiser; and**
**2. Bear the other expenses of the appraisal and umpire equally.**
**If there is an appraisal, we will still retain our right to deny the claim.**
**However, only with respect to disagreements between us and the first Named Insured, the first Named Insured is not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss, if we:**
**1. Requested mediation and either we or the first Named Insured rejected the mediation result; or**
**2. Failed to notify the first Named Insured of the first Named Insured's right to participate in the mediation program.**

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**In addition of the above statutory provisions alleged to have been violated, see also the following statutes and rules which were violated by Zurich American Ins. Co., the application of which are further explained below:**

**624.155(1)(a)1 Any person may bring a civil action against an insurer when such person is damaged: (a) by violation of any of the following provisions by the insurer: (1) Section 626.9541(1)(i), (o), or (x)**

**69B-220.201(3)(b) An adjuster shall treat all claimants equally.**

**69B-220.201(3)(b)(2) An adjuster shall adjust all claims strictly in accordance with the Insurance contract.**

**69B-220.201(3)(c)  An adjuster shall not approach investigations, adjustments,     and settlements in a manner prejudicial to the insured.**

**69B-220.201(3)(d)  An adjuster shall make truthful and unbiased reports of the facts after making a complete investigation.**

**69B-220.201(3)(e) An adjuster shall handle every adjustment and settlement with honesty and integrity, and allow a fair adjustment or settlement to all parties without any compensation or remuneration to himself or herself except that to which he or she is legally entitled.**

**69B-220.201(3)(f)  An adjuster, upon undertaking the handling of a claim, shall act with dispatch and due diligence in achieving a proper disposition of the claim.**

**69B-220.201(3)(j)  An adjuster shall not knowingly fail to advise a claimant of     the claimant's claim options in accordance with the terms     and conditions of the insurance contract.**

**69B-220.201(3)(k)  An adjuster shall not undertake the adjustment of any claim     concerning which the adjuster is not currently competent and     knowledgeable as to the terms and conditions of the**

DFS-10-363
Rev. 10/14/2008

insurance coverage, or which otherwise exceeds the adjuster's current expertise.

626.877 Every adjuster shall adjust or investigate every claim, damage, or loss made or occurring under an insurance contract, in accordance with the terms and conditions of the contract and of the applicable laws of this state.

626.878 An adjuster shall subscribe to the code of ethics specified in the rules of the department. The rules shall implement the provisions of this part and specify the terms and conditions of contracts, including a right to cancel, and require practices necessary to ensure fair dealing, prohibit conflicts of interest, and ensure preservation of the rights of the claimant to participate in the adjustment of claims.

626.9744(2) When a loss requires replacement of items and the replaced items do not match in quality, color, or size, the insurer shall make reasonable repairs or replacement of items in adjoining areas. In determining the extent of the repairs or replacement of items in adjoining areas, the insurer may consider the cost of repairing or replacing the undamaged portions of the property, the degree of uniformity that can be achieved without such cost, the remaining useful life of the undamaged portion, and other relevant factors.

627.4133(2)(d)(1) Upon a declaration of an emergency pursuant to F.S. § 252.36 and the filing of an order by the Commissioner of Insurance Regulation, an insurer may not cancel or nonrenew a personal residential or commercial residential property insurance policy covering a dwelling or residential property located in this state which has been damaged as a result of a hurricane or wind loss that is the subject of the declaration of emergency for a period of 90 days after the dwelling or residential property has been repaired. A structure is deemed to be repaired when substantially completed and restored to the extent that it is insurable by another authorized insurer that is writing policies in this state.

627.4133(3) Claims on property insurance policies that are the result of an act of God may not be used as a cause for cancellation or nonrenewal, unless the insurer can demonstrate, by claims frequency or otherwise, that the insured has failed to take action reasonably necessary as requested by the insurer to prevent recurrence of damage to the insured property.

627.70131(1)(a) Upon an insurer's receiving a communication with respect to a claim, the insurer shall, within 14 calendar days, review and acknowledge receipt of such communication unless payment is made within that period of time or unless the failure to acknowledge is caused by factors beyond the control of the insurer which reasonably prevent such acknowledgment. If the acknowledgment is not in writing, a notification indicating acknowledgment shall be made in the insurer's claim file and dated. A communication made to or by an agent of an insurer with respect to a claim shall constitute communication to or by the insurer.

627.70131(3)(a) Unless otherwise provided by the policy of insurance or by law, within 14 days after an insurer receives proof of loss statements, the insurer shall begin such investigation as is reasonably necessary unless the failure to begin such investigation is caused by factors beyond the control of the insurer which reasonably prevent the commencement of such investigation.

627.70131(7)(a) Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. The insurer shall provide a reasonable explanation in writing to the policyholder of the basis in the insurance policy, in relation to the facts or applicable law, for the payment, denial, or partial denial of a claim. If the insurer's claim payment is less than specified in any insurer's detailed estimate of the amount of the loss, the insurer must provide a reasonable explanation in writing of the difference to the policyholder. Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the insured must select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection does not form the sole basis for a private cause of action.

624.155(5) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:

(a) Willful, wanton and malicious;

DFS-10-363
Rev. 10/14/2008

(b) In reckless disregard for the rights of any insured; or
(c) In reckless disregard for the rights of a beneficiary under a life insurance contract.

**FACTS AND CIRCUMSTANCES GIVING RISE TO THE VIOLATION**

The property located at 101 West Palmetto Street, Arcadia, FL 34266 (the "Insured Property") was damaged by Hurricane Ian on or about September 28, 2022. Prior to the loss, the Insured had obtained a commercial policy from Zurich American Insurance Company ("Zurich") which provided Property Protection coverage to the building and business personal property pursuant to policy number CPO 0117720-06 ("The Policy'). Zurich's administrative address is 1299 Zurich Way, Schaumburg, IL 60196, its home address is 4 World Trade Center, 15 Greenwich Street, New York, NY 10007, and its mailing address is 1299 Zurich Way, Schaumburg, IL 60196.

The Policy was issued to Worldwide Door Components and includes 101 Palmetto LLC as an additional insured.  The Insureds timely filed a claim with Zurich for damages to the Insured Property resulting from Hurricane Ian. Zurich thereafter assigned claim number 5630086907 and adjuster, Lindsey Harrell, was assigned to handle the Insureds' claim. Zurich then retained third parties to assist it with the investigation and adjustment of the claim, including third-party vendor JS Held. J.S. Held is an outcome-oriented company with significant financial bias toward Zurich and other insurers due to the amount of work it receives from Zurich and other insurers.

The persons identified as representing the insurer who are most responsible for and knowledgeable of the facts giving rise to the allegations in this notice have been named in other Civil Remedy Notices filed by other Insureds. Many of these individuals have been identified in other CRNs based on the Insureds review of information from the Florida Department of Financial Services:

Lindsey Harrell: (Named in 5 prior CRNs)
Chad Cook: (Named in 7 prior CRNs)
Tanya Groover:
Wayne Hess: (Named in 1 prior CRN)
Andrew Goffron: (Named in 12 prior CRNs)
Graham Marquette:
Gregory Beach: (Named in 3 prior CRNs)
Lazell Preator PE:
Michelle Feduccia, PE: (Named in 8 prior CRNs)
Jason Chodos, Esq.: (Named in 2 prior CRNs)
Nabila Rahim, Esq.:

After reporting the claim, the Insured produced to their insurance agent Ryan Coffers at Brown and Brown an estimate from roofing company, Metalmax Buildings, Inc.. That estimate estimated that proper restoration to the roofs at the insured property from damage caused by Hurricane Ian, would exceed seven figures. The insurance agent produced this roofing estimate to Zurich on behalf of the Insured.

Zurich sent its representative, Wayne Hess from JS Held, on its behalf to inspect the damage to the Insured Property for the first time on or about November 15, 2022, through November 16, 2022. Based on this inspection, JS Held (not the initial representative or agent) prepared an initial estimate of damages (dated December 5, 2022) in the unreasonably low amount of $88,703.32 (RCV). In fact, the estimate of damages specifically stated as to the roof "no storm-related damages observed." This estimate was below the policy deductible of $100,000, ignored visible damage, used an incorrect scope and provided an unreasonably low price for the needed repairs to the Insured Property caused by the Hurricane.

This initial estimate was provided to Mr. Coffers at Brown & Brown but was not provided to the Insured until February 21, 2023. The reason for this delay has never been explained.

As insured had previously provided the agent and Zurich with the Metalmax Buildings' roofing estimate, which was far more than Zurich's initial estimate, the agent told Zurich that he did not understand how it could have determined the damage estimate of $88,703.32 was sufficient to cover the Hurricane damage to the Insured Property.

This conversation between the insurance agent and Zurich resulted in Zurich sending out structural engineer, Lazell Preator, P.E. of J.S. Held, to reinspect the Insured Property on or about December 29, 2022, and to prepare a report as to his findings. Mr. Preator was not a Florida licensed engineer. Mr. Preator inspected the building, the fencing surrounding the property, inside the warehouse and the roof.  He was shown loose wall panels including panels with holes, missing rake/gable edge trim, damaged roof panels, missing skylights (which were covered with plywood to try and prevent water intrusion), damaged roll up

doors, damaged fencing, and other damage to the building and grounds caused by the Hurricane. However, at no time did he enter or inspect any of the office space included in the estimate from J.S. Held which was provided to the agent. The office space was a separate area inside the warehouse.

After this inspection, Mr. Preator and J.S. Held provided its "storm focused assessment report" dated February 2, 2023. Although Mr. Preator's inspection occurred in December 2022, Ryan Coffers (the insurance agent) repeatedly followed up with Zurich regarding the status of the report. It was not until late February 2023 that they finally provided the report and advised (falsely) that  no changes were needed to the initial damage estimate.

On February 22, 2023, after reviewing the estimate and the report from J.S. Held, the Insured's personal counsel, Tabatha, Liebert, emailed Zurich, with her concerns about the inspection and the findings. Ms. Liebert stated as follows:

Mr. Preator concluded among other things that there "appeared to be less than 25% damage to the roof." What does that mean?   Is it 24%?  Is it 23%?  Is it 22%?  Is it 21%  Is it 2%?  I could go on but I think you get my point.  Further where is this damage to the roof Mr. Preator noted located and how did he calculate less than 25%?  Without a drawing specifying the location on the roof and measurements his conclusion that there appears to be less than 25% damage to the roof is utterly meaningless.   He could not possibly have given his calculations regarding the roof to the estimator as the estimate was prepared prior to his visit and admittedly never changed.   It is inconceivable that there was only approximately $1200 in damages to the roof/elevations as reflected in the estimate.   In fact the estimate states no damages to the roof and itemizes minimal damages to certain elevations.

Most troubling is that you have now advised that Mr. Preator and your building consultant determined that the December 5, 2022 estimate did not need to be adjusted based upon Mr. Preator's December 29, 2022 inspection. I now have reviewed that estimate.  How could they possibly conclude that the estimate did not need to be adjusted when the estimate essentially was almost exclusively limited to interior office space with the exception of about $1200 allocated to roof panels and gable edge trim?  The estimate does not include items Mr. Preator in fact identified as storm related damages.   It does not include fencing or roll up door replacement.   Mr. Preator acknowledged damaged fencing and roll up doors.   I frankly have to ask, did he even review the December 5, 2022 estimate?  If he had reviewed the estimate it would have necessitated an adjustment based upon his own conclusions.     Further neither Mr. Preator's report nor the estimate makes any mention  of damaged skylights.  At this point I have little confidence in the quality of the assessment done by these individuals.

In addition to the fact that Mr. Preator is not a Florida licensed engineer, Zurich had him fly to Florida from Las Vegas to inspect the Insured Property. Because he was not licensed in Florida, Mr. Preator then had a Florida licensed engineer who had not visited the Insured Property, Michelle Feduccia P.E., sign and seal Mr. Preator's report.

In response to Ms. Liebert's email, and at the request of Zurich, J.S. Held then issued a "revised" estimate of damages dated February 28, 2023. This estimate was in the amount of $202,410.11 (RCV), was still far less than the insureds actual damages. This second estimate, again, ignored visible damage, used an incorrect scope, and provided an unreasonably low price for the repairs needed to the Insured Property caused by the Hurricane.

Based upon the revised estimate dated February 28, 2023, Zurich tendered a check to the Insured on or about March 16, 2023, in the amount of $63,250.85 (RCV of $202,410.11 less depreciation of $163,250.85 less $100,000 deductible). This payment was based on the deficient estimate of J.S. Held and failed to indemnify the Insured for its Hurricane damage as required by the Policy. Because the Insured disagreed with Zurich's estimate and payment, the check was not negotiated by the Insured.

After making tits inadequate payment, Zurich closed out the claim despite being aware of the Insured's disagreement with the scope and amount of its damage and despite being in possession of evidence from the Insured which showed that the Hurricane-related damage was far in excess of the J.S. Held second estimate and its payment.

Under scoping and undervaluing the loss by Zurich and its representatives is wrong. Ignoring information provided by the Insured is wrong. Using an outcome-oriented vendor like J.S. Held is wrong. Underpaying the claim is wrong. And representing that the Insureds damages were only those damages determined by J.S. Held and paid by Zurich was not only wrong but was a misrepresentation to the Insured. This conduct shows that Zurich was more interested in its interests than treating the insured fairly, honestly and with due regard for its interests.

It should be noted that, prior to Hurricane Ian, Zurich had sent a notice advising the Insured that it would non-renew the Insured's Policy. But due to the impending Hurricane, Florida law required Zurich to extend the policy's coverage period. Zurich subsequently informed the Insured that it would be discontinuing coverage on March 15, 2023.

On February 20, 2023, the Insured's counsel, Tabatha Liebert, wrote to Zurich and requested that Zurich not discontinue coverage on March 15, 2023, advising that the Insured would be unable to obtain coverage through another carrier because Zurich had not finalized adjustment of the Hurricane Ian claim, and because the claim remained open and pending. Zurich refused this reasonable request, knowing that the Insured would not be able to find new coverage when its property had not been repaired and when the Insureds had made it aware that there was a dispute over the scope and amount of the loss..

In addition, Worldwide Door Components Inc. is a manufacturer of a variety of door components including but not limited to door jams and thresholds.  The Insured Property is utilized to store a large amount of inventory (millions of dollars worth) and has expensive equipment/machinery utilized by the business located in the Insured Property.  Worldwide Door Components, Inc.  also performs some light manufacturing in the building.  The Insured had to frequently move inventory around because every time it rained water was pouring into the building from the damaged roof. This went on for a couple of years.  The Insured did what it could to try and protect the inventory and equipment, but the constant water intrusion caused damage to the business personal property (which Zurich ignored and failed to pay). The water intrusion through the damaged roof was also a hazard to the Insured's employees.  Zurich's failure to promptly and fairly adjust the claim was extremely disruptive to the business operations of Worldwide Door Components, Inc. These facts further demonstrate a complete disregard for the insured and a lack of good faith.

This evidence's Zurich's lack of care for its Insured's interests and that it was more interested in protecting its own interests. Zurich wanted to non-renew coverage as quickly as possible and get off the risk, despite knowing that the Insureds had open / unresolved claims. This had the effect of both punishing the insured for making a claim and placing the Insured in a position wherein it would be unable to procure new coverage due to the open and pending claim which had not been fully or fairly resolved.

Given the obvious mistakes by J.S. Held and Zurich which resulted in a low ball estimate and payment to the Insured,  the Insured retained Prescott Engineering, LLC ("Prescott") and Triad Restoration Services ("Triad") to separately and independently evaluate the extent of damage sustained to the Insured Property as a result of Hurricane Ian and to determine the scope and amount of needed repairs.

In its report dated June 21, 2023, Prescott rendered the following conclusion/recommendations:

Based on the conditions observed it appears that the structures located at 101 W. Palmetto have experienced damages caused by a hurricane event on September 28,
2022. Based on the conditions observed PE does not believe that an immediate unsafe condition exists at the structure and the structure. Wind related damages observed and reported at the structures consisted of the following:

Main Building

1. Ridge cap separations
2. Crimped/bent roof decking
3. Abrasions in SPF system
4. Dislodged portions of SPF system
5. Holes in SPF system
6. Bent/dislodged roof vents
7. Blown out skylights
8. Dented roof decking
9. Separations around skylights
10. Dislodged skylights
11. Gaps in eaves of roof
12. Dislodged gutters
13. Missing roof deck fasteners
14. Dislodged rake edges
15. Dislodged wall panels
16. Dislodged wall vents
17. Fractured roof decking
18. Holes in wall panels
19. Blown out overhead door assemblies

DFS-10-363
Rev. 10/14/2008

20. Blown out wall panels
21. Holes in roof deck
22. Separations between roof and wall panels
23. Sagging insulation from apparent moisture intrusion
24. Observed and reported leaks on the interior of the warehouse
25. Shifted roof purlins
26. Wrinkled carpet from moisture intrusion
27. Sagging ceiling tiles
28. Separations of window assemblies
29. Collapsed tectum decking
30. Collapsed ceiling drywall
31. Widespread staining consistent with moisture intrusion and/or mold/fungi growth
32. Deteriorated and collapsed floor decking
33. Deteriorated and collapsed roof sheathing
34. Widespread staining in floor decking
35. Widespread staining rood sheathing
36. Staining in kick plates of cabinetry

**Trailer Manufacturing Building**

1. Dislodged roof decking
2. Gaps in eave of roof deck
3. Gaps in roof ridge

**Property**

1. Blown down or dislodged fencing

The above outlined damages observed at the 101 W Palmetto property appear to have all been caused by high winds and rains associated with the hurricane event, as well as subsequent moisture intrusion through breaches caused by the high winds.

Based on the conditions observed, PE recommends the following scope of work:

1. The dislodged roof caps should be removed and replaced.
2. The portions of decking with crimping/bends, fractures, or dents should be removed and replaced.
3. The missing fasteners in the roof deck should be replaced with new gasketed fasteners.
4. The bent/dislodged ridge vents should be removed and replaced.
5. The blown out, separated, or dislodged skylights should be removed and replaced.
6. The damaged portions of the SPF system should have any areas of wet foam removed and a new SPF system applied overtop the entire SPF system.
7. The portions of the roof deck with gaps along the eaves should be resecured. If the deck is found to be bent/crimped in these areas the panels should be replaced.
8. The dislodged sections of the interior gutters should be removed and replaced. The replacement gutter should be properly flashed into the existing roof panel system.
9. The dislodged rake edge flashing should be replaced.
10. The dislodged wall panels should be removed and replaced.
11. The wall panels with holes should be removed and replaced.
12. The roof panels with holes should be examined for the source of the hole. If the hole is from a missing side lap fastener, a new fastener should be installed. If the holes is not from a sidelap fastener, then depending on the size of the hole it may be resealed or patched.
13. Any overhead doors that were blown out and have not been replaced should be removed and replaced.
14. The dislodged wall vents should be removed and replaced.
15. Any wet insulation should be removed and replaced. This may require partial removal and reinstallation of roof panels in these areas as the insulation is draped over the purlins and under the roof deck.
16. The window assemblies in the old office area should be removed and replaced.
17. The deteriorated/rotted roof decking, floor sheathing, and tectum decking should be removed and replaced.
18. The roof system over the old office area should be removed and replaced.
19. Interior finishes, drywall, and insulation that was affected by moisture intrusion should be removed and replaced.
20. The dislodged roof deck in the trailer assembly building should be replaced.
21. The rake edge flashing on the north side of the trailer assembly building should be replaced.
22. The portions of the roof deck with gaps along the eaves in the trailer assembly building should be

DFS-10-363
Rev. 10/14/2008

resecured. If the deck is found to be bent/crimped in these areas the panels should be replaced.
23. The ridge cap flashing of the trailer assembly building should be removed and replaced.
24. The perimeter fencing that was blown down or damaged should be removed and replaced.
25. A licensed indoor air quality specialist should be retained to determine if any mold remediation is necessary for the structures.

In addition, on August 31, 2023, Prescott rendered the following addendum to its prior report with respect to the exact percent of damage to the roofs at the Insured Property:

The roof structure was surveyed to determine the extent of bent roof panels caused by high wind pressures and/or wind-borne debris impact that would require replacement. Based on the survey the following measurements were found:
1. Bay A: 100% of the roof panels were bent
2. Bay B: 100% of the roof panels were bent
3. Bay C: 70% of the roof panels were bent
4. Bay D: 33.5% of the roof panels were bent
5. Bay E: 42.7% of the roof panels were bent
6. Covered Storage: 60.0% of the roof panels were bent

Triad conducted its own independent inspection of the damages to the Insured Property and based upon that inspection, and the scope of damage outlined in Prescott's reports, it determined the payments required to put the Insured Property into a pre-loss condition were $3,527,870.33 RCV/$2,615,342.25 ACV.

The reports from Prescott, and the estimate from Triad, were provided to Zurich.

Because Zurich refused to pay the full amounts necessary to restore the Insured Property back to its pre-loss condition, the Insured was required to come out-of-pocket to make temporary and permanent repairs in order to mitigate its losses. These repairs which were started by the insured in the weeks and months following the Hurricane, included but were not limited to, replacing the roll-up bay doors blown in by the hurricane, roofing repairs/tarping, insulation replacement, temporary repairs to the fencing, demolition of the front offices, and securing the siding of the building, clean up/debris removal, etc.

On or about October 25, 2023, the Insured sent a Notice of Intent to Initiate Litigation ("NOI") to Zurich. The purpose of the NOI was to give Zurich an additional opportunity to resolve the claim and to facilitate early settlement and resolution of the claim without the need for unnecessary and costly litigation. Provided with the NOI were copies of the Insureds damages information for repairs it had started and also the Prescott report and Triad estimate.

On November 6, 2023, Zurich responded to the NOI in a manner which suggested that Zurich had no intention to resolve the claim on its merits.

Following the NOI, the Insured and Zurich participated in mediation. The mediation was conducted on February 27, 2024. Unfortunately, Zurich was unwilling to resolve the matter, and the mediation reached an impasse.

On February 27, 2024, following the impasse at mediation, and in a further effort to resolve the claim without the time and expense of litigation, the Insured demanded the parties submit to the alternative dispute process of "Appraisal" as set forth in The Policy and it named its appraiser.

On March 20, 2024, Zurich agreed to participate in the appraisal, and it named its appraiser.

Nearly a year later, on March 18, 2025, an Appraisal Award was executed in favor of the Insureds in amounts totaling $1,406,851.84 (RCV) / $1,309,835.79 (ACV). This was much more than Zurich would ever voluntarily acknowledge the claim was worth or pay.

On April 12, 2025, following the Appraisal Award, Zurich's counsel sent to the Insured's counsel correspondence advising that Zurich would be tendering payment under separate cover in the amount of $1,209,835.79 (i.e., the ACV of appraisal award less the $100k policy deductible). As previously noted, the prior payment by Zurich was never negotiated because the Insured disagreed with the amount of that payment. Therefore there was no deduction for the prior payment.

On April 15, 2025, a check for the ACV of the appraisal award (after subtracting the deductible) was delivered to counsel for the Insured, via Zurich check number 2990013980.

The amount of the appraisal award was significantly more than Zurich would acknowledge or voluntarily

pay for the Insureds Hurricane Damage under the Policy. In fact, the appraisal award was more than twenty-two (22) times greater than Zurich's tendered undisputed payment made to 101 Palmetto LLC prior to the Appraisal.

Further, the Appraisal award was 100% more than Zurich had previously acknowledged or paid for the business personal property which was damaged by the Hurricane, as Zurich had never previously acknowledged or paid any amounts for this element of the loss sustained by Insured Worldwide Door Components Inc. despite its knowledge of same

In respect to the damage for the "Main Building," in particular, the Appraisal Award indicates the damage was $475,776.15 (RCV) / $393,442.70 (ACV). The difference in these figures – reflecting withheld depreciation – is $82,333.45. Eventually, the Insured completed the repairs to the "Main Building" which it had started in the weeks and months after the Hurricane. The Insured incurred more than the amount of the RCV reflected in the Appraisal Award to repair the damage to the "Main Building".

On February 6, 2026, the Insured (through counsel) sent correspondence to counsel for Zurich requesting that Zurich tender the recoverable depreciation of $82,333.45 which Zurich had withheld from the Appraisal Award for damage to the "Main Building", as the Insured had incurred the repair costs.

Zurich responded to this correspondence, but it did not tender the withheld depreciation. Instead, it attempted to negotiate a "global" settlement with the Insureds (ie. a settlement of all pending and potential issues and claims in exchange for a release). This response by Zurich is contrary to its duties to the Insureds under the Policy and contrary Zurich's duty to treat its Insureds fairly, honestly and with due regard for their interest as well as other duties under Florida law.

The Insured has expended sums exceeding the recoverable depreciation withheld from the payment of the appraisal award for the 'main building" and has requested payment of same. Upon showing Zurich that it incurred the expense of repairs to the main building which exceed the RCV amount awarded, the required payment of remaining contract damages should have been immediately tendered to the Insured since those repairs commenced in 24 months of the date of loss. The Insured was unable to complete all repairs until after the appraisal was complete and the Appraisal Award was paid. Failing to immediately tender and pay the outstanding depreciation owed under the Policy was wrong.

Not only is recoverable depreciation due and owing the Insured under the Policy, but payment of withheld depreciation once repairs are complete and exceed the RCV of the an Insureds damage is a standard practice in the property and casualty insurance industry in Florida under these circumstances. While this is not a residential claim, it's instructive to note that Florida law requires recoverable depreciation to be paid by a residential insurer once incurred.

See Fla. Stat. § 627.7011(3)(a) states in pertinent part:

(3) In the event of a loss for which a dwelling or personal property is insured on the basis of replacement costs:

(a) For a dwelling, the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred. However, if a roof deductible under s. 627.701(10) is applied to the insured loss, the insurer may limit the claim payment as to the roof to the actual cash value of the loss to the roof until the insurer receives reasonable proof of payment by the policyholder of the roof deductible. Reasonable proof of payment includes a canceled check, money order receipt, credit card statement, or copy of an executed installment plan contract or other financing arrangement that requires full payment of the deductible over time. If a total loss of a dwelling occurs, the insurer must pay the replacement cost coverage without reservation or holdback of any depreciation in value, pursuant to s. 627.702.

This statute is not controlling, it is informative. If Zurich was interested in complying with the Policy, and with treating the Insured fairly, honestly and with due regard for its interests, it would promptly issue the insurance benefits the Insured is entitled to without delay and without trying to make a better deal for itself by seeking a global settlement with a release. Zurich knows it is not entitled to a release when it discharges its duty to pay the Insured under The Policy.

Zurich is withholding the depreciation awarded to the Insured in the Appraisal Award in an effort to force the insured to enter a 'global' settlement which would release all pending and potential claims against Zurich. This is wrong, particularly given the fact that Hurricane Ian occurred in September of 2022, nearly 3 ½ years ago.

Zurich has treated the Insured unfairly in the past by, among other things, failing to fully, fairly and promptly adjust and pay its claim, ignoring damage, ignoring information provided by the insured showing the damage was greater than Zurich had estimated, using outcome-oriented vendors such as J.S. Held to evaluate, investigate and estimate the claim. withholding its original estimate from the Insured, by putting its interests above those of its Insureds, and by other improper conduct set forth herein. Refusing to settle the insureds undisputed claim for remaining contract damages (depreciation owed on the 'main building" which was withheld following the appraisal award by attempting to obtain a release) indicates Zurich is again putting its own interests above those of its Insured. If it wanted to put the interest of its Insured first, and treat the insured fairly, honestly and with due regard for its interests, Zurich would pay the contract damages owed for depreciation on the "main building" with no delay and no strings attached.

DFS-10-363
Rev. 10/14/2008

The Insured Property was damaged by a covered loss. The Insured timely reported the damage to Zurich. Zurich (and its representatives) conducted a deficient investigation and improperly delayed, under scoped, undervalued, and underpaid the loss, particularly in light of the visual evidence of damages which was ignored by its approved vendor, JS Held, which is a well-known out-come oriented company which has a significant financial bias toward Zurich and its other Insurance Company clients.

Zurich has failed to create and implement adequate guidelines for proper claims investigation, claims evaluation, claims handling, and for training and supervision of employees, independent contractors and vendors such as J.S. Held working on and handling its claims resulting in statutory violations as set forth herein. Zurich has failed and/or refused to thoroughly, accurately, and completely investigate and evaluate the Insured's claim for damages and it continues to try to underpay the claim or obtain a benefit for itself (a release) instead of issuing indemnity payments owed to its Insured.

The concept of insurance is that it is the insurer's granting of timely and prompt indemnity or security against a contingent loss. Fla. Stat. § 624.02 defines insurance as a contract whereby one undertakes to indemnify another or pay or allow specified amount or a determinable benefit upon determinable contingencies. Inherent is the fact that payment is made timely and promptly so that insureds may mitigate their damages and be put back into the position they were in prior to the loss as quickly as possible. Zurich has failed to comply with its duty to timely adjust and fully indemnify its Insured both prior to and following the appraisal process.

Further, Zurich has breached its policy of insurance with its Insured through its actions and/or inactions. Zurich has refused and/or failed to pay the full insurance proceeds owed to the Insured as required by The Policy, the Appraisal Award, and Florida law. Refusal and/or failure to settle the Insured's claim when under all the circumstances it could have and should have done so had it acted fairly and honestly towards the Insured is wrong.

The actions and conduct by Zurich in the handling and adjustment of its Insured's claim – before, during and after appraisal – is and was willful, wanton, and in complete disregard for the rights of its Insured and has occurred with such a frequency as to indicate a general business practice, and further, is in violation of Florida Statutes § 624.155 and § 626.9541.

Based on the foregoing actions and omissions, Zurich has engaged in wrongful conduct. That wrongful conduct includes, but is not limited to, the following:

1. Improper claim delay.
2. Improper claim denial of the Insureds damage which was ignored, under scoped and underpaid.
3. Looking for ways to deny recovery to its Insured.
4. Looking for ways to delay recovery to its Insured.
5. Not adjusting the claim and not evaluating the loss properly, promptly, and fairly so as to provide full and prompt indemnity to its Insured.
6. Looking for ways to underpay the claim.
7. Failing to implement proper standards for the adjustment and investigation of insurance claims.
8. Making misrepresentations to the Insured about coverage.
9. Making misrepresentations to the Insured about facts.
10. Forcing the Insured to demand appraisal to resolve the dispute over the amount of loss sustained due to the Hurricane.
11. Using appraisal as a substitute for proper claims adjustment.
12. Not paying damages to the Insured Zurich became aware of during the appraisal process until the Appraisal Award was issued.
13. Not training, supervising, or managing adjusters and independent contractors properly so that prompt and full payments are made, but rather placing the company's interests before the policyholders' interests by attempting to deny or minimize payments owed.
14. Establishing severity control initiatives and otherwise establishing a culture of not fully and promptly paying claims following losses.
15. Ignoring submitted claim documentation and information from the Insured.
16. Using JS Held, a well-known outcome-oriented expert and vendor who makes significant income from Zurich, subsidiary companies, and the insurance industry in general and thus has a financial bias in favor of Zurich, to evaluate and estimate the Insureds loss and damage,
17. Failing to timely respond to communications from the insured and its agents.
18. Requiring the insured to adjust its own claim.
19. Failing to adhere to its Policy.
20. Failing to follow Florida law.
21. Failing to tender recoverable depreciation to the 'main building" as per the appraisal award once incurred and upon request with no strings attached.

DFS-10-363
Rev. 10/14/2008

22. Trying to obtain a 'global settlement' of all pending and potential claims instead of immediately tendering the contract damages owed to the insured (i.e., the depreciation on the main building withheld following the appraisal award).

Therefore, to cure the defects outlined in this Civil Remedy Notice, Zurich must:

Tender all insurance monies owed to the Insured under the Policy following the Appraisal Award for the Hurricane Ian loss to the main building

A copy of this form has been submitted to the FDFS and has been printed out and mailed to the following parties providing them notice of the filing of the Civil Remedy Notice:

Zurich American Insurance Company, via Certified Mail R.R.R.
Ms. Lindsey Harrell, Zurich American Ins. Co., via Certified Mail, R.R.R.
Claims Department, Zurich American Ins. Co., via U.S. Mail.
Jason M. Chodos, Esq., counsel for Zurich American Insurance Company, via email
Tabatha A. Liebert, Esq., via email
Beth and Jerry Monts De Oca (o/b/o the Insured), via email.

## Comments

| User Id | Date Added | Comment |
|---------|-----------|---------|
|         |           |         |

DFS-10-363
Rev. 10/14/2008


**ZELLE** LLP

110 E. BROWARD BLVD.                                                JASON M. CHODOS
SUITE 2000                                                                    PARTNER
FORT LAUDERDALE, FL 33301                               DIRECT (786) 693-2351
                                                                    FACSIMILE (612) 336-9100
                                                                    EMAIL: JCHODOS@ZELLELAW.COM

December 22, 2023

**Via Electronic Filing**

Florida Department of Financial Services
Consumer Assistance/Civil Remedy Section
Larson Building
200 East Gaines Street
Tallahassee, FL 32399

Re:    Insureds:         Worldwide Door Components, Inc.; and
                         101 Palmetto LLC
       Insurer:          Zurich American Insurance Company
       Loss Location:    101 West Palmetto Street, Arcadia, FL 34266
       Date of Loss:     September 28, 2022
       Claim No.:        5630086907
       Policy No.:       CPO 0117720-06
       DFS Nos.:         724175 and 724176

Dear Sir/Madam:

This responds to the two, separate Civil Remedy Notices of Insurer Violations (the "CRNs") filed on October 25, 2023 with the Department of Financial Services (the "Department") by Worldwide Door Components, Inc. and 101 Palmetto LLC (collectively, "Worldwide") against Zurich American Insurance Company ("Zurich American"). For the reasons set forth below, Zurich American denies that it has violated Florida Statutes §§ 624.155 or 626.9541 (or any subpart thereof or any other applicable statutes or regulations) or that it has in any other way improperly handled and/or adjusted the claim brought by Worldwide. The facts pertaining to the handling of the claim plainly demonstrate that no statutory violations were committed. To the contrary, Zurich American has handled this claim diligently, with complete transparency, and in full compliance with its contractual and statutory obligations. Thus, Zurich American categorically rejects the allegations contained in the CRNs and all allegations therein should be stricken.

## ZURICH AMERICAN HAS NOT COMMITTED ANY STATUTORY VIOLATIONS

The facts discussed below clearly demonstrate that the CRNs are wholly without merit, as Zurich American has not engaged in any bad faith conduct during its investigation of the claim. Rather, the facts pertaining to the claim unequivocally establish that Zurich American handled the

Florida Department of Financial Services
December 22, 2023
Page 2

claim diligently, with complete transparency, and in full compliance with all applicable statutes and regulations.  As such, the CRNs are a legal nullity.

## I.    The Zurich American Policy

Zurich American issued a first-party commercial lines insurance policy to Worldwide (and other named insureds), bearing Policy Number CPO 0117720-06, with effective dates of September 29, 2021 to September 29, 2022 (the "Policy").[1]  The Policy provides, *inter alia*, commercial property insurance coverage to certain property located at 101 West Palmetto St., Arcadia, FL 34266 (the "Insured Premises"), subject to its various terms, conditions, limitations, exclusions and other provisions.  The Policy is also subject to, *inter alia*, a real property limit of insurance of $2,500,000 and a named storm element deductible of $100,000 attributable to the Insured Premises.

## II.    The Claim and Zurich American's Investigation

On November 1, 2022, Shannon May of Worldwide submitted a claim to Zurich American for damage to the Insured Premises.  Specifically, Worldwide reported that the Insured Premises sustained physical damage on or about September 28, 2022 as a result of Hurricane Ian.  Contemporaneous with the loss report, Worldwide provided Zurich American a proposal for repairs totaling $1,635,522.20, dated October 24, 2022, prepared by MetalMax Builings, Inc. ("MetalMax").

On November 2, 2022, Zurich American retained JS Held, LLC, a building consulting and forensic engineering firm, to assist with the investigation of the claim.  On the same day, Zurich American provided an update to Worldwide that it was in the process of assigning a building consultant, who would be contacting Worldwide to coordinate an inspection.  The next day, on November 3, 2022, Wayne Hess of JS Held reached out to Ms. May to schedule an inspection of the Insured Premises.  Mr. Hess followed up the following day.  Eventually, on November 13, 2022, Worldwide got back to JS Held about the requested inspection, which was scheduled to take place on November 15, 2022.

On November 15 and 16, 2022, JS Held conducted a comprehensive inspection of the Insured Premises.  Present during the inspection included Jerry Monts de Oca (owner of the Insured Premises), Mike Claus (Worldwide's foreman), and Tabatha Liebert, Esq. (general counsel for Worldwide).  Mr. Monts de Oca escorted JS Held throughout the Insured Premises.

Despite conducting a thorough investigation of the property, JS Held observed minimal evidence of storm-related damage.  Specifically, JS Held observed dislodged rake edges and adjacent roof panels, loose wall panels on the west and south elevations, and minimal damage to

---

[1] At the insureds' request, Zurich American subsequently extended the policy expiration date up to and including March 15, 2023.

Florida Department of Financial Services
December 22, 2023
Page 3

the chain link fence along the eastern and south boundary of the property. JS Held also observed damage to garage roll-up doors to Bays 1, 3 and 4, which had been replaced by Worldwide. JS Held also observed some minimal damage to faux fascia along the rear elevation and a damaged wall panel along the left elevation.

Apart from the above, JS Held did not observe any storm-related damage to the roof system or any other building elevations. Instead, JS Held observed evidence of long-term, pre-storm damage, wear and tear, and deferred maintenance. For example, JS Held observed non-storm related, existing damage to the right elevation of the premises. JS Held further observed prior repairs and deterioration to the roof coating. The deterioration of the roof was allowing water to permeate into the interior of the property. Indeed, aerial roof imagery confirmed large areas of repairs to the roof coverings in 2020, i.e., more than two years prior to Hurricane Ian. JS Held also observed improper, loose and rusted screws, rusted and disconnected whirl type vents, cracked and flaking foam coverage, and degrade sealants, which all contributed to potential water intrusion, but were not related to Hurricane Ian. Significantly, Mr. Claus conceded during the inspection that the roof leaks at the Insured Premises pre-dated Hurricane Ian. In sum, based upon JS Held's inspection, it determined that the level of damage on the roof did not exceed 25% for any given roof section or area, thus negating any potential applicability of the Florida Building Code's 25% Rule for roof replacement.

Turning to the interior, JS Held was initially informed that the office area had not been used by Worldwide for "many years." JS Held also observed long term water damage throughout the interior to the walls, baseboards, and floorings. JS Held also noted a partial second floor, but was denied access. Notably, Mr. Monts de Oca advised that the joists were old and rotten due to long term water damage and it was not safe to walk the entirety of the floor plan.

Shortly after its inspection, JS Held prepared a report dated November 28, 2022 summarizing its findings. JS Held also prepared a repair estimate of the damage observed at the Insured Premises that could reasonably be attributed to Hurricane Ian. The estimate, dated December 5, 2023, totaled $88,703.32 (RCV). After reviewing JS Held's report and estimate, Zurich American contacted Ms. May to discuss JS Held's report and estimate, i.e., that the total damage observed at the property fell below the Policy's applicable named storm deductible.

On or about December 13, 2022, Mr. Monts de Oca reported structural damage to the Insured Premises and asked Zurich American to provide an engineer to assess the structural damage. Mr. Monts de Oca also informed Zurich American Ms. May was proving difficult to reach and, therefore, provided his own contact information for scheduling the engineer's inspection. That same day, Zurich American contacted JS Held to assign a structural engineer to inspect the property.

On December 20, 2022, Lazell Preator of JS Held, a structural engineer, contacted Ms. May to schedule an inspection of the Insured Premises. On December 21, 2022, Ms. May confirmed the inspection of the Insured Premises for December 29, 2022, and also confirmed that Messrs. Monts de Oca and Claus would be present.

Florida Department of Financial Services
December 22, 2023
Page 4

On December 29, 2022, Mr. Preator inspected the Insured Premises. Mr. Preator confirmed that the structural integrity of the building was not affected by Hurricane Ian and that any structural integrity issues were present prior to Hurricane Ian. Mr. Preator further re-confirmed that sections of the roof showed evidence of prior repairs and age-related wear. Mr. Preator opined that the Insured Premises was minimally impacted by the hurricane. On the contrary, the majority of the physical damage observed at the property was most fairly attributed to the age and condition of the property, as confirmed earlier by Worldwide's own representatives.

On February 2, 2023, JS Held prepared its report in connection with the December 29 inspection. A copy of the report was shared with Worldwide on February 8, 2023 along with an invitation for Worldwide to discuss further after it had a chance to review.

On or about February 21, 2023, Lindsey Harrell of Zurich American and Andrew Goffron of Zurich American spoke with Ms. Liebert and Mr. Monts de Oca about the claim. During that conversation, Worldwide expressed concern about Zurich American's loss calculation. Zurich American requested all invoices, estimates, receipts, and other documents reflecting other damage related to Hurricane Ian.

Shortly thereafter, on February 28, 2023, JS Held completed a revised estimate of damage based upon its reinspection of the premises, reconsideration of the MetalMax proposal, and discussions with the insured's representatives. The revised estimate totaled $202,410.11 (RCV) and $163,250.85 (ACV), which included some of the repairs reported by Worldwide the prior week, such as skylights and roll up doors.

On March 1, 2023, Zurich American advised that it stood ready to issue payment to Worldwide in the amount of $63,250.85, which represented the ACV amount of the JS Held estimate less the $100,000 applicable named storm deductible. The following week, on or about March 8, 2023, Zurich American inquired with Worldwide whether it was in agreement with JS Held's estimate or if they had hired any contractors to begin repairs. On March 10, 2023, Worldwide responded to Zurich American by advising it had retained its own engineer to evaluate the alleged damage from the hurricane to the Insured Premises.

On March 13, 2023, Ms. Harrell of Zurich American sent an e-mail to Worldwide advising that the undisputed damage amount of $63,250.85 was being cut and mailed to the insured's mailing address in Lutz, FL. Ms. Harrell noted that Worldwide never responded to Zurich American's prior e-mails asking how Worldwide wished for the funds to be issued.

On March 15, 2023, Worldwide's broker, Ryan Coffers, sent an e-mail asking for a status update on the claim investigation and whether the payment referenced above has been accepted by the insured. That same day, Ms. Liebert responded stating that Worldwide did not accept Zurich American's payment, as Worldwide's engineer reportedly found additional damage not documented or compensated by Zurich American. Ms. Harrell replied, reiterating that Zurich

Florida Department of Financial Services
December 22, 2023
Page 5

American would be happy to review any additional documentation provided, including the insured's engineering report, and issue additional payments if warranted.

For the next two months, nothing further was submitted by Worldwide. On May 11, 2023, Mr. Coffers sent an e-mail to Zurich American seeking another status update. Ms. Harrell responded that same day advising that the claim remained open, but Worldwide had not provided any new documentation or information for Zurich American's review, and Zurich American anticipated closing its file shortly if nothing new was provided. Also that day, Ms. Harrell sent an e-mail to Worldwide seeking a status update.

On May 19, 2023, Beth Monts de Oca sent an e-mail to Ms. Harrell confirming receipt of the check, disagreeing with the amount, and stating that Worldwide is still "currently evaluating the damages and we will provide you with the information we are able to develop in the near future." Ms. Harrell again replied by reiterating Zurich American's willingness to review any new information from Worldwide.

Notwithstanding the above, Worldwide refused to provide any new information or documentation to Zurich American. Instead, on October 25, 2023, Worldwide, through counsel of Danahy & Dunnavant P.A., filed the two, instant CRNs against Zurich American. Also on October 25, 2023, Worldwide filed a pair of Property Insurance Notices of Intent to Initiate Litigation (the "NOIs") against Zurich American. Attached to the NOIs were various documents never previously submitted to Zurich American, such as an engineering report prepared by Prescott Engineering on June 21, 2023; a damage estimate of $3,527,870.33 (RCV) and $2,615,342.25 (ACV), dated October 3, 2023, prepared by Triad Restoration Services; and various repair invoices, some dating more than a year old.

Zurich American timely responded to the NOIs on November 6, 2023 and invoked its right under Fla. Stat. § 627.70152 to a pre-suit mediation.

### III.    The CRN is Categorically Without Merit

The facts set forth above establish that Zurich American has handled this claim in full compliance with the Policy and all applicable statutes and regulations. Zurich American worked with Worldwide and its representatives throughout the investigation of the claim and kept them fully appraised of the status of the investigation. The record is clear that Zurich American has, at all times, acted in good faith and in compliance with the Policy and Florida law, from the outset of this claim by, among other things:

- Diligently investigating and adjusting the claim;
- Promptly engaging qualified adjusters and consultants;
- Conducting detailed inspections and reinspections of the Insured Premises;
- Promptly requesting information and documentation in support of the claim and following up on outstanding requests;
- Timely responding to communications;

Florida Department of Financial Services
December 22, 2023
Page 6

- Maintain an open dialog with Worldwide's representatives;
- Issuing payment for all covered, undisputed damages; and
- Thoroughly explaining the basis for its coverage determinations.

The allegations contained in the CRNs are squarely refuted by the actual facts surrounding Zurich American's investigation of the claim as described in detail above. For example, Worldwide alleges in wholesale fashion that Zurich American "refuses to pay the full amounts necessary to restore the Insured Property back to a pre-loss condition, the Insured has had to come out-of-pocket to make temporary and permanent repairs in order to mitigate its losses" and has "refused and/or failed to pay the full insurance proceeds owed to the Insured as required by the policy and law." Also, Worldwide alleges that Zurich American failed to "timely respond to communications from the insured and its agents." These allegations could not be any further from the truth. As an initial matter, Zurich American inspected the Insured Premises two weeks after the loss was reported. Upon receiving further information from Worldwide the property sustained structural damage, Zurich American immediately retained an engineer to conduct a separate inspection of the property and assess the structural damage. Indeed, as soon as Zurich American was informed of the engineer's finding, Zurich American immediately scheduled and coordinated a call with Worldwide to discuss JS Held's opinions. Zurich American also issued payment for all covered, undisputed damage and continually invited Worldwide to submit additional information for its consideration and evaluation of whether additional payments are owed. Worldwide, however, chose to ignore this invitation.

Worldwide further alleges that Zurich American "has made no additional payments to the Insured for losses to property damage sustained to the property's Building itself and losses to the Insured's inventory remains unaddressed entirely" and that JS Held's "estimates do not account for these items, and they have not been paid for to date." Again, these allegations are wholly conclusory and self-serving. Despite being invited multiple times to submit new information for Zurich American's consideration, Worldwide refused. Indeed, more than 7 months passed after Zurich American's payment was issued before Worldwide ever submitted its own engineering report or separate damage estimate. And Worldwide did not even give Zurich American a chance to review the new documentation. Instead, the new documentation came part in parcel with Worldwide's allegations of bad faith through the instant CRNs and threat of suit vis-à-vis the two NOIs.

Worldwide callously accuses Zurich American of claim delay and failure to address its claim for damaged inventory. These allegations are categorically devoid of any merit. As explained in detail above, there was no delay on the part of Zurich American. If there was any delay, it comes in the form of Worldwide's own actions, such as by waiting over a month to even report the claim; delays in coordinating the various inspections of the Insured Premises; failure to respond to Zurich American's inquiries about how and where the undisputed funds should be issued; and a 7 month waiting period between Zurich American's payment of the undisputed funds and the date when Worldwide finally tendered new documentation and information to Zurich American. Let alone, it was not until this time, when Zurich American was served with the CRNs and NOIs, that it received documentation from Worldwide concerning any reported inventory loss.

Florida Department of Financial Services
December 22, 2023
Page 7

The "Reasons for Notice" identified in the CRNs are also either at odds with the facts or consist of threadbare conclusions. For example, Worldwide accuses Zurich American of violating Fla. Stat. § 624.155(1)(b)(1) by "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Worldwide further alleges that Zurich American violated Fla. Stat. § 624.155(1)(b)(3) by "failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage." These allegations blithely ignore the actual facts involved with the claim investigation. As evidenced above, Zurich American made repeated and consistent efforts to amicably settle the claim. Zurich American was fully transparent, sharing copies of all engineering reports and estimates with Worldwide, and inviting discussion with Worldwide about the contents of those documents. Even after issuing payment of the undisputed funds, Zurich American repeatedly invited Worldwide to discuss further and submit any new information or documentation if it disagreed with the loss calculation. Worldwide cannot simply bury its head in the sand for 7 months and then resurface with blanket allegations of bad faith conduct.

Worldwide next alleges that Zurich American violated Fla. Stat. §626.9541(1)(i)(2) by making "[a] material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms." Worldwide similarly alleges that Zurich American violated Fla. Stat. § 626.9541(1)(i)(3)(b) by "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." There is no truth to either of these allegations. Worldwide has failed to identify a single fact or policy provision that Zurich American allegedly misrepresented, showing the baselessness of the allegation. In fact, it is unfathomable how Worldwide could allege with a straight face that Zurich American was trying to coerce a settlement on less favorable terms than those provided in the Policy, when Zurich American repeatedly invited Worldwide to discuss its loss calculation and to provide any new information for Zurich American's consideration. Zurich American was unequivocally and repeatedly clear that it was willing to entertain payment of additional funds if Worldwide had documentation to substantiate any such request. Worldwide failed to respond to any of these invitations. It cannot now, in good conscious, turn around and paint its own failures to respond as allegations of misrepresentation or coercion on the part of American Zurich.

Worldwide also alleges that Zurich American violated Fla. Stat. § 626.9541(1)(i)(3)(a) by "[f]ailing to adopt and implement standards for the proper investigation of claims." Worldwide further alleges Zurich American violated Fla. Stat. § 626.9541(1)(i)(3)(c) by "[f]ailing to acknowledge and act promptly upon communications with respect to claims." These allegations serve only to confirm the fiction upon which the CRNs are both predicated. As repeatedly explained above, Zurich American promptly and thoroughly investigated the subject claim, including the retention of seasoned, qualified consultants, including a building consultant and a professional engineer, to assist in its investigation of the claim. Indeed, Worldwide itself concedes

Florida Department of Financial Services
December 22, 2023
Page 8

in the CRNs that JS Held is "a well-known insurance industry vendor." JS Held is one of the largest consulting firms in the world, which provides specialized technical, scientific, financial, and advisory services. In other words, Zurich American turned to one of the most well-known and decorated consulting firms in the world to assist with its investigation and provide a fair assessment of the insured's reported claim. Notwithstanding the fact that Zurich American, at all times, promptly responded to all correspondence received by Worldwide or its representatives.

Finally, Worldwide accuses Zurich American of violating Fla. Stat. § 626.9541(1)(i)(3)(d) by "[d]enying claims without conducting reasonable investigations based upon available information." This allegation is, perhaps, the coup de grace to the baseless nature of the CRNs. As confirmed within the body of the CRNs itself, "Zurich [American] tendered a check to the Insured on or about March 16, 2023, in the amount of $63,250.85." It goes without saying that Zurich American could not have possibly denied the claim without investigation, when the CRN discusses at length the investigation and the payment made by Zurich American to the insured. There is no clearer evidence of the fabricated nature of Worldwide's claims of bad faith than its allegation of Zurich American's violation of this statute.

In sum, Zurich American has done everything that is required of an insurance company. At no time has Zurich American acted in a manner inconsistent with any of the provisions of the Florida Statutes or any other regulations governing its claims handling conduct. While Worldwide may disagree with Zurich American's loss calculation regarding the claim, this does not demonstrate any bad faith conduct on the part of Zurich American. Zurich American categorically rejects all of Worldwide's allegations of bad faith conduct discussed within the CRNs, including but not limited to any alleged bad faith conduct under Chapters 624 and 626 of the Florida Statutes, and requests the Department to dismiss both CRNs in their entirety.

We trust this responds fully to the above-referenced CRNs. Please feel free to contact the undersigned should you require any additional information.

Very truly yours,

*Jason M. Chodos*

Jason M. Chodos

cc:    Matthew Danahy, Esq.
       Danahy & Dunnavant, P.A.
       901 West Swann Avenue
       Tampa, Florida 33606
       (*via e-mail*)

## Appraisal of Insurance Claim – Award Form

| Insured | : | 101 Palmetto LLC – WorldWide Door Components |
|---|---|---|
| Policy # | : | CPO-0117720-06 |
| Claim # | : | 5630086907 |
| Date of Loss | : | 09/28/2022 |
| Risk Location | : | 101 West Palmetto Street Arcadia, FL |

## TO THE ABOVE NAMED PARTIES AT INTEREST:

We, the undersigned appraisers, have investigated and considered all the material facts and available information pertaining to this claim and have decided on the appraisal award as described below.

| Coverage | RCV Amount of Loss | ACV Amount of Loss |
|---|---|---|
| Main Building | $475,776.15 | $393,442.70 |
| WWD Labor Cost - Main Bldg. | $ 88,632.90 | $ 88,632.90 |
| Roof #2 - Trailer Bldg. | $ 85,922.84 | $ 85,922.84 |
| WWD Labor Cost -Trailer Bldg. | $ 70,823.93 | $ 70,823.93 |
| Incurred Costs | $519,754.02 | $519,754.02 |
| Fence | $ 48.942.00 | $ 34,259.40 |
| Inventory | $117,000.00 | $117,000.00 |

**\*\*Per Attached Spreradsheet which is an integral part of this Appraisal Award document\*\***

This Appraisal Award is made subject to the terms and conditions of the policy.

This Appraisal Award shall be valid and binding upon all parties concerned if at least two of the panel members concur in a decision, as evidenced by their signatures below.

This Appraisal Award does not include nor does this Appraisal Award account for or deduct the Insured (s) deductible and/or any prior or advance payments that were made to the insured by this insurer or any other insurer, if any. Additionally, this Appraisal Award does not consider any limitations or exclusions which may or may not exist under the terms of the applicable insurance policy.

The deliberation of the Appraisal Panel is confidential and exempt from depositions or suit in case the Award is challenged, or a bad faith claim is filed. Furthermore, to the maximum extent permitted by law, no party will assert any claims against the named Appraisers or named Umpire or their respective firms, seeking to hold them or their firms liable for any act or omission in performing their duties as an Appraiser or Umpire.

All executed copies shall be considered as counterpart originals.

## WE AGREE TO THE ABOVE:

DATE: _____

Appraiser: Dennis James

DATE: __3/18/2025__

Appraiser: Gus Cois

DATE: __3/18/2025__

Umpire: Art Newman

**WorldWide Door Components**
**101 Palmetto LLC**
**101 W. Palmetto Street**
**Arcadia, FL 34226**
**Policy # CPO-0117720-06**
**Claim #5630086907**

| Area | RCV | ACV |
|---|---|---|
| Remediation | $28,212.56 | $28,212.56 |
| Roof #1 - Main Level | $93,500.00 | $93,500.00 |
| Break Room | $5,825.01 | $4,951.26 |
| Hallway | $3,659.65 | $3,110.70 |
| Upstairs Office #2 | $7,445.22 | $5,956.18 |
| Landing | $5,435.71 | $4,348.57 |
| Upstairs #1 | $5,825.79 | $4,660.63 |
| Stairwell | $5,712.36 | $4,855.51 |
| General Conditions | $29,750.00 | $29,750.00 |
| **SUBTOTAL** | $185,366.30 | $179,345.40 |
| Material Tax | $2,780.49 | $2,690.18 |
| | | |
| Overhead 10% | $18,814.68 | $18,203.56 |
| Profit 10% | $18,814.68 | $18,203.56 |
| **TOTAL** | $225,776.15 | $218,442.70 |
| | | |
| **Grand Total** | $225,776.15 | $218,442.70 |
| | | |
| Office Building Roof | $50,000.00 | $35,000.00 |
| Office Building Interior | $200,000.00 | $140,000.00 |
| | | |
| **Main Building** | **$475,776.15** | **$393,442.70** |
| **WWD Labor Cost-Main Building** | **$88,632.90** | **$88,632.90** |
| **Roof #2 - Trailer Bldg.** | **$85,922.84** | **$85,922.84** |
| **WWD Labor Cost- Trailer Building** | **$70,823.93** | **$70,823.93** |
| **Incured Costs** | **$519,754.02** | **$519,754.02** |
| **Fence** | **$48,942.00** | **$34,259.40** |
| **Inventory** | **$117,000.00** | **$117,000.00** |
| | $1,406,851.84 | $1,309,835.79 |

# MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW

110 EAST BROWARD BOULEVARD, SUITE 610

FORT LAUDERDALE, FL 33301

TEL: (754) 799-2605
FAX: (954) 467-5880

WWW.MOUNDCOTTON.COM

NEW YORK, NY
LONG ISLAND, NY
FLORHAM PARK, NJ
SAN FRANCISCO, CA
FORT LAUDERDALE, FL
HOUSTON, TX

JASON M. CHODOS
PARTNER
jchodos@moundcotton.com

April 12, 2025

**<u>Via E-Mail Only</u>**

Matthew Danahy, Esq.
Danahy & Dunnavant, P.A.
901 W. Swann Ave.
Tampa, FL 33606

|  |  |  |
|---|---|---|
| Re: | Insureds: | Worldwide Door Components, Inc.; and 101 Palmetto LLC |
|  | Insurer: | Zurich American Insurance Company |
|  | Loss Location: | 101 West Palmetto Street, Arcadia, FL 34266 |
|  | Date of Loss: | September 28, 2022 (Hurricane Ian) |
|  | Claim Number: | 5630086907 |
|  | Policy Number: | CPO 0117720-06 (9/29/2021 – 9/29/2022) |

Dear Mr. Danahy:

As you know, this firm has been retained by Zurich American Insurance Company ("Zurich American") to represent it in connection with the above-referenced claim (the "Claim") submitted by the insureds, Worldwide Door Components, Inc. and 101 Palmetto LLC (collectively, "Worldwide") under the above-referenced insurance policy (the "Policy"). We are writing in furtherance of the appraisal award that was entered in this matter on March 18, 2025 (the "Appraisal Award").

Pursuant to the Appraisal Award, the Policy terms, your letters dated March 27 and 28, 2025, and the e-mails that we exchanged on April 4, 2025, Zurich American will be issuing a check in the amount of **$1,209,835.79** made payable to **Danahy & Dunnavant, P.A. Trust Account**. Please allow us to explain how this amount was calculated.

## I.   ACTUAL CASH VALUE

As an initial matter, we note that the Appraisal Award contains two columns of loss calculations: a Replacement Cost Value ("RCV") column and an Actual Cash Value ("ACV") column. Your March 27 and 28, 2025 letters request payment of the ACV amount of the award. Zurich American agrees that is all that is owed under the Policy. Notably, the Policy's Real and Personal Property Coverage Form (PPP-0110 (08 16)) states in part:

Worldwide Door Components, Inc., et al.
c/o Matthew Danahy, Esq.
April 12, 2025
Page 2

### E.    VALUATION

We will determine the amount of covered loss or damage as follows:

1.    Except as provided in 2., 3., 4., 5., 6., and 7. below, the lesser of the following amounts:

   a.    The **"replacement cost"**; or

   b.    The **"amount you actually spend"** to repair, rebuild, or replace the **"real property"** or **"personal property"** at the same or another location.

2.    Except as provided in 3., 5., 6., and 7. below, **"real property"** or **"personal property"**, other than **"improvements and betterments"**, which is not repaired, rebuilt, or replaced will be valued at the **"actual cash value"** at the time and place of loss or damage. If you commence the repair, rebuilding, or replacement of the lost or damaged **"real property"** or **"personal property"** within 24 months from the date the loss or damage occurred, upon completion of the repair, rebuilding, or replacement, we will pay you the difference between the **"actual cash value"** previously paid and the **"replacement cost"** at the time of loss or damage.

\*          \*          \*

It is Zurich American's understanding that the damage detailed in the Appraisal Award has not been repaired or replaced. And, the date of loss occurred more than 2 years ago, i.e., September 28, 2022. As such, pursuant to the above-cited language, Worldwide is not entitled to the RCV amount of the Appraisal Award under the terms of the Policy. In this regard, pursuant to the above-cited language and your request, Zurich American will be paying the ACV amount of the award.

### II.    <u>DEDUCTIBLE</u>

We next wish to address the Policy's applicable deductible. Specifically, the Appraisal Award states in part:

*This Appraisal Award does not include nor does this Appraisal Award account for or deduct the Insured (s) deductible and/or any prior or advance payments that were made to the insured by this insurer or any other insurer, if any. Additionally, this Appraisal Award does not consider any limitations or exclusions which may or may not exist under the terms of the applicable insurance policy.*

Worldwide Door Components, Inc., et al.
c/o Matthew Danahy, Esq.
April 12, 2025
Page 3

As you are aware, the cause of the subject loss and damage is due to Hurricane Ian.  The above-referenced Loss Location is scheduled as Premises #5 on the Policy.  Pursuant to the Policy's Commercial Property Coverage Part Declarations (PPP-0001 (06 06) for the Loss Location, the property is subject to a Named Storm – Direct Damage deductible of $100,000, as confirmed below:



## Commercial Property Coverage Part Declarations          ZURICH

Zurich American Insurance Company

| NAMED INSURED: | POLICY PERIOD: |
|---|---|
| Worldwide Door Components Inc | From:  09/29/2021  To:  09/29/2022 |
| | 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS |
| POLICY NUMBER:  CPO 0117720 - 06 | |

**SUMMARY OF PREMISES**

| PREMISES #  5 | PREMISES ADDRESS |
|---|---|
| | 101 West Palmetto St |
| | Arcadia, Fl  34266-4319 |

| COVERAGE | LIMIT OF INSURANCE |
|---|---|
| REAL PROPERTY | $2.500,000 |
| PERSONAL PROPERTY | $2.500,000 |

| DEDUCTIBLE | AMOUNT |
|---|---|
| NAMED STORM--DIRECT DAMAGE AND TIME ELEMENT | $100,000 |
| WATER DAMAGE DEDUCTIBLE | $25.000 |

In light of the above, and as acknowledged in your March 27 and 28, 2025 letters, the total amount of the Appraisal Award must therefore be reduced by the amount of this applicable deductible of $100,000.

## III.    PRIOR PAYMENTS

Next, we write to address the prior payments made by Zurich American regarding this claim.  As you know, in or about March 2023, Zurich American issued payment to Worldwide for undisputed loss or damage in the amount of $63,250.85.  Worldwide acknowledged and confirmed receipt of the check on May 19, 2023, but had not yet deposited the check as of that date.  According to your letter dated March 28, 2025, Worldwide never negotiated the check.  Zurich American has also, independently, confirmed that the check has not been deposited and is now stale.  As a result, Zurich American **will not** be reducing the Appraisal Award by the amount of

Worldwide Door Components, Inc., et al.
c/o Matthew Danahy, Esq.
April 12, 2025
Page 4

the prior payment. In other words, the prior payment amount is being included within Zurich American's payment of the Appraisal Award.

## IV.    PREJUDGMENT INTEREST

Finally, we wish to address your demand that Zurich American's payment include $181,103.98 for "interest owed." Specifically, according to your March 27, 2025 letter, "Paying the insured interest is consistent with Florida Law and Zurich's duty to treat the insured fairly, honestly and with due regard for its interest, given the substantial delay in indemnifying the insured." As explained below, Zurich American respectfully disagrees that any interest is owed in connection with its payment of the Appraisal Award.

As an initial matter, it is well-settled law in Florida that an insured is not entitled to recovery of any prejudgment interest in connection with a timely paid appraisal award. *See, e.g., State Farm Fla. Ins. Co. v. Silber*, 72 So. 3d 286, 290 (Fla. 4th DCA 2011) *(*"[T]his Court has recently held that an insured is not entitled to prejudgment interest when an insurer does not deny coverage, participates in the appraisal process, and timely pays the appraisal award."); *Liberty Mut. Ins. Co. v. Alvarez*, 785 So. 2d 700, 701 (Fla. 3d DCA 2001) (reversing prejudgment interest award where "[t]he record shows that, in accordance with the insurance contract, the carrier paid the award three weeks after its filing"); *Allstate Ins. Co. v. Blanco*, 791 So. 2d 515, 517 (Fla. 3d DCA 2001) (finding that insured was not entitled to prejudgment interest where "the insurance policy provisions allowed Allstate sixty days within which to pay the appraisal award and Allstate made payment within the allotted time"); *Jugo v. Am. Sec. Ins. Co.*, 56 So. 3d 94, 95–96 (Fla. 3d DCA 2011) (affirming denial of prejudgment interest and finding that insured had not denied coverage where "[t]he dispute turned on quantifying the covered loss, not the existence of coverage").

In this case, the Policy's Commercial Property Conditions (PPP-0102 (08 16)) contains a "Loss Payment" provision, as amended by the Policy's Florida Changes endorsement (PPP-1091 B (01/20)), and states as follows:

> **J.    LOSS PAYMENT**
>
> The following apply unless otherwise provided in a Coverage Form in this Commercial Property Coverage Part:
>
> *          *          *
>
> **6.**    If you have complied with all of the terms of this Commercial Property Coverage Part, we will pay for covered loss or damage upon the earliest of the following:
>
> **a.**    Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

Worldwide Door Components, Inc., et al.
c/o Matthew Danahy, Esq.
April 12, 2025
Page 5

     **b.**      Within 30 days after we receive the sworn proof of loss; and

     **1)**      There is an entry of a final judgment; or

     **2)**      There is a filing of an appraisal award with us; or

*    *    *

As a courtesy to Worldwide, for the sake of expediting a conclusion of this claim, Zurich American is waiving its right to first require a sworn proof of loss prior to issuing payment of the Appraisal Award. Instead, Zurich American will be issuing payment of the award within 30 days of the date when the Appraisal Award was entered, i.e., March 18, 2025. As such, since the award is being timely paid, no interest is owed on the payment amount.

**V.    PAYMENT CALCULATION**

For the reasons discussed above, Zurich American will be issuing payment, under separate cover, in the amount of **$1,209,835.79** in accordance with the Appraisal Award and the terms of the Policy. As mentioned above and requested by you, the check will be made payable to **Danahy & Dunnavant, P.A. Trust Account** and sent to your office at the Tampa, FL office listed at the top of this letter. A chart summarizing Zurich American's payment calculation is included below:

|  |  |
|---|---|
|  | $1,309,835.79 (ACV amount of award) |
| – | $100,000 (Named Storm Deductible) |
| **TOTAL PAYABLE:** | **$1,209,835.79** |

Finally, as requested in your April 4, 2025 e-mail to me, this letter will confirm that upon payment of this Appraisal Award, Zurich American is in agreement with closing the claim.

Please note that nothing contained in this letter, nor any act of Zurich American or its representatives, should be construed as a waiver of any known or unknown coverage defense or coverage position under the Policy. Nor does this letter waive or change any term, condition, exclusion, limitation, monetary limit, deductible, or other provision of the Policy. Zurich American continues to reserve all of its rights under the Policy, at law, and in equity, including but not limited to those grounds set forth in any prior correspondence.

Very truly yours,

*Jason M. Chodos*

cc: Zurich American Insurance Company

C1-10269-I (07/16)

**ZURICH AMERICAN INSURANCE COMPANY**
P.O. BOX 66946 CHICAGO, IL 60666-6946

**NO.** 2990013980

| CLAIM NO.-SUB NO | DATE ISSUED | ISSUING OFFICE | |
|---|---|---|---|
| 5630086907 - 001 | 4/14/2025 | HO | |
| POLICY NO. | DATE OF LOSS | ISSUED BY | PAYMENT SERVICE DATES |
| CPO 0117720 06 | 9/28/2022 | 8X | |
| INSURED | | | |

Worldwide Express Trucking Inc

Net ACV Appraisal Award - Worldwide Door Components

$ 1,209,835.79

| VALID | PAY | KD | | AMOUNT |
|---|---|---|---|---|
| __ | PKBLD | 60 CLM | $ | 1,209,835.79 |

TAX ID

APR 15 2025

**NON-NEGOTIABLE**

THIS IS NOT A NEGOTIABLE INSTRUMENT

## ZURICH AMERICAN INSURANCE COMPANY

P.O. BOX 66946 CHICAGO, IL 60666-6946

56-1544
441

**NO.** 2990013980

CLAIM NO. 5630086907 - 001
CLAIM HANDLING OFFICE NO. 63

EXACTLY $1,209,835 * DOLLARS AND .79 CENTS
VOID AFTER 180 DAYS

PAY TO THE
ORDER OF Danahy and Dunnavant Trust Account

| DATE | AMOUNT |
|---|---|
| 4/14/2025 | $1,209,835.79 |

_Tanya Garrow_

TO: JPMORGAN CHASE BANK, N.A.
COLUMBUS, OH

⑈2990013980⑈ ⑆044115443⑆ 528291201⑈



DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE★



LISTED BELOW ARE THE SECURITY FEATURES
ON THIS DOCUMENT

| Security Features: | Results of check alteration: |
| --- | --- |
| • Colored Background | Void without background. |
| • Heat Sensitive Logo | Lock Box will disappear when copied or with normal body heat. |
| • Watermark | Hold at an angle to view. White watermark will turn yellow under ultraviolet light. |
| • Treated Paper | Solvent dye and brown stain reactive. Paper contains fluorescent fibers. |